# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDGARDO DIAZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>      v.<br><br>NEW YORK PAVING INC.,<br><br>                       Defendant. | Case No. 1:18-cv-04910-ALC-GWG<br><br>**DECLARATION OF EDGARDO DIAZ** |

I, Edgardo Diaz, of full age, hereby declare as follows:

      1.     I live in Bronx County, New York and have brought this lawsuit on behalf of the Class and Collective to recover the wages New York Paving (the "Company") owes me. I make this statement in support of Plaintiff's motion for collective action certification.

      2.     I worked at New York Paving as a paver for a few days in 2016, and consistently from January 2017 through March 2017.

      3.     During my tenure at New York Paving, I often worked more than 40 hours per week, typically more than 8 hours per day.

      4.     When I started working at New York Paving in 2016, I was informed that New York Paving requires all pavers to be at New York Paving's yard in Long Island City every morning between 5:00 a.m. and 5:30 a.m. We were required to show up at this time to unload equipment and material from the vehicles that pavers used to perform their jobs at various paving sites the previous day, and to reload the vehicles to be used that day, so that they would be fully loaded and prepared to leave the yard around 6:00 a.m. and be at the first paving site by 7:00

a.m.  From the time I started to the last time I worked there, it was the Company's procedure to require me and my coworkers to arrive for this early morning work, and all my coworker pavers and I regularly followed this procedure, regardless of which union we belonged to.

5. Occasionally, the first paving job was scheduled to begin at a time other than 7:00 a.m.  In that case, we were told by a foreman to be at New York Paving's yard 1 ½ hours to 2 hours before the start time of the first paving job, so that we could unload and reload the vehicle and leave the yard approximately an hour before the first paving job's start time.

6. The work I did each morning usually included unloading unnecessary and/or worn-out jackhammers, jackhammer bits, air compressors (for powering the jackhammers), hoses, brooms, shovels, rakes, and other tools from the vehicle, and retrieving fresh tools from the yard and loading them onto the vehicle.

7. The tasks described above are typical of the duties that pavers performed each morning.  Other work activities my coworker pavers engaged in each morning, and which I also might perform, included the following: unloading empty asphalt concrete pails from the vehicle and storing them in the yard; retrieving new pails filled with asphalt concrete and loading them onto the vehicle; unloading riser rings and squares (for raising manhole covers) from the vehicle and storing them in the yard; retrieving riser rings and squares from the yard and loading them onto the vehicle; unloading empty line tape boxes from the vehicle and storing them in the yard; retrieving boxes of various sized yellow and white line tape (for repairing road dividers, crosswalks, bike lanes, etc.) and loading them onto the vehicle; unloading empty canisters of diesel and propane (for heating the asphalt concrete before pouring it) from the vehicle and storing them in the yard; and retrieving full canisters of diesel and propane from the yard and loading them onto the vehicle.

8. Because the company pressured us to be out of the yard about an hour before the first paving job was scheduled to begin and there was a lot of work to be done, my coworker pavers and I began working as soon as we walked into the yard in the morning. Working together to complete the many tasks described above typically took 30 to 45 minutes.

9. As we performed our morning work in the yard, New York Paving supervisors routinely walked around the yard or were in New York Paving's office at the yard, and were well aware of the work we were doing.

10. After finishing unloading and reloading, paving crews got into their vehicles and drove to the first job site. Vehicles did not have formally designated drivers. Rather, the driver was a crew member who volunteered that day.

11. In the evening, after finishing the last paving job, the other crew members and I loaded our equipment and materials onto the vehicles and drove back to New York Paving's yard in Long Island City, as required by the Company. The drive from the final paving site to the yard typically took over thirty minutes, and often over an hour due to rush hour traffic and the fact that the last paving site was frequently located far from the yard.

12. At the end of the drive back to the New York Paving yard, pavers regularly stopped at a gas station a block away from the yard where the Company had an account to fuel the rollers and vehicles for the next day's jobs. Rollers are equipment pavers use to smooth the asphalt. They were hauled to the worksites on company vehicles. Once refueling was complete, we finished the drive back to the yard.

13. New York Paving did not pay me for the time I spent unloading and loading tools and equipment onto the vehicles each morning, or traveling to the first paving site of the day; nor to my knowledge did the Company did pay any of my coworker pavers for their morning work

3

and travel time. Our pay clocks started when the first paving job of the day was scheduled to begin, usually at 7:00 a.m. To my knowledge, New York Paving did not keep records of who unloaded and reloaded each morning, what time each paver arrived, or who drove the vehicles.

14. Likewise, New York Paving did not pay me, or to my knowledge any of my coworker pavers, for the time we were required to spend traveling back to the yard on the Company's vehicles after finishing at the final paving site.

INTENTIONALLY OMITTED (signature on next page)

X

X

X

X

X

X

X

X

X

X

X

X

X

X

5

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on August 13, 2018

By: _____
Edgardo Diaz