18-CV-04910 (ALC)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGARDO DIAZ, Individually and on Behalf of All
Others Similarly Situated,

Plaintiff,

-against-

NEW YORK PAVING INC.

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL ACTION CERTIFICATION AND COURT-FACILITATED NOTICE

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501
(516) 747-0300

Christopher P. Hampton, Esq.
Larry R. Martinez, Esq.
Nicholas P. Melito, Esq.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

PLAINTIFF CANNOT CONDITIONALLY CERTIFY AN FLSA
COLLECTIVE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Conditional Certification Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  Plaintiff Cannot Establish the Existence of a Common Policy
       or Plan Violative of the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          i.     There is no Common Policy or Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

         ii.    Even if There is a Common Policy, It Does Not
              Violate the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

              a.    Pre/Post-Liminary Work Is Non-Compensable . . . . . . . . . . . . . 9

              b.    Transporting Tools/Equipment While
                   Commuting is Non-Compensable . . . . . . . . . . . . . . . . . . . . . . . .12

    C.  Plaintiff Cannot Establish he is Similarly-Situated to the Putative
       Collective Members with Respect to Their Job
       Duties/Requirements and Employer Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

          i.     Plaintiff's Claims are Preempted by Section 301 of the
              Labor Management Relations Act to the Extent Plaintiff
              Seeks to Vindicate Rights Granted by a Collective
              Bargaining Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

         ii.    As Unit-Employees of Disparate Unions, Plaintiff and
              Putative Plaintiffs Were Subject to Distinct Job
              Requirements and Employer Policies . . . . . . . . . . . . . . . . . . . . . . . . . . .20

              a.    The Local 175 CBA and Local 1010 CBA
                   Require Different Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

              b.    The Local 175 CBA and the Local 1010 CBA
                   Impose Different Employer Policies . . . . . . . . . . . . . . . . . . . . . .22

   D. Conditional Certification of the Instant Action Will Not
      Promote Judicial Efficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

POINT II

   ANY NOTICE OF PENDENCY, AND PUTATIVE PLAINTIFF
   CONTACT INFORMATION REGARDING SAME, SHOULD
   BE LIMITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      A. Plaintiffs Are Not Entitled to Dissemination of any
         Reminder Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      B. Plaintiff's Receipt of Opt-In Contact Information Must
         be Limited to Only the Names and Last-Known Addresses
         of Putative Collective Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      C. There is no Need to Place the Notice in Pay Envelopes . . . . . . . . . . . . . . . . . .32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

## TABLE OF AUTHORITIES

**Cases**

**Page**

Adair v. Wisconsin Bell, Inc.,
   No. 08-CV-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)................................. 7

Anderson v. Mt. Clemens Pottery Co.,
   328 U.S. 680 (1946).......................................................................................... 9, 27

Andrews v. Cruz,
   No. 04-CV-0566 (PAC)(RLE), 2006 WL 1984650 (S.D.N.Y. July 14, 2006) ....................... 30

Colella v. City of New York,
   S.D.N.Y No. 07-CV-6312(JPO) ECF No. 88 ............................................. 10, 13, 14

Colon v. Major Perry Street Corp.,
   No. 12-CV-3788(JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013)................................ passim

Contrera et. al. v. Langer et. al.,
   No. 16-CV-03851(LTS)(GWG) ................................................................................ 30

Cowell v. Utopia Home Care, Inc.,
   No. 14-CV-736(LDW)(SIL), 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016) ........................... 28

Elswick v. Daniels Electric, Inc.,
   787 F.Supp.2d 443 (S.D.W.Va. 2011)................................................................... 18

Eng-Hatcher v. Sprint Nextel Corp.,
   No. 07-CV-7350(BSJ), 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009)................................... 5

Fasanelli v. Heartland Brewery, Inc.,
   516 F.Supp.2d 317 (S.D.N.Y. 2007)...................................................................... 31

Garcia v. Spectrum of Creations, Inc.,
   102 F. Supp. 3d 541 (S.D.N.Y. 2015)................................................................... 32

Guillen v. Marshalls of MA, Inc.,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012)..................................................................... 4

Guzelgurgenli v. Prime Time Specials, Inc.,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) ......................................................... 29, 32, 33

Hinterberger v. Catholic Health,
   No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008).......................... 18

Hoops v. Keyspan Energy,
    822 F.Supp.2d 301 (E.D.N.Y. 2011) ........................................................ 16, 18, 19

Integrity Staffing Solutions, Inc. v. Busk,
    135 S.Ct. 513 (2014) ............................................................................. 9

Iriarte v. Café 71, Inc.,
    No. 15-CV-3217(CM), 2015 WL 8900875 (S.D.N.Y. Dec. 10, 2015) ................... 31

Johnson v. D.M. Rothman Co., Inc.,
    861 F.Supp.2d 326 (S.D.N.Y. 2012) ...................................................... 16, 19

Knispel v. Chrysler Grp. LLC,
    No. 11-CV 11886, 2012 WL 553722 (E.D.Mich. Feb. 21, 2012) ....................... 29

Korenblum v. Citigroup, Inc.,
    195 F.Supp.3d 475 (S.D.N.Y. 2016) ....................................................... 5, 7

Laroque v. Domino's Pizza, LLC,
    557 F.Supp.2d 346 (E.D.N.Y. 2008) .......................................................... 5

Levy v. Verizon Information Servs., Inc.,
    498 F.Supp.2d 586 (E.D.N.Y. 2007) ......................................................... 18

Michael v. Bloomberg L.P.,
    No. 14-CV-2657(TPG), 2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015) .................. 31

Nakahata v. New York-Presbyterian Healthcare System, Inc.,
    No. 10-CV-2661(PAC),2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ..................... 18

Reich v. New York City Transit Auth.,
    45 F.3d 646 (2d Cir. 1995) .................................................................... 12

Reyes v. NY F&B Servs., LLC,
    No. 15-CV-2882(LTS)(DCF), 2016 WL 796859 (S.D.N.Y. Feb. 22, 2016) ............ 4, 7

Robinson v. Ryla Teleservs., Inc.,
    No. 11-CV-131, 2011 WL 6667338 (S.D.Ala. Dec. 21, 2011) .......................... 29

Romero v. H.B. Automotive Grp., Inc.,
    No. 11-CV-386, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ..................... passim

Rudd v. T.L. Cannon Corp., No. 3:10-CV-0591(TJM)(DEP),
    No. 10-CV-0591 (TJM)(DEP), 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ............ 28

Rutti v. Lojack,
    596 F.3d. 1046 (9th Cir. 2010) ......................................................................... 12, 13

Severin v. Project Ohr, Inc.,
    No. 10-CV-9696(DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012).......................... passim

Soler v. G&U, Inc.,
    568 F. Supp. 313 (S.D.N.Y. 1983) ....................................................................... 30

Soto v. ECC Indust., Inc.,
    No. 05-CV-4764 (BMC), 2006 WL 2375465 (S.D.N.Y. Aug. 14, 2006) ................... 30

Tand v. Solomon Schechter Day School of Nassau County,
    324 F.Supp.2d 379 (E.D.N.Y. 2004) ................................................................. 15, 16

Torres v. Nation One Landscaping, Inc.,
    No. 12-CV-9723 (MSS), 2014 WL 5350440 (N.D.Ill. Oct. 21, 2014).................... 32

Trinidad v. Pret A. Manger (USA) Ltd.,
    962 F.Supp.2d 545 (S.D.N.Y. 2013)................................................................... 31

Urtubia v. B.A. Victory Corp.,
    857 F.Supp.2d 476 (S.D.N.Y. 2012)................................................. 20, 22, 24, 28

Vadino v. A. Valey Engineers,
    903 F.2d 253 (3d Cir. 1990)................................................................................ 18

Warman v. Amer. Nat'l Standards Inst.,
    193 F.Supp.3d 318 (S.D.N.Y. 2016)............................................................... passim

Wright v. AARGO Sec. Servs., Inc.,
    No. 99-CV-9115(CSH), 2000 WL 264326 (S.D.N.Y. Mar. 9, 2000)...................... 30

**Statutes**

29 U.S.C. § 185............................................................................................................ 16

29 U.S.C. § 254......................................................................................................... 9, 10

29 U.S.C. § 254(a)(2)..................................................................................................... 12

**Regulations**

29 C.F.R. § 785.47 ........................................................................................................ 9

29 C.F.R. § 785.9 ......................................................................................................... 11

**<u>Other Authority</u>**

H.R. Rep. No. 104-585 ................................................................................................. 12

United States Department of Labor, Wage-Hour Division Opinion Letter,
    1997 WL 998025 (Jul. 28, 1997) ...…………………………………………...11

United States Department of Labor, Wage-Hour Division Opinion Letter,
    2018 WL 2348797 (Apr. 12, 2018) …………………………………………10, 11

## PRELIMINARY STATEMENT

On or about August 15, 2018 plaintiff Edgardo Diaz ("Plaintiff") moved to conditionally certify a Fair Labor Standards Act ("FLSA") Collective pursuant to 29 U.S.C. Section 216(b) (the "Collective") purportedly consisting of all "pavers" employed by defendant New York Paving, Inc. ("Defendant" or "NY Paving") for NY Paving's alleged failure to pay its pavers for: (i) preliminary work done before the pavers' paving shift was set to begin and/or for postliminary work done after said pavers' last paving shift was set end; and (ii) commuting/traveling from NY Paving's "yard" to the worksite at the beginning of their shift, and/or for commuting/traveling from the worksite to NY Paving's "yard" at the end of their shift (the "Motion").

Critically, Plaintiff cannot establish NY Paving had any common policy or plan applicable on a collective basis, much less a "common" policy which was violative of the law. Additionally, Plaintiff is not similarly-situated to other putative collective members, given that Plaintiff and other putative plaintiffs were required to perform different duties and were subject to disparate and distinct compensation policies, as provided for in contrasting collective bargaining agreements (a "CBA") applicable herein. Further, given the disparities in duties and the non-existence of any "common" policy or plan, along with the need to determine whether any violation of the FLSA occurred upon an individualized basis, adjudication of this matter on a collective-wide basis is impossible. Moreover, even if any "common" policy exists (it does not), Plaintiff's claims for overtime compensation are preempted pursuant to the Labor Management Relations Act (the "LMRA") and/or the National Labor Relations Act ("NLRA"), because adjudication of same would require interpretation of the terms of the CBA's applicable herein.

As such, and as will be detailed below, given these individualized threshold inquiries which require resolution prior to establishing that Plaintiff individually (let alone any putative/opt-in plaintiffs on a universal basis) may recover on any of these allegations, Plaintiff's Motion must fail.

Next, to the extent any portion of the Collective may be certified, Plaintiff makes improper requests in connection with same which must be denied. In this regard, Plaintiff's Notice of Pendency fails to account for the foregoing issues, and thus must be revised following any Court order in connection with same. Additionally, to the extent any Collective may be conditionally certified, Plaintiff is only entitled to receipt of the names and last-known addresses of putative opt-in plaintiffs in connection with same. Finally, Plaintiff also is not entitled to dissemination of reminder notices and/or placement of the Notice of Pendency in putative opt-in plaintiffs' pay envelopes.

<u>POINT I</u>

## PLAINTIFF CANNOT CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION

Plaintiff cannot establish that he will be able to carry the burden necessary to conditionally certify the Collective in that Plaintiff: (i) cannot establish a common policy, let alone a policy violative of the law exists in this case; (ii) cannot establish he is similarly-situated to putative collective members: and (iii) cannot show proceeding on a collective-action basis will promote judicial efficiency. Pertinently, Plaintiff's claims are premised on seeking payment for commuting time and/or for pre-liminary/post-liminary activities. <u>See</u> the Complaint (the "Compl.") (Docket Entry 1), ¶¶ 20-32 <u>see</u> <u>also</u>, <u>e.g.</u>, the Declaration of Edgardo Diaz, dated August 13, 2018 ("Diaz Decl.") (ECF Docket No. 31-2) at ¶¶ 4-6, 11-14; the Declaration of Frank Wolfe, dated August 9, 2018 ("Wolfe Decl.") (ECF Docket No. 31-3) at ¶¶ 4-6, 11-14; the

Declaration of Terry Holder, dated August 9, 2018 ("Holder Decl.") (ECF Docket No. 31-4) at ¶¶ 7-10, 13-16. In this regard, it is well-settled commute time is non-compensable. It is equally well-settled transportation of tools and equipment while commuting is also non-compensable, insofar as said transportation is not integral and indispensable to an employee's primary work activity. Thus, assuming NY Paving has a common policy as alleged by Plaintiff, since his claims fall squarely within the types of claims which have been deemed to not violate the FLSA in any event, Plaintiff simply cannot satisfy his "modest burden" to certify the Collective.

Second, Plaintiff cannot establish he is similarly-situated to the putative collective members with regard to their respective job duties/requirements and relevant employment policies because the vast majority – if not all – of putative plaintiffs in this matter (including Plaintiff) were unit-employees of two separate unions: Local 1010, Highway, Road Street Construction, Pavers & Road Builders District Council ("Local 1010"), and Construction Council Local 175, Utility Workers of America, AFL-CIO ("Local 175") (and/or any predecessor unions thereto). It is indisputable that, given this union status, putative plaintiffs herein were subject to separate and distinct duties, requirements and employer policies pursuant to the CBA's applicable herein. Further, and as will be detailed below, the presence of these distinct CBAs creates a threshold issue as to whether Plaintiff's claims require dismissal as preempted pursuant to Section 301 of the LMRA and/or the NLRA.

Third, and assuming Plaintiff could establish a common policy violative of the law, certification is nevertheless not warranted because in order to determine whether any services performed by putative plaintiffs herein could be considered compensable, the Court would need to conduct individualized inquiries as to the activities and allegations for each putative plaintiff, and for every individual day each putative plaintiff was purportedly employed by NY Paving.

Following this in-depth personalized review, the Court would then need to determine on an individualized basis that the "work" performed by each distinct putative plaintiff (on a day-by-day basis) was sufficient to create an obligation to compensate each plaintiff therefore. The need to conduct such individualized inquiries defeats and frustrates the purpose of proceeding as a collective action, preventing conditional certification and requiring denial of Plaintiff's Motion. As such, the Motion must be categorically denied as a matter of law.

**A. Conditional Certification Standard**

To conditionally certify an FLSA Collective pursuant to 29 U.S.C. §216(b), Plaintiff must adduce facts supporting two contentions. First, Plaintiff must show he – as the <u>Named Plaintiff</u> – is "similarly situated with respect to his job duties/requirements, compensation, and employer policies" to the putative collective members. <u>Romero v. H.B. Automotive Grp., Inc.</u>, 2012 WL 1514810, *8 (S.D.N.Y. May 1, 2012); <u>see also Colon v. Major Perry Street Corp.</u>, 2013 WL 3328223 (S.D.N.Y. July 2, 2013). Second, Plaintiff must establish, through a "factual showing [that he] and potential plaintiffs were victims of a common policy or plan that violated the law." <u>Reyes v. NY F&B Servs., LLC</u>, 2016 WL 796859, *2 (S.D.N.Y. Feb. 22, 2016). In this regard, Your Honor has previously acknowledged "'[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collection action because the class members are not similarly situated.'" <u>Guillen v. Marshalls of MA, Inc.</u>, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (Gorenstein, J.) (denying conditional certification as the plaintiff failed to provide proof of a common policy) (quoting <u>Adair v. Wisconsin Bell, Inc.</u>, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) (collecting cases)).

To satisfy this burden, Plaintiff must proffer "'substantial allegations of a factual nexus between himself and potential opt-in[s] with regard to his employer's alleged FLSA violation.'" Romero, 2012 WL 1514810 at *9. Specifically, Plaintiff must show putative collective members had similar duties and received similar treatment in terms of minimum and overtime wage violations. Id. at *10. While a plaintiff's "burden of proof is low, it is not non-existent – certification is not automatic." Reyes, 2016 WL 796859 at *3; see also Korenblum v. Citigroup, Inc., 195 F.Supp.3d 475, 480 (S.D.N.Y. 2016). Since (warranted) conditional certification should occur "early in the litigation and often before discovery has begun," courts make a determination regarding same through review of plaintiffs' pleadings and relevant affidavits. Warman v. Amer. Nat'l Standards Inst., 193 F.Supp.3d 318, 323 (S.D.N.Y. 2016). If Plaintiff cannot adduce facts in his pleadings/affidavits identifying how all employees are similarly situated; how a common policy to violate relevant wage-and-hour laws existed, and how they came to know such information, then the Collective must be denied. See id. at *4-5.

Finally, courts may consider affidavits/documentary evidence submitted by a defendant to determine the propriety of conditional certification. See, Korenblum, 195 F.Supp.3d at 482; Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 355-56 (E.D.N.Y. 2008); Eng-Hatcher v. Sprint Nextel Corp., 2009 WL 7311383, *4 (S.D.N.Y. Nov. 13, 2009).

## B. Plaintiff Cannot Establish the Existence of a Common Policy or Plan Violative of the Law.

Plaintiff cannot establish that he and putative plaintiffs herein were victims of a common policy or plan that violated the law because: (1) no policy requiring Plaintiff to report to the yard existed at all, and (even if it did); (2) Plaintiff's claims are premised on seeking payment for pre-liminary/post-liminary activities which are non-compensable as a matter of law in any event. See

Complaint, ¶¶ 20-32; Diaz Decl., ¶¶ 4-8, 11-13; Wolfe Decl., ¶¶ 4-8, 11-13; Holder Decl. ¶¶ 7-11, 13-14.[1]

        *i.*        *There is No Common Policy or Plan*

Plaintiff's allegations as to the purported existence of a "common policy" can be categorized into one singular, generalized allegation: NY Paving required its pavers to report to the yard before the beginning/after the end of the pavers' shifts. See, e.g., Diaz Decl. ¶¶ 4, 11; Wolfe Decl. ¶¶ 4, 11; Holder Decl. ¶¶ 6, 13. Such allegations are simply untrue. Instead, and as it pertains to such purported "common policy", NY Paving did not (and does not) have any company-wide policy requiring Pavers to report to the yard prior or subsequent to their shifts.[2] Rather, NY Paving offers its paving employees a voluntarily chauffeur service of which Plaintiff (and putative collective members) could choose to avail themselves, or not. See id.

Thus, rather than being required to report to the yard ever, any and all pavers could report directly to the first work-site of the day at the commencement of the workday, and could leave directly from the last work-site at the conclusion of the workday, in their own vehicles at their sole and absolute discretion. See id. This is the largest indicator of the lack of the existence of any "common policy," in that, in the past, almost all pavers met directly at the first worksite, while at present, some of those same pavers continued to decline participation in the chauffer program and simply drove themselves to and from the job sites without ever reporting to the yard. See id. Contrary to Plaintiff's specious claims, at no time were pavers required to report to

---

[1] As will be detailed below, even if Plaintiff's claims ultimately could be adjudicated to require compensation, the intensive, personalized factual inquiry necessary to determine same on behalf of each individualized putative plaintiff nevertheless would require denial of Plaintiff's request to proceed as a collective action.

[2] See, e.g., the Declaration of Peter Miceli, dated September 17, 2018 (the "Miceli Decl."), annexed as Exhibit 1 to the Declaration of Christopher P. Hampton, Esq., dated September 17, 2018 (the "Hampton Decl."), at ¶¶ 21-46; the Declaration of Robert Zaremski, dated September 17, 2018 (the "Zaremski Decl."), annexed as Exhibit 2 to the Hampton Decl., at ¶¶ 4-17.

NY Paving's yard prior to the workday beginning, or subsequent to the workday ending, and at no time were pavers were required to begin any integral, indispensable paving work prior/subsequent to said shifts. See id. Thus, given the voluntarily nature of the chauffeur program (which any paver could choose to use or choose to reject in their own discretion), Plaintiff cannot establish the existence of any "common policy" in this case. See Korenublum, 195 F. Supp. 3d at 482 (denying conditional certification where evidence submitted by the defendants refuted existence of "common policy or plan").

Further, given that the precedent cited by Plaintiff only concerns instances which involved mandatory policies, or which were adjudicated upon consent, they are inapposite to instant matter, which concerns an active dispute as to a voluntary policy. See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion ("Plaintiff's Brief"), p. 6 (citing Almanzar v. C & I Assocs., Inc., 175 F. Supp. 3d 270 (S.D.N.Y. 2016) (even though defendant conceded certain morning time was compensable, the court still held the time spent by the plaintiffs in the evening returning equipment was non-compensable); Hernandez v. NJK Contractors, Inc., No. 09 Civ. 4812 (RER), 2015 WL 1966355, at *23 (E.D.N.Y. May 1, 2015) ("the Court found . . . [the] [d]efendants required [the] [p]laintiffs to report for work at the Shop in the morning" (emphasis added)); Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 (2009) (Plaintiff mischaracterizes the holding in this case as the court did not hold "travel time between the company shop and the job site is compensable," rather, the court denied summary judgment because the "defendants' evidence suggest[ed] that the workday started at the work sites in Manhattan and the plaintiffs' evidence suggest[ed] that the workday started at . . . the shop")).

Additionally, the Department of Labor Investigations cited by Plaintiff also pertained to mandatory policies, and can be further differentiated by the fact that defendants therein

consented to entry of judgment (something Defendant herein does not), <u>without admitting to the</u> <u>underlying violations</u>.  <u>See</u> Plaintiff's Brief, p. 6 (<u>citing</u> <u>Acosta v. Casa Concrete, Inc.</u>, No. 18 Civ. 1500 (DRH) (AYS), ECF No. 6, at *1 (E.D.N.Y. March 20, 2018)); <u>see also</u> <u>Plaintiff's</u> <u>Exhibit 4</u> (Docket Entry 32-4) (<u>citing</u> Bay Area Underpinning Inc. ("[W]ork time they spent driving between their last work site of the day and a <u>required</u> return to the employer's premises."); <u>Universal Fire Systems Inc.</u>, (generally only finding that installers and technicians were inappropriately paid a fixed weekly salary which failed to include an overtime premium); <u>Perez v. Ferry Carpets, Inc.</u>, No. 15 Civ. 3374 (SDW)(LDW), ECF No. 27 (D. N.J. May 24, 2016) (entering judgment on consent and generally finding floor installers were inappropriately paid a fixed weekly salary which failed to include an overtime premium); <u>Mota's Floorcovering</u> <u>Inc.</u> ("Employers that <u>require</u> workers to travel to and from worksites as part of their daily routines should take note of this case to avoid a common, but easily preventable violation"); <u>Trademark Garage Floors Inc.</u> ("The employer <u>required</u> that employees report to the business to unload and load trucks in the morning . . ."); <u>Paul G. White Tile Co.</u> ("The company <u>required</u> employees who worked as floor installers to report to the company warehouse at the beginning and end of each workday . . .")).

Given the foregoing which establishes that there is no common policy or plan <u>requiring</u> pavers to report to the yard at all, Plaintiff's Motion must be categorically denied.

   ii. <u>*Even if There Is a Common Policy, It Does Not Violate the Law*</u>

However, even if NY Paving did have a policy of requiring its pavers to report to the yard as alleged by Plaintiff (it does not), Plaintiff still would not be able to conditionally certify a collective action for the claims he alleges. This is because Plaintiff seeks payment only for commuting time and/or for pre-liminary/post-liminary activities.  <u>See</u> the Compl. ¶¶ 20-32; <u>see</u>

also e.g., the Diaz Decl, ¶¶ 4-6, 11-14; the Wolfe Decl, ¶¶ 4-6, 11-14; the Holder Decl., ¶¶ 7-10, 13-16.  As will be detailed below, such claims are non-compensable.

### a.     Pre/Post-Liminary Work Is Non-Compensable

FLSA regulations provide a "workday" consists only of the period between the time "at which [an] employee commences (his) principal activity or activities" and "at which he ceases such principal activity or activities." 29 C.F.R. § 785.9(a).  The Supreme Court "has consistently interpreted the term principal activity to embrace [only] activities which are an integral and indispensable part of the principal activities." Integrity Staffing Solutions, Inc. v. Busk, 135 S.Ct. 513, 517 (2014) (internal quotations and citations omitted).  "An activity is . . . integral and indispensable to the principal activities that an employee is employed to perform [only] if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  Id. More importantly, the Portal-to-Portal Act amended the FLSA to specifically provide that "activities which are preliminary to or postliminary to [an employee's] principal activity or activities . . . which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases," are not compensable as a matter of law. 29 U.S.C. § 254(a)(2).  It is evident Plaintiff seeks compensation only for activities which occurred prior/subsequent to his workday.  See the Compl. ¶¶ 20-32; see also e.g., the Diaz Decl, ¶¶ 4-6, 11-14; the Wolfe Decl, ¶¶ 4-6, 11-14; the Holder Decl., ¶¶ 7-10, 13-16.  Given such time is not compensable as a matter of law (see 29 U.S.C. § 254(a)(2)), Plaintiff's Motion should be denied.[3]

---

[3] Defendants also note that, to the extent Plaintiff/the putative class could have performed any services which were "integral and indispensable" to their primary duties as pavers in connection with their claims for compensation for preliminary/post-liminary activities (they did not), facts will reveal said tasks were not compensable due to their de minimis nature. See, e.g., 29 C.F.R. § 785.47; Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946); the

Further, to the extent Plaintiff alleges a right to compensation for the pre/post-liminary time spent commuting from the yard to the work-site (and vice versa) in a NY Paving vehicle, "use of a company-provided vehicle does not, alone, make an ordinary commute compensable." Id. This is because the Employee Commuting Flexibility Act ("ECFA") provides that traveling to and from the jobsite in the employer's vehicle and performing activities "which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities." Id. In this regard, Congress enacted the ECFA in 1996 by extending the Portal-to-Portal's exemptions for commuting time to include use of an employer's vehicle during said commute. In this regard, the ECFA states:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee. 29 U.S.C. § 254(a)

"These standards make clear that compensable work time generally does not include time spent commuting to or from work." United States Department of Labor, Wage-Hour Division Opinion Letter, 2018 WL 2348797, at *2 (Apr. 12, 2018). Indeed, "[t]he use of an employer's vehicle for travel by an employee and activities that are incidental to the use of such vehicle for commuting are not considered 'principal' activities when meeting the following conditions: the use of the employer's vehicle for travel is within the normal commuting area for the employer's

---

Order dated December 5, 2013 in the matter of <u>Colella v. City of New York</u>, No. 07-CV-6312 (LAP), ECF No. 88 (the "Colella Order") at page 53, a copy of which has been annexed to the Hampton Decl. at <u>Exhibit 3</u>. Thus, while Defendants understand that a fact-intensive inquiry into the "merits" of Plaintiff's claim is not pertinent to adjudication of the Motion, Defendants still submit that alerting the Court to such matters is proper at this time given that (and as will be detailed below) adjudication of whether the time spent performing the foregoing activities was non-compensable as *de minimus* would require the Court to engage in personal inquiries for each putative member which likely prevents conditional certification as a matter of law in any event.

business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or the representative of such employee."  29 C.F.R. 785.9(a).[4] Here, both conditions have been met, and thus Plaintiff and other putative members' commute using NY Paving's company vehicles are non-compensable under the FLSA.

Plaintiff only commutes within the "normal commuting area," which is New York City. See Miceli Decl., ¶¶ 4, 26.  Further, the use of NY Paving's vehicle for such chauffeur service reflects an agreement between the parties as based on established industry and NY Paving practices.  See id. at ¶¶ 25, 27; see also Zaremski Decl., ¶¶ 8-10. Accordingly, the ECFA's requirements are easily met.  See WHD Opinion Letter, 1997 WL 998025, at *1 (The existence of an agreement found "based on established industry or employer practices").  Here, NY Paving provided all pavers the option of driving to the job site in their own vehicles or to be driven from the yard to the job site.  This paradigm has existed for some time and for those which have elected to be driven from the yard, an agreement based on past practice is established.  See id.

The only argument Plaintiff may be making to the contrary is that, since Plaintiff purportedly was "required" to report to the yard prior/subsequent to their shifts, he must have been "required" to use the company vehicle when commuting.  See Diaz Decl. ¶¶ 4-5, 10-12; Wolfe Decl. ¶¶ 4-5, 10-12; Holder Decl. ¶¶ 7-8, 12-14.  Such requirement is obviously not the case.  See Miceli Decl. ¶¶ 24, 31-34 (noting that commuting to/from the yard was never a condition of employment and that use of NY Paving's vehicles was completely voluntary and for the sole benefit of the Pavers); see also Zaremski Decl., ¶¶ 13-17 (same).  However, even if

---

[4] See also WHD Opinion Letter, 2018 WL 2348797, at *4 (Apr. 12, 2018) ("With respect to commuting time . . .the law specifies that use of a company-provided vehicle does not, alone, make an ordinary commute compensable, provided that 'the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee." (quoting 29 U.S.C. 254(a)); WHD Opinion Letter, 1997 WL 998025, at *1 (Jul. 28, 1997) (providing that agreements to use employer-provided vehicles need not be written, and may also be "based on established industry or employer practices.").

Plaintiff and putative collective members were compelled to commute via use of a NY Paving vehicle, Congress (in enacting the ECFA) and the Courts (in interpreting the ECFA) have concluded an employer's mandate that employees use a company vehicle for commuting, even as a condition of employment, cannot in-and-of-itself render the commute time compensable.  See H.R. Rep. No. 104-585, at 10 (1996) (the minority report complained that the "bill permits an employer to compel an employee to agree to use the employer's vehicle for commuting purposes, as a condition of employment" (emphasis added)); Rutti v. Lojack, 596 F.3d. 1046, 1052 (9th Cir. 2010) (rejecting plaintiff's argument he was "required" to commute using the employer's vehicle, and holding instead that the "ECFA's legislative history confirms its plain language: the 'agreement' required by the ECFA may be a condition of the employee's employment").  Thus, Plaintiff cannot establish a policy that violates the law insofar as preliminary/post-liminary time is non-compensable as a matter of law.

### b. Transporting Tools/Equipment While Commuting Is Non-Compensable

In order for Plaintiff to establish putative collective members should have been compensated for the time spent being chauffeured, Plaintiff must first prove he performed "work" as defined by the FLSA during his commute.  In this regard, the Second Circuit has set forth what generally constitutes "work" for purposes of the FLSA:

> an activity constitutes "work" (compensable under the FLSA) if it involves "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  Reich v. New York City Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995).

Notably, neither Plaintiff nor any of the other declarants ever allege they (or other putative collective members) performed "work" during their commutes.  See Diaz Decl. ¶¶ 10-11; Wolfe Decl. ¶¶ 10-11; Holder Decl. ¶¶ 12-13.  Instead, Plaintiff merely alleges commute

time should be compensable because they <u>voluntarily</u> transported passengers, tools and equipment in the vehicle. <u>See</u> <u>id.</u> These allegations run counter to relevant law as espoused in <u>Rutti</u>, where the Court of Appeals for the Ninth Circuit held that restrictions placed on an employee's use of an employer-provided vehicle did not render the commute compensable. <u>Rutti</u>, 596 F.3d. at 1052 ("The legislative history shows that Congress recognized that employers would place conditions on their employee's use of vehicles for commuting.").

Congress has acknowledged it "is not possible to define all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle. <u>However, it stated that communications between employer and employee, routine vehicle safety inspections or other minor tasks, and transportation of tools and supplies, would not change the compensable nature of the travel.</u>" <u>Id.</u> (internal quotation marks and citations omitted) (emphasis added).

<u>Colella v. The City of New York</u> is also directly applicable, and therefore instructive. In <u>Colella</u>, former Chief Judge Loretta Preska of the United States District Court for the Southern District of New York granted the defendants' motion for summary judgment dismissing plaintiffs' unpaid overtime claims premised on the allegation they: (a) spent time transporting tools, materials, equipment and other passengers in their assigned FDNY vehicles; (b) spent time in route to either their worksites or homes ensuring that the tools, materials, and equipment were secure in their vehicles; (c) spent time inspecting their work vehicles each morning before work and after they returned home from work; and (d) spent time receiving or returning calls or pages from their supervisors regarding work assignments for that day or the next day.[5]

In rejecting plaintiff's claims, Judge Preska reasoned that the transportation of necessary tools and equipment – and other individuals – were covered under the ECFA and, was thus non-

---

[5] <u>See</u> the Colella Order.

compensable. Id. at page 49. Specifically, Judge Preska found plaintiffs were "tradesmen" not truck drivers, and thus their time spent acting as "truck drivers" was not integral and indispensable to their spent acting as "tradesmen". Id. at 40. Indeed, despite the District Court acknowledging the transportation of tools and other individuals were required for plaintiffs to perform their trade, it still found such time non-compensable and held "transporting equipment is not 'integral' to being a tradesmen." Id. (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 40-41 (2005) ("[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity'")).

Like plaintiffs in Colella and Rutti, Plaintiff here is not entitled to compensation solely because he commuted to worksites in a vehicle that is transporting materials, equipment and other pavers. Further, and given that Plaintiff acknowledges he volunteered to drive other individuals along with said tools and equipment[6] the fact Plaintiff alleges he was – at times – the driver of said commute does not affect this finding. This is because Plaintiff and the putative collective members are pavers, not "truck drivers" or "tool transporters." See Colella Order, p. 40. Thus none of the activities alleged in the Complaint or in the accompanying declarations are integral or indispensable to their primary job function, to wit, paving. Accordingly, because Plaintiff cannot establish that, as a matter of law, his commute time (either driving or being driven) is compensable, Plaintiff cannot establish that he was subject to a policy which violated the FLSA. Without more, Plaintiff's motion for conditional certification must be denied in its entirety.

### C. Plaintiff Cannot Establish He is Similarly-Situated to the Putative Collective Members with Respect to Their Job Duties/Requirements and Employer Policies

---

[6] See, e.g., Diaz Decl. ¶ 10; Wolfe Decl. ¶¶ 10; Holder Decl. ¶¶ 12.

In addition to the non-existence of a common policy or plan to violate the law, Plaintiff's Motion also must fail because putative collective members herein were subject to disparate duties and employer policies as provided for in relevant CBAs. Given the foregoing, Plaintiff's Motion must be denied because: (i) adjudication of Plaintiff's claims require interpretation of the relevant CBAs' terms, and thus are preempted pursuant to the LMRA/NLRA; and/or (ii) the fact Plaintiff and putative members were subject to such distinct duties/employer policies prohibits conditional certification of the Collective in any event.

In connection with these issues, three critical facts are not in dispute. First, it cannot be disputed that Plaintiff and the putative plaintiffs in this matter were unit-employees of either Local 1010 or Local 175 (and/or any predecessor unions thereto). See the Miceli Decl., ¶¶ 5-7. Second, it also cannot be disputed that unit-employees of Local 1010 were subject to the terms and conditions of the CBA as between Local 1010 and NY Paving (the "Local 1010 CBA"), whereas unit-employees of Local 175 were subject to the terms and conditions of the CBA as between Local 175 and NY Paving (the "Local 175 CBA"). See the Miceli Decl., ¶¶ 5-6. Finally, it cannot be disputed the Local 1010 CBA contains detailed provisions concerning the duties and requirements of Local 1010 unit-employees, which vastly differ from the provisions concerning the duties and requirements applicable to Local 175 unit-employees as detailed in the Local 175 CBA.[7] See also the Miceli Decl., ¶¶ 5-20.

    i.   *Plaintiff's Claims are Preempted by Section 301 of the Labor Management Relations Act to the Extent Plaintiff Seeks to Vindicate Rights Granted by a Collective Bargaining Agreement*

It is axiomatic "Section 301 of the LMRA, among other things, governs actions by an employee against an employer for breach of a collective bargaining agreement." Tand v.

---

[7] See the Local 175 CBA a copy of which has been annexed to the Hampton Decl. at Exhibit 4; see also the Local 1010 CBA, a copy of which has been annexed to the Hampton Decl. at Exhibit 5.

Solomon Schechter Day School of Nassau County, 324 F.Supp.2d 379, 383 (E.D.N.Y. 2004) (citation omitted); see also 29 U.S.C. § 185. Indeed, courts consistently hold "[s]uits arising under section 301 include those seeking to vindicate uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge . . . Thus, Section 301 preempts . . . claims in any case involving the interpretation of rights and responsibilities under a CBA, regardless of whether the plaintiff's claims sound in tort or contract." Tand, 324 F.Supp.2d at 383 (emphasis added) (citation and internal quotations omitted). This includes claims brought under the FLSA (and/or the New York Labor Law ("NYLL")), if determination of whether Plaintiff's FLSA and/or NYLL rights were violated requires "interpretation" of the CBA. See, e.g., Hoops v. Keyspan Energy, 822 F.Supp.2d 301, 306-07 (E.D.N.Y. 2011); Johnson v. D.M. Rothman Co., Inc., 861 F.Supp.2d 326, 333 (S.D.N.Y. 2012).

Notably Plaintiff, in connection with his FLSA and NYLL overtime claims (the "Preempted Claims"), seeks compensation at a rate commensurate with the rates provided for in each unit-employee's applicable CBA. See Compl. ¶¶ 33, 37, 59-61, 66, Count I, Count II. Indeed, while Plaintiff's Complaint conveniently fails to note that the "regular" rate for which Plaintiff seeks pay is the rate provided for in the CBA's individually applicable to each unit-employee (see id.), the declarations submitted in support of the Motion confirm this demand. See Holder Decl., ¶ 17 (seeking "compensation for this work at our proper scaled rates"). Given this demand, it is evident that determination of whether Plaintiff/putative plaintiffs are entitled to compensation at their respective CBA's "scaled rates" requires this Court to adjudicate rights provided for under said CBA for their FLSA and NYLL overtime claims.

In this regard, the CBA's only require payment of CBA-scale rates for work "covered" by said CBA. See the Local 175 CBA, Article II, p. 5; see also the Local 1010 CBA, Article II,

p. 3.  Thus, in order to determine whether Plaintiff/putative plaintiffs are entitled to CBA-scale rates, the Court would first have to determine whether the preliminary/post-liminary "work" Plaintiff/putative plaintiffs performed were sufficiently covered by the Local 1010 CBA (where applicable) or the Local 175 CBA (where applicable).  This would require the Court to make specific, individualized inquiries as to the actual services performed by Plaintiff and each putative plaintiff, and then analyze whether such services were services Local 175 (Plaintiff's Union) intended be covered by the Local 175 CBA, or were services Local 1010 intended to be covered by the Local 1010 CBA.  In other words, the Court would need to analyze whether Plaintiff was performing paving services befitting an "Asphalt Paver" pursuant to Local 175's CBA, or whether other putative plaintiffs were performing paving services befitting a "Construction Utility Worker" or which could be considered "Production Paving" pursuant to Local 1010's CBA.

In this regard, the critical inquiry is determining whether the preliminary/post-liminary/commuting "work" for which Plaintiff (and putative collective members) may seek compensation was "integral and indispensable" to the work "covered" by either the Local 1010 CBA or the Local 175 CBA.  This would require the Court review the terms of said CBA's to determine if the work Plaintiff (as a member of Local 175) or other putative plaintiffs (as either members of Local 175 or Local 1010) performed could be considered "Local 175"/"Local 1010" work "covered" pursuant to the applicable CBA's.  Indeed, it is distinctly possible the alleged "work" Plaintiff/putative plaintiffs purportedly performed could not be covered by said CBA's and instead consisted of duties which could and/or should have been performed by other employees (i.e. performing "driving" duties more befitting of a "Teamster," performing

"cleaning" duties more befitting of a "Warehouseman," or performing ministerial/administrative duties more befitting support/administrative staff).

In light of these necessary, threshold and individualized inquires as to the actual "work" performed by each putative plaintiff as analyzed against the duties covered by such plaintiff's respective CBA, it is evident the Preempted Claims are preempted by Section 301 of the LMRA, and/or the NLRA.  See, e.g., Hoops, 822 F.Supp.2d at 301 (finding FLSA claim preempted as determination of wages owed required interpretation of wage language in CBA, particularly the right to receive wage shift differentials); Levy v. Verizon Information Servs., Inc., 498 F.Supp.2d 586 (E.D.N.Y. 2007) (finding wage deduction claims as preempted because determination of whether such deductions were permitted under the CBA would require interpretation of said CBA); Hinterberger v. Catholic Health, 2008 WL 5114258 (W.D.N.Y. Nov. 25, 2008) (finding claims of failure to pay for "post-liminary" work preempted by the CBA); Nakahata v. New York-Presbyterian Healthcare System, Inc., 2011 WL 321186, *4 (S.D.N.Y. Jan. 28, 2011), reversed on other grounds, 723 F.3d 192 (2d Cir. 2016) ("[The nature of the work allegedly done; the circumstances of training; or when, where and how the uncompensated hours of work . . . all . . . are necessary to determine whether they are compensable or require interpretation of the collective bargaining agreement.  If any of the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provision.").[8]

---

[8] See also Vadino v. A. Valey Engineers, 903 F.2d 253, 264 (3d Cir. 1990) ("[Plaintiff's] FLSA claim is, in essence, a 'repackaged' section 301 claim which cannot be maintained under the FLSA because it is dependent upon [Plaintiff's] unproven contention that he was entitled to [a certain pay rate] under the collective bargaining agreement."); Elswick v. Daniels Electric, Inc., 787 F.Supp.2d 443 (S.D.W.Va. 2011) (dismissing plaintiff's FLSA claims where the court found that the plaintiff "is entitled to additional overtime pay only if a fact finder determines that defendant improperly classified him as a laborer rather than a lineman and paid him overtime wages based on

Indeed, there are two cases which directly concern issues such as the ones elucidated above, and are thus illustrative. In Hoops v. Keyspan Energy, plaintiff sought to recover unpaid overtime under the FLSA and defendant moved to dismiss plaintiff's claim as preempted by the LMRA. 822 F.Supp.2d at 302. The court granted defendant's motion, noting that:

> [B]efore the Court can reach the issue of whether the [p]laintiff is entitled to unpaid overtime compensation, the Court must first determine whether he was entitled to receive night shift differentials in his straight-time wage rate. . . [B]ecause the [p]laintiff's entitlement to unpaid overtime under the FLSA hinges on his contractual right to receive night shift differential in his straight-time wage rate, the Court cannot adjudicate the statutory claim without a ruling on the contract claim. It is a threshold question that must be determined pursuant to the CBA dispute resolution procedures.

Id. at 307.

Similarly, in Johnson v. D.M. Rothman Co., Inc., plaintiffs sought to recover unpaid overtime wages pursuant to the FLSA and NYLL against defendant, and defendant moved for summary judgment on the theory that such claims were preempted by Section 301 of the LMRA. 861 F.Supp.2d 326, 328 (S.D.N.Y. 2012). The court granted defendant's motion, finding plaintiffs' claims were contingent upon interpretation of a CBA which covered plaintiffs' employment. Id. at 332-33. In so finding, the court noted:

> While the boundary between claims requiring interpretation of a CBA . . . is elusive, determining [p]laintiffs' entitlement to the grandfather and hi-lo differentials requires more than simple reference to the face of the CBA. . . To determine whether the [p]laintiffs were entitled to grandfather and hi-lo pay [sufficient to entitle them to receipt of additional overtime compensation], the Court would have to evaluate [p]laintiffs' work histories in light of the intended meaning and purpose of the CBA's terms, a task which the Court is ill-equipped to perform, and which the LMRA mandates should be left to the CBA's grievance procedures. Thus . . . the Court cannot address [p]laintiffs' grandfather and hi-lo claims without digging into forbidden ground.

Id. at 333 (internal quotations and citations omitted).

---

the laborer's rate", and found that the LMRA prevented the court from adjudicating the threshold issue of the plaintiff's proper classification).

This is exactly the type of inquiry that needs to be undertaken here.  Before this Court can determine whether Plaintiff is entitled to unpaid overtime compensation at the scaled rate, it first must determine whether Plaintiff, and each putative plaintiff, were performing "work" covered by the relevant CBA's individually applicable to each unique collective action member.  As such, the Court would necessarily be required to evaluate – on an individualized basis – Plaintiff and each putative plaintiff's work history in light of the intended meaning of the relevant sections of the applicable CBA to establish whether such individuals ever performed "work" that was "covered" by the Local 1010/Local 175 CBA's sufficient to entitle them to receipt of any pay, let alone receipt of overtime compensation at the CBA-scaled rate.  In light of these individualized predicate issues, Plaintiff's request for conditional certification of a Collective in connection with his request for payment at CBA-scaled rates should be denied.

> ii.  *As Unit-Employees of Disparate Unions, Plaintiff and Putative Plaintiffs Were Subject to Distinct Job Requirements and Employer Policies*

In addition to the foregoing, the Local 175 CBA and Local 1010 CBA also imposed different duties and required different employer policies upon putative collective members. Courts routinely find that such disparate duties and policies – including the existence of potential individualized defenses in connection with same – eviscerate the right to proceed as a collective action.  See, e.g., Colon, 2013 WL 3328223 (denying certification for maintenance workers in light of the different duties and responsibilities applicable to maintenance works as opposed to superintendents); Warman, 193 F.Supp.3d at 323 (finding that issues in connection with, inter alia, individualized defenses prevented conditional certification); Urtubia v. B.A. Victory Corp., 857 F.Supp.2d 476, 484 (S.D.N.Y. 2012) (limiting   conditional certification to a class of "waiters, food runners, bussers and dishwashers," as opposed to all "kitchen staff" because plaintiff could not establish he was similarly-situated to said staff regarding the hours, duties and

compensation of other kitchen staff and delivery persons); <u>Severin v. Project Ohr, Inc.</u>, 2012 WL 2357410 (S.D.N.Y. June 20, 2012) (denying conditional certification because the disparate duties performed by putative home health aide plaintiffs prevented certification as a matter of law).

### a.   <u>The Local 175 CBA and Local 1010 CBA Require Different Duties</u>

Relevantly, the Local 175 CBA only "covers work" in connection with "all Asphalt Installation . . . all Grounds Improvement, Utility, Paving and all Road Building Work" as expressly defined and limited by "Article VIII" of said CBA. <u>See</u> the Local 175 CBA, Article II, p. 5. In this regard, the Local 175 unit-employees' duties are limited to:

- Performance of asphalt paving, slurring methacrylate, resurfacing including sandblasting, chipping and scrapping, fence installation;

- Asphalt slurry restoration work;

- Work related to the preparation and cleanup of all Turf material;

- Traffic safety maintenance for all work sites (including safety watchman); and

- "General Construction work related to Asphalt paving."

Local 175 CBA, Article VIII, p. 9.

In contrast, the Local 1010 CBA covers substantially more work concerning "Site and Grounds Improvement, Utility, Paving and Road Building Work" as comprehensively covered by "Article VI." <u>See</u> the Local 1010 CBA, Article II, p. 3. Thus, the Local 1010 CBA includes but is not limited to performance of the following duties:

- All paving work, regardless of the materials used;

- Asphalt paving "subsequent to subway, sewer, water main, conduit, power, communications and duct line construction";

- "Production Paving" including all asphalt paving and asphalt restoration work;

- Paving removal/excavation/milling;

- Installation of dowels, expansion joints, rubber/stamp sidewalks;

- Saw cutting;

- All concrete work;

- Road finishing, including pouring and finishing of steel and concrete curb;

- Unloading (but not loading) and carrying of materials;

- Preparation, installation and removal of "Paving Block & Curb";

- Landscaping incidental to paving; and

- Formsetting for all types of roadways, sidewalks, drive ways, etc.

Local 1010 CBA, Article VI, p. 9-13.[9]   As such, given the vast scope of work "covered" and allowed by the Local 1010 CBA as compared against the limited duties "covered" and allowed by the Local 175 CBA, it is evident that the putative collective members are not "similarly situated with respect to their job duties/requirements" sufficient to maintain a collective as a matter of law.  See, e.g., Romero, 2012 WL 1514810; Colon, 2013 WL 3328223; Warman, 193 F.Supp.3d at 323; Urtubia, 857 F.Supp.2d at 484; Severin, 2012 WL 2357410.

### b. The Local 175 CBA and the Local 1010 CBA Impose Different Employer Policies

Additionally, the two CBA's require NY Paving apply distinct wage-and-hour policies as between Local 175 unit employees and Local 1010 unit employees.  For instance, the Local 1010 CBA requires that, before any work is done by Local 1010 employees, a "Pre Job Conference" is held; there is no such requirement on behalf of Local 175 employees.  Compare Local 1010 CBA, Article 4, p. 5; with Local 175 CBA.  More importantly, the two CBA's impose distinct

---

[9] Please note the "Local 1010 CBA" as identified herein actually consists of three separate CBA's: (i) a CBA in effect from 2011 – 2014; (ii) a memorandum of agreement in effect from 2014 – 2017; and (iii) a CBA scheduled to be effective from 2017 – 2020.  See Ex. "5" annexed to the Hampton Decl. To the extent there any substantive, material changes as between these distinct versions, such changes will be explicitly noted herein.

compensation policies.  In this regard, the Local 1010 CBA mandates that all single shifts "shall be a continuous nine hours, starting at 8:00 a.m." with a "mealtime [of] one hour."  See Local 1010 CBA Article VII, Section 3, p. 13.[10]  Conversely, the Local 175 CBA does not explicitly define the extent of a "shift."  See the Local 175 CBA.

Further, the two distinct CBA's require implementation of individualized "differential pay."  In this regard, the Local 175 CBA requires a shift-differential pay of twenty-five percent (25%) over the "single-time" rate for "Night Work."  See id., Article IX, Section 2, page 10.  In contrast, the Local 1010 CBA requires shift-differential pay of an additional fifteen percent (15%) for "Night Work," which is increased to twenty-five percent (25%) if such "Night Work" is also deemed "Production Paving" work; the Local 1010 CBA also provides for shift-differential pay of twenty-five percent (25%) for "Production Paving" work.  See Local 1010 CBA Article VII, Sections 2 and 3, p. 12-13.[11]  In connection with the foregoing, it would need to be determined whether any of the preliminary/post-liminary work for which Plaintiff and the putative collective seek compensation constituted "Night Work" and/or "Production Paving" work sufficient to require the additional differential pay for same, and thus the distinct policies and terms of employment which would need to be analyzed prevent conditional certification in any event.

Additionally, each CBA mandates payment of different wages based upon the classification of employees therein.  For instance, the Local 175 CBA delineates different rates for the following types of employees: foreman/supervisor, milling and micro paver screedman; rakers; liquid tar paintman; tamper/shoveler (with different rates depening on what type of duty

---

[10] The 2017-2020 Local 1010 CBA provides for a continuous shift 8½ hours, with a meal break of one half (½) hour.

[11] The 2017-2020 Local 1010 CBA provides for a ten percent (10%) shift-differential for "Night Work" only if such "Night Work" is "Production Paving" work and otherwise provides for no shift-differential for Night Work; further it also provides for a general shift-differential rate for all "Production Paving" work generally. See id.

such tamper/shoveler is doing); backhoe, roller, loader, dozer Operator; gradealls, Vermeer cutter, trenching machine Operator; spreaders Operator; Roller Operator; Watchmen; and Apprentices. See Local 175 CBA, Article IX, Section 6, p. 11-13. In contrast, the Local 1010 CBA provides for specific rates for "Foreman, Formsetter, [and] Laborer" for all work except "Production Paving"; and for "Foreman, Screed person, Raker [and] Shoveler" for "Production Paving" work. See Local 1010 CBA, Article VII, Section 6, p. 17-18.

As such, in light of the indisputable facts that putative plaintiffs herein are subject to separate and distinct duties, requirements and employer policies pursuant to the CBA's applicable herein, Plaintiff cannot, and will not be able to, establish that he and all putative collective members are "similarly situated with respect to their job duties/requirements, compensation, and employer policies," requiring denial of Plaintiff's Motion as a matter of law. See, e.g., Romero, 2012 WL 1514810; Colon, 2013 WL 3328223; Warman, 193 F.Supp.3d at 323; Urtubia, 857 F.Supp.2d at 484; Severin, 2012 WL 2357410.

Indeed, courts in the Second Circuit routinely deny conditional certification in analogous cases. For instance, in Severin v. Project Ohr, Inc., the plaintiffs sought to conditionally certify a collective action concerning the defendant's purported failure to pay overtime to home health aides who allegedly were not exempt under the companionship exemption. 2012 WL 2357410, at *1. The court denied conditional certification because of the individualized inquiries necessitated in analyzing whether the companionship exemption applied to the putative collective members. Id. at *3. In denying conditional certification of a collective action, the court in Severin stated "it is premature to issue a collective action notice, and [we are] not sure that one will ever be appropriate in this case. [That is because] the plaintiff would have to establish on an individual plaintiff-by-plaintiff basis that somehow they performed general

household work more than 20 percent of the time, and of course any work, household work, that is related to the fellowship, care or protection of their client wouldn't negate the exemption." Id.[12]

This is exactly the case here. Through Plaintiff's own declaration, he acknowledges not all Pavers perform the same duties each morning, or even performed any duties every morning. In this regard, Plaintiff states he "also might perform" other activities which his "coworker pavers engaged in." Diaz Decl., ¶ 7 (emphasis added). Similarly, opt-in Plaintiff Wolfe acknowledges this exact same issue in his declaration. Wolfe Decl., ¶ 7. Thus, given this acknowledged disparity in "duties" performed on a daily basis, Plaintiff would have to establish on an individual plaintiff-by-plaintiff basis that somehow the activities they sometimes performed were sufficiently "integral and indispensable" to their CBA-mandated duties to make them compensable as a matter of law.[13]

Given the foregoing, it is evident Plaintiff cannot establish he was similarly situated to putative collective members with regard to his duties and the employer policies applicable to him, mandating Plaintiff's Motion be denied.

### D. Conditional Certification of the Instant Action Will Not Promote Judicial Efficiency

---

[12] Defendant submits the underlying analysis required in connection with determining whether the application of the companionship exemption may have precluded a finding of FLSA liability in the Severin matter would be substantively identical to the analysis which would be required herein. To wit (and as detailed further below), the Court here would still need to conduct individualized inquiries into Plaintiff and the putative collective members' claims to determine whether any violations of the FLSA actually occurred, just as the Court in Severin would have been required to conduct similar individualized inquiries to determine whether the Severin defendant's alleged failure to pay overtime to putative collective members therein was a violation of the FLSA.

[13] As will be further detailed below, the Court would also be required to make an individualized determination as to whether the activities a particular putative collective member performed at the yard were exempt under the Portal-to-Portal Act and/or were de minimis, because if such activities were not "integral and indispensable," were exempt under the Portal-to-Portal act, and/or were de minimis, such findings would act as a "complete bar to liability" as a matter of course. See Severin, 2012 WL 2357410, at *1 (denying conditional certification under the FLSA as each plaintiff would have to establish their work duties did not qualify under the "companionship" exemption).

As shown above, Plaintiff cannot establish NY Paving had a "common policy" in connection with Plaintiff's allegations concerning preliminary/post-liminary/commuting time "work," much less one that was violative of the law. Further, given the CBA's applicable here, Plaintiff's claims are preempted by the LMRA, and/or Plaintiff cannot establish he is similarly situated to other putative collective members otherwise. As such, the Motion must be denied. See supra.

However, even if the above did not mandate denial of Plaintiff's Motion as a matter of course, denial would still be required in light of the fact that adjudication of these issues requires personalized, individualized inquiries as to the actual claims of each putative collective member against the actual facts concerning each putative collective member. Relevantly, in order for the Court to establish on the merits that NY Paving failed to pay legally-owed compensation for the above-alleged claims (an assertion NY Paving vehemently disputes), the Court would be required to make individualized inquiries concerning each putative collective member's employment, given there was (and is) no company-wide policy requiring Pavers to report to the yard prior/subsequent to their shifts, and/or to perform job duties while at the yard.

Indeed, the Court first would need to determine which putative members actually reported to the yard to take advantage of the chauffeur service, and which did not. Then the Court would need to conduct individualized inquires for each putative plaintiff as to whether such putative plaintiff understood the custom and practice that they could, in their sole and absolute discretion, use the NY Paving chauffeur service, or whether such putative plaintiff erroneously believed use of such chauffeur service was "required" as alleged by Plaintiff. In making such individualized determination, the Court would have to conduct separate "mini trials" for each putative plaintiff concerning how they were informed of the voluntary chauffeur

service, who informed them of such service, and why they believed such service was mandatory and not discretionary.

Next, the Court would need to individually assess which of the NY Paving employees who actually "reported" to the yard performed compensable "work" at the yard. For instance, the Court would need to individually understand which putative members merely conversed with co-workers while they waited for the company vehicle to leave to the yard, and which putative plaintiffs helped load/unload/"prepare" the work truck. Then, the Court would need to individually determine, for the putative members that actually helped load/unload/"prepare" the work truck, exactly what work was performed in loading/unloading/"preparing" the work truck, and exactly how much time – on a day-by-day basis – such "work" took. For instance, did such employee merely pick up a tool on their way to board the truck or did such employee continuously work for the 30-45 minutes alleged? After undertaking such extensive analyses for all putative plaintiffs on a personalized basis, the Court finally would need to undertake individualized inquiries for each putative plaintiff in order to make a determination as to whether (and to what extent) such activities performed constituted "integral and indispensable" work sufficient to make such activities compensable as a matter of law.[14]

Following this analysis, the Court would have to decide, on a case-by-case basis, whether the loading of each tool required Plaintiff and/or the putative collective members to "give up a substantial measure of [their] time and effort" before determining whether such loading should be considered compensable. Anderson, 328 U.S. at 692. Indeed, the Court would need to

---

[14] Just as importantly, in order to determine whether any of the alleged work performed by Plaintiff and putative collective members was "integral and indispensable" to their principle activities, the Court would need to analyze the terms of the applicable CBA's (here, the Local 175 CBA and/or the Local 1010 CBA) to determine exactly what constituted said putative member's "principle activities" as defined by said CBA (i.e. the CBA's defined "duties"), and whether the "work" purportedly performed was sufficiently integral and indispensable to said duties. The need for such extensive interpretation of a CBA mandates that Plaintiff's claim be dismissed as preempted by the LMRA in any event. See supra.

conduct individualized inquiries in connection with the potential (if not inevitable) finding that the "work" alleged by Plaintiff and the putative class was *de minimis*.

In summary, the Court would need to conduct individualized inquiries as to the activities of each putative plaintiff to determine: (i) exactly what allegations were applicable to each plaintiff; (ii) exactly what "work" putative plaintiffs actually performed; (iii) exactly when such "work" was performed by each putative plaintiff; and (iv) exactly how much "work" each putative plaintiff performed.  Courts routinely hold the need to conduct such individualized inquiries defeats and frustrates the purpose of proceeding as a collective action, preventing conditional certification and requiring denial of Plaintiff's Motion as a matter of law.  See Cowell v. Utopia Home Care, 2016 WL 4186976 at *6 (E.D.N.Y Aug. 8, 2016) (denying collective certification because the determination of whether the putative plaintiff's time was compensable required "fact-intensive analysis of factors such as what tasks [plaintiff] perfumed, for how long, and how it related, or did not relate" to client needs.); Rudd v. T.L. Cannon Corp., 2011 WL 831446 at *8-9 (N.D.N.Y. Jan. 4, 2011) (denying conditional certification where plaintiff's claim constituted only potential personal violations of the FLSA, and thus could not evince a "common policy or plan" applicable to all putative collective members); see also, e.g., Romero, 2012 WL 1514810; Colon, 2013 WL 3328223; Warman, 193 F.Supp.3d at 323; Urtubia, 857 F.Supp.2d at 484; Severin, 2012 WL 2357410.

## POINT II

### ANY NOTICE OF PENDENCY, AND PUTATIVE PLAINTIFF CONTACT INFORMATION REGARDING SAME, SHOULD BE LIMITED

Defendant submits Plaintiff is not entitled to conditional certification in any respect. Thus, given the tenuous right to pursue the Collective espoused by Plaintiff, it is premature to determine the proprietary of Plaintiff's proposed Notice of Pendency (the "Notice") and/or

Consent to Become Party Plaintiff annexed as <u>Exhibit 5</u> (DE 34-5) to the Declaration of Steven

L. Wittels, dated August 15, 2018.[15]  Notwithstanding the foregoing, Defendant submits Plaintiff

is not entitled to: (i) submission of any reminder notice; (ii) putative opt-in contact information

beyond names and last known mailing addresses; and (iii) placement of Notices in putative opt-

in's paycheck envelopes in any event.

### A. Plaintiffs Are Not Entitled to Dissemination of any Reminder Notice

Courts generally deny requests to provide for reminder notices "on the grounds that the

reminder is unnecessary and . . . could be interpreted as encouragement by the court to join the

lawsuit." <u>Guzelgurgenli v. Prime Time Specials, Inc.</u>, 883 F. Supp. 2d 340, 357 (E.D.N.Y. 2012)

(internal quotations and citation omitted).  This approach has been followed in other Circuits as

well.  <u>See, e.g.</u>, <u>Knispel v. Chrysler Grp. LLC</u>, 2012 WL 553722, at *8 (E.D.Mich. Feb. 21,

2012); <u>Robinson v. Ryla Teleservs., Inc.</u>, 2011 WL 6667338, at *4 (S.D.Ala. Dec. 21, 2011).  In

fact, the main reason Defendant has looked to outside circuits for decisions on this matter is

because this issue has not been extensively litigated in this Circuit.  This is because "most

plaintiffs do not send reminder notices [and] no great harm result[s]" from a plaintiff's choice

not to send one. <u>Guzelgurgenli</u>, 883 F. Supp.2d at 358.  Here, Plaintiff has failed to establish any

reason as to why a reminder notice is necessary, or how harm may result from a failure to

provide for one.  This is especially true in this matter, where approximately forty-five individuals

have already received notice of this lawsuit and decided to exercise their right to "opt-in." <u>See,</u>

<u>e.g.</u>, Docket Entry Nos. 1-1, 13, 14, 23, 29.  As such, in light of the fact there are several opt-ins

and in light of the fact any remaining opt-ins are represented by separate unions who serve to

---

[15]  In this regard, Defendant respectfully requests and reserves the right to arrange with counsel for Plaintiff the submission of a revised Notice of Pendency and/or Consent to Become Party Plaintiff in conformity with the Court's Order(s) regarding conditional certification, should any Collective be conditionally certified.

protect their unit-member's rights, this Court should deny Plaintiff's request to issue reminder
notices.

### B. Plaintiff's Receipt of Opt-In Contact Information Must be Limited to Only the Names and Last-known Addresses of Putative Collective Members

Plaintiff further requests production of potential opt-ins': full names; last-known
addresses; email addresses; home and cell phone numbers; job position(s); languages spoken;
present or last known place of employment; and dates of employment in connection with their
Motion. However, and much like their Motion, this request is improper. It also constitutes an
impermissible invasion of privacy for non-parties, and is unnecessary to effectuate the Notice's
purpose. Instead, the contact information for putative collective members should be limited to
names and last-known addresses only. In fact, Your Honor has previously held plaintiffs are not
entitled to extraneous contact information once conditional certification is granted.[16]
Specifically, in Contrera, Your Honor denied the plaintiffs' request for phone numbers, email
addresses, work locations for the initial mailing of the notice. Id. at 27:1-14.

This is because the purpose of a Notice of Pendency is simply to inform putative
collective members of the existence of the litigation and their right to opt-in to same. See Soler
v. G&U, Inc., 568 F. Supp. 313, 316 (S.D.N.Y. 1983) (noting it is proper "'to read the statute as
permitting, rather than prohibiting, notice in an appropriate case [as provision of such notice]
comport[s] with the broad remedial purposes of the [FLSA]" (citation omitted)). Given this
limited purpose as measured against a non-party's right to privacy[17], courts within the Second

---

[16] See Excerpts from the Transcript dated January 17, 2018 in the matter of Contrera v. Irving Langer, No. 16-CV-03851 (the "Transcript Excerpts"), a copy of which has been annexed to the Hampton Decl. at Exhibit 6.

[17] See, e.g., Wright v. AARGO Sec. Servs., Inc., No. 99-CV-9115(CSH), 2000 WL 264326, *3 (S.D.N.Y. Mar. 9, 2000) (requiring disclosure of non-party records in an FLSA overtime case under protective order only); Andrews v. Cruz, No. 04-CV-0566 (PAC)(RLE), 2006 WL 1984650, *3 (S.D.N.Y. July 14, 2006) (requiring redaction of private information for non-parties); Soto v. ECC Indust., Inc., No. 05-CV-4764 (BMC), 2006 WL 2375465, *1 (S.D.N.Y. Aug. 14, 2006) (denying access to non-relevant non-party information).

Circuit routinely limit provision of non-party information for purposes of a Notice of Pendency to just "the names and addresses of potentially similarly situated employees." Iriarte v. Café 71, Inc., 2015 WL 8900875, *6 (S.D.N.Y. Dec. 10, 2015) (citation omitted) (emphasis in original); see also, e.g., Trinidad v. Pret A. Manger (USA) Ltd., 962 F.Supp.2d 545, 564-65 (S.D.N.Y. 2013) (denying request for provision of telephone numbers as invasive and unwarranted); Michael v. Bloomberg L.P., 2015 WL 1810157, *4 (S.D.N.Y. Apr. 17, 2015) (denying request for social security numbers, dates of birth and telephone numbers); Fasanelli v. Heartland Brewery, Inc., 516 F.Supp.2d 317, 324 (S.D.N.Y. 2007) (denying request for telephone numbers, alternate addresses and social security numbers as plaintiff had "provided no such rationale to explain why he requires such extensive production of information").

In fact, Iriarte is instructive.  In that matter, the plaintiff's counsel requested not only the names of putative collective members, but also (much like here) their titles, compensation rates, hours worked per week, periods of employment, Social Security numbers, email addresses and telephone numbers.   2015 WL 8900875 at *6.   The court denied this request as overbroad, specifically noting:

> In this case, however, Plaintiff has asked for much more than the names and addresses of the potential opt-in plaintiffs. . .  Plaintiff has not provided any authority granting such a comprehensive request in connection with conditional certification, nor has the Court been able to find such a case.  Plaintiff suggests no reason why he requires all this information in order to send § 216(b) notice, and frankly, until a person opts into the claim such personal information as email addresses and Social Security numbers are none of Plaintiff's business.  Id.

These same principles apply herein. Plaintiff seeks private information of individuals who are not parties to this suit and who may never become parties to this suit.  Importantly, the majority of information sought is not necessary to effectuate the single purpose of the Notice – to inform putative plaintiffs of the existence of this litigation and their right to opt in to it,

especially where the amount of opt-ins which currently exist pre-certification establish that a vast majority of putative collective members are already aware of this litigation. See supra.

As such, in light of the privacy concerns of non-parties to this suit, Defendant respectfully requests the Collective List be limited to provision of names and addresses only.

### C. There is no Need to Place the Notice in Pay Envelopes

Notice will be effectuated by U.S. Mail. As such, delivery of the Notice – again – by delivering a copy with the putative plaintiffs' paycheck is unsupported by law, borders on harassment, and is based on the unsupported assumption putative plaintiffs receive paper checks. It should also be denied on the grounds that placing such Notices in pay envelopes, in addition to dissemination by U.S. Mail "could be interpreted as encouragement by the court to join the lawsuit." Guzelgurgenli, 883 F. Supp. 2d at 357. In support of their request, Plaintiff cites Your Honor's decision in Garcia. The Garcia decision is inapposite because there, Your Honor actually denied Plaintiffs' request to post a Notice of Pendency in the workplace, and instead suggested the parties determine the most effective way to contact putative plaintiffs thereafter. Garcia v. Spectrum of Creations, Inc., 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015).

In the instant matter, the most effective way to provide notice to current and former employees is through direct mailing. Indeed, unless Plaintiff establishes (or at least offers some reasonable evidence) that direct mailing is insufficient, providing a Notice to putative opt-ins with their paychecks should be denied. See Torres v. Nation One Landscaping, Inc., 2014 WL 5350440, *2 (N.D.Ill. Oct. 21, 2014)(denying plaintiffs' request to post notice and include notice with paychecks because "plaintiff has not demonstrated that identifying employees and addresses is unusually difficult here [and] plaintiff's argument is largely conclusory and unpersuasive.").

Second, as the putative plaintiffs have not opted-in to this matter, and are not parties, providing the notice on multiple occasions (by mail and attached to their paycheck) may lead a putative plaintiff to believe they must opt-in, rather than simply understanding they have been provided merely an opportunity to opt-in. See Guzelgurgenli, 883 F. Supp. 2d at 357. Further, other putative plaintiffs may also find the multiple notices harassing. As such, notice should only be disseminated via regular mail.

## **CONCLUSION**

**WHEREFORE**, Defendants respectfully request: (i) Plaintiffs' Motion be denied; (ii) to the extent a Notice of Pendency and provision of relevant contact information is required, it be limited to a single mailing, and Defendants only be required to provide names and last-known addresses in connection with same; (iii) to the extent a Notice of Pendency and/or Consent to Become a Party Plaintiff is required, such Notice and Consent be revised in accordance with any relevant Orders of this Court regarding conditional certification; and (iv) Defendant be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:      Mineola, New York
            September 17, 2018

                              **MELTZER, LIPPE, GOLDSTEIN &**
                              **BREITSTONE, LLP**
                              Attorney for Defendants
                              190 Willis Avenue
                              Mineola, New York 11751
                              (516)747-0300
                              lmartinez@meltzerlippe.com

                    By:  _____**ECF**_____ /s/_____
                              Christopher P. Hampton, Esq.

**LARRY R. MARTINEZ, ESQ.**
**NICHOLAS P. MELITO, ESQ.**

853022                          33