UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EDGARDO DIAZ, et al.,                               :

                                                    :

          Plaintiffs,                               :     OPINION AND ORDER

          -v.-                                      :
                                                    :     18 Civ. 4910 (ALC) (GWG)

NEW YORK PAVING INC.,                               :

          Defendant.                                :
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     Plaintiff Edgardo Diaz, who performed road and sidewalk repairs in the New York City

metropolitan area, filed this action against his employer New York Paving Inc. ("NY Paving")

under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"), and the New York State

Labor Law, § 190 et. seq., § 650 et. seq.   Frank Wolfe, Terry Holder, and Jose Alvarez, who are

also pavers working for NY Paving, have since joined the suit.   Plaintiffs now move to have this

case conditionally approved as a collective action under 29 U.S.C.§ 216(b), with notice being

sent to "all New York Paving pavers employed since June 3, 2015."[1]   For the following reasons,

plaintiffs' motion is granted.

-------------------------

[1]   See Plaintiff's Notice of Motion for Conditional Certification of FLSA Collective
Action and Court-Facilitated Notice, filed August 23, 2018 (Docket # 32); Plaintiff's
Memorandum of Law in Support of Motion for Conditional Certification and Court-Facilitated
Notice, filed August 23, 2018 (Docket # 33) ("Pl. Mem."); Declaration of Steven L. Wittels in
Support of Plaintiff's Motion for Conditional Collective Action Certification and Court-
Facilitated Notice, filed August 23, 2018 (Docket # 34) ("Wittels Decl."); Declaration of
Christopher P. Hampton, Esq. [in Support of Defendant's Opposition], filed September 17, 2018
(Docket # 37) ("Hampton Decl."); Defendant's Memorandum of Law in Opposition to Plaintiff's
Motion for Conditional Action Certification and Court-Facilitated Notice, filed September 17,
2018 (Docket # 38) ("Def. Mem."); Plaintiff's Reply in Support of Motion for Conditional
Certification and Court-Facilitated Notice, filed October 26, 2018 (Docket # 41) ("Pl. Reply");
Declaration of Jose Alvarez [in Support of Plaintiff's Motion], filed October 26, 2018 ("Alvarez
Decl.").

I. BACKGROUND

    A.  Allegations in the Complaint

The complaint alleges that Diaz was not paid overtime wages as required by the FLSA because of a specific policy put into place by NY Paving. See Class and Collective Action Complaint, filed June 3, 2018 (Docket # 1) ("Compl."), ¶¶ 19-38. Diaz alleges that NY Paving

> requires its pavers . . . to arrive at Defendant's central yard in Long Island City early each morning to receive instructions regarding the day's assignments, be counted by management, select the tools and materials necessary to perform each job that day, prepare the tools and materials for work, prepare the Company's trucks for the day's work, and load the tools and materials onto company trucks.

Id. ¶ 20. He alleges that this work took "more than 30 to 45 minutes and [was] uncompensated." Id. Typical work that the pavers would perform upon arrival in the morning included "examining jackhammer bits," "determin[ing] how many hoses, jackhammers, and buckets of asphalt the day's paving [would] require," and "load[ing the equipment] onto the truck." Id. ¶ 22. A supervisor would sometimes oversee the process and instruct the pavers to add or remove some of the equipment and materials before departing the yard. Id. Travel time to the first job site, which could be 15 to 90 minutes "depending on traffic," was not compensated. Id. ¶ 24. At the end of last job of the day, the pavers "are required to reload the company truck, ride with or drive the tools and materials back to [the] yard in Long Island City, and then unload the truck and store the tools and materials at the yard." Id. ¶ 28. This typically took "more than 30 to 45 minutes" and sometimes required the pavers to stop to refuel the company trucks. Id. ¶¶ 28-31. The complaint alleges that pavers employed by NY Paving were not compensated for this work because of a "uniform company policy of not classifying these hours as time worked." Id. ¶ 33. It also alleges that NY Paving failed to provide pavers with accurate wage statements as required by the New York State Labor Law. Id. ¶ 39.

B. <u>Facts from Plaintiffs' Declarations</u>

Diaz, Wolfe, Holder, and Alvarez have each provided a sworn declaration to support plaintiffs' motion. All four individuals worked as pavers on jobs throughout the New York Metropolitan area for NY Paving, whose main yard is located in Long Island City, Queens. Diaz worked from January 2017 to March 2017 and for "a few days in 2016." Declaration of Edgardo Diaz (annexed as Exhibit 1 to Wittels Decl., Docket # 34-1) ("Diaz Decl."), ¶ 2. Wolfe worked in March 2017 and again from June 2017 to the present. Declaration of Frank Wolfe (annexed as Exhibit 2 to Wittels Decl., Docket # 34-2) ("Wolfe Decl."), ¶ 2. Alvarez worked from April 2017 to the present. Alvarez Decl. ¶ 2. Holder worked as a paver from 1989 to 1996, and again from January 2016 to the present. He became a union shop steward in November 2017 and a crew foreman in May 2018. Declaration of Terry Holder (annexed as Exhibit 3 to Wittels Decl., Docket # 34-3) ("Holder Decl."), ¶¶ 2-3, 5-6.

According to the pavers, at the start of their employment with NY Paving, they were informed by their supervisors that they and all other pavers were required to arrive at the central yard each morning between 5:00 a.m. and 5:30 a.m. in order to unload, reload, and prepare the vans for the first job of the day around 7:00 a.m. Diaz Decl. ¶¶ 4-5, Wolfe Decl. ¶¶ 4-5, Holder Decl. ¶¶ 7-8, Alvarez Decl. ¶ 5-6. Holder, the foreman, stated that when he "rejoined New York Paving around January 2016, [he] was informed by Patty LaBate, the Union 175 shop steward at that time," of the same time requirement. Holder Decl. ¶ 7. He explained that he would relay these instructions to other foremen and pavers. <u>Id.</u> ¶ 8. Notwithstanding these instructions, the pavers' "pay clocks started when the first paving job of the day was scheduled to begin, usually at 7:00 a.m." Diaz Decl. ¶ 13; <u>see</u> Wolfe Decl. ¶ 13, Holder Decl. ¶ 15, Alvarez Decl. ¶ 14 ("we were paid only from the time the first paving job began, usually 7:00 am"). This policy was

3

verified by LaBate, Holder's union shop steward at the time. Holder Decl. ¶ 7 ("I asked if we would get paid for [the time spent working before the first job], and he said no.").

The pavers morning duties consisted first of unloading items from the work vehicles from the previous day and storing them in the yard. These items included "empty asphalt concrete pails," "riser rings and squares (for raising manhole covers)," "empty line tape boxes," "empty canisters of diesel and propane," Diaz Decl. ¶ 7, Holder Decl. ¶ 9; "safety cones, signs, and barriers," Wolfe Decl. ¶ 7, Holder Decl. ¶ 9; "unnecessary and/or worn-out jackhammers, jackhammer bits, air compressors (for powering the jackhammers), hoses, brooms, shovels, rakes, and other tools," Holder Decl. ¶ 9, Alvarez Decl. ¶ 8; and "extension lines and plastic joints," and garbage from the previous job, Alvarez Decl. ¶ 8. The pavers would then reload the trucks with materials for the day's jobs, which would include "new pails filled with asphalt concrete," new "riser rings and squares," boxes of "yellow and white line tape (for repairing road dividers, crosswalks, bike lanes, etc.)," Diaz Decl. ¶ 7, Holder Decl. ¶ 9; "safety cones, signs, and barriers," and various tools, Wolfe Decl. ¶ 7, Alvarez Decl. ¶ 8. This work typically took from 30 to 45 minutes. Diaz Decl. ¶ 8, Wolfe Decl. ¶ 8, Holder Decl. ¶ 10, Alvarez Decl. ¶ 9.

NY Paving managers or supervisors were aware of and often personally oversaw the abovementioned work, Diaz Decl. ¶ 9, Wolfe Decl. ¶ 9, Alvarez Decl. ¶ 10, and Alvarez stated that it is "well-known among pavers that workers who [did] not show up at the yard by 5:30 am or 5:45 am have been contacted and told to stay home for the day without pay," Alvarez Decl. ¶ 6. Wolfe and Alvarez each recall a supervisor named "Robert Zaremski" or "Robert" who would oversee the pavers as they performed the morning work. Wolfe Decl. ¶ 9, Alvarez Decl. ¶ 10. After the trucks were loaded, the paving crews would get into the vehicles and drive to the first job site of the day. The drive back to the yard from the last job would take anywhere from

30 minutes to an hour depending on the location of the last job site. The pavers would also stop on the way back to the yard to refuel the work vehicles for the next day. Diaz Decl. ¶¶ 10-12, Wolfe Decl. ¶¶ 10-12, Holder Decl. ¶¶ 13-14, Alvarez Decl. ¶¶ 12-13.

The plaintiffs each claim that NY Paving failed to pay them for time "spent unloading and loading tools and equipment onto the vehicles each morning" or for the time spent driving to and from the work-sites and refueling the vehicles at the end of the day. They also allege that NY Paving failed to keep time records of the morning work. Diaz Decl. ¶¶ 13-14, Wolfe Decl. ¶¶ 13-14, Holder Decl. ¶¶ 15-16.

     C.  The Defendant's Declarations

NY Paving has submitted declarations from Peter Miceli and Robert Zaremski. See Declaration of Peter Miceli (annexed as Exhibit 1 to Hampton Decl., Docket # 37-1) ("Miceli Decl."); Declaration of Robert Zaremski (annexed as Exhibit 2 to Hampton Decl., Docket # 37-2) ("Zaremski Decl."). Miceli has been employed with NY Paving since 1991 and serves as Director of Operations. Miceli Decl. ¶ 1. Miceli claims that the statements made by the plaintiffs concerning unpaid overtime wages are incorrect because "NY Paving does NOT require any pavers to report to the yard prior [to] their first paving shift or after their last paving shift." Id. ¶¶ 23-24. To the contrary, Miceli states, "NY Paving offers [its] pavers a voluntary chauffeur service," which transports them to and from the various work-sites, id. ¶ 25, a service that is customary "throughout the paving industry because paving contractors . . . generally provide paving services for more than one single 'worksite' per day, thus necessitating" the daily travel, id. ¶ 27; see ¶¶ 30, 33. The reason pavers would arrive to work as early as the plaintiffs state, Miceli explains, is to ensure they show up in time to catch the chauffeur service to the first job site. Id. ¶¶ 28-29. To the extent that any pavers do arrive early, Miceli states that the pavers

"generally" do no work at the yard but rather use this time to go to the "local deli to stand in line for a hot breakfast meal and a cup of coffee." Id. ¶¶ 37, 39. Finally, Miceli states that plaintiffs' description of the morning work performed is exaggerated and would in reality take "less than five minutes." Id. ¶ 44; see ¶¶ 40-46. Miceli also notes that the company's paving employees are hired "under the terms of two separate and distinct collective bargaining agreements," id. ¶ 5, and, as such, are covered by "drastically" different employee policies and perform "drastically" different job duties from one another, id. ¶ 6; see id. ¶¶ 5-20.

Zaremski has been employed with NY Paving since 1982 and serves as a Paving Manger/Foreman. Zaremski Decl. ¶ 1. His statements corroborate Miceli's. Specifically, he states that NY Paving has no policy of requiring pavers to report prior to their first or after their last shift, id. ¶¶ 5-7; that, as is custom throughout the industry, NY Paving offers an optional chauffeur service as described above, id. ¶¶ 8-13, 15-17; and that the pavers who do report early do not perform any work at the yard because NY Paving could not know in advance how many pavers would choose to use the service and report early, id. ¶ 19. Zaremski also states that the pavers who did report early would spend time standing in line at the local deli for breakfast, and that any work performed in the morning could take at most 10 minutes. See id. ¶¶ 23-27. Finally, Zaremski states that the pavers do not engage in any work during the commutes "between the yard and the worksites." Id. ¶ 28.

D.  The Plaintiffs' Motion

Plaintiffs seek an order approving a collective action consisting of "all persons who worked as pavers at New York Paving between June 3, 2015, and the date of final judgment in this matter." Pl. Mem. at 4. Plaintiffs have also provided a proposed collective action notice and consent form, see Notice of Federal Overtime Lawsuit Against New York Paving Inc. (annexed

as Exhibit 5 to Wittels Decl., Docket # 34-5), a proposed reminder notice, <u>see</u> Reminder Notice (annexed as Exhibit 6 to Wittels Decl., Docket # 34-6), and a proposed court-authorized order, <u>see</u> Order Granting Collective Action Certification and Directing Notice (annexed as Exhibit 7 to Wittels Decl., Docket # 34-7).

We address next the plaintiffs' request to approve a collective action.

## II.  REQUEST TO APPROVE COLLECTIVE ACTION

### A.  Governing Law

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  "The purpose of the FLSA . . .  was to 'guarantee [ ] compensation for all work or employment engaged in by employees covered by the Act.'"  <u>Reich v. N.Y.C. Transit Auth.</u>, 45 F.3d 646, 648-49 (2d Cir. 1995) (alteration in original) (quoting <u>Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123</u>, 321 U.S. 590, 602 (1944)).

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the statute does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," section 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit.  <u>See</u> <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); <u>Braunstein v. E.</u>

Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."). Orders authorizing notice are sometimes referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification mechanism. Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). Where a court refers to "certifying" a collective action, however, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals. Id. The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to the approval of a collective action. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 78 (2013) ("Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23."). Accordingly, "'no showing of numerosity, typicality, commonality, and representativeness need be made.'" Bittencourt v. Ferrara Bakery & Café Inc., 310 F.R.D. 106, 111 (S.D.N.Y. 2015) (quoting Young, 229 F.R.D. at 54). Furthermore,

> while a class under Rule 23 includes all unnamed members who fall within the class definition, the "sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court."

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1043 (2016) (alteration and omission in original) (quoting Genesis Healthcare, 569 U.S. at 75).

The Second Circuit has endorsed a "two-step process" for approval of an FLSA collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. Id.

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)).

"Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citing cases); accord Myers, 624 F.3d at 555; Garcia v. Spectrum of Creations Inc., 102 F. Supp. 3d 541, 547 (S.D.N.Y. 2015). In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Garcia, 102 F. Supp. 3d at 547. While only a "modest factual showing" is required, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

B. Analysis

The plaintiffs argue that they are similarly situated to all other pavers employed by NY Paving because they were all subject to the same policy, which required them to report to a particular location prior to being transported to the first paving job, to do work at that location, and then return to that location, all without compensation. Pl. Mem. at 1, 15-16. Defendants make a number of arguments in response. We address each next.

1. Factual Dispute Regarding a Common Policy or Plan

NY Paving first argues that the plaintiffs' allegations of any unlawful common policy or plan "are simply untrue" because no such plan existed at NY Paving. Def. Mem. at 6; see Miceli Decl. ¶¶ 22-24; Zaremski Decl. ¶¶ 5-7. Thus, they argue that plaintiffs cannot establish that they "were victims of a common policy or plan that violated the law because . . . no policy . . . existed at all." Def. Mem. at 5.

"Courts in this Circuit commonly authorize the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016) (internal quotation marks, citation, and alteration omitted). The combination of the plaintiffs' four declarations describing similar conditions under which pavers at NY Paving were required to work uncompensated hours before and after their pay clocks started and ended is sufficient to meet the requisite "modest factual showing," Guillen, 750 F. Supp. 2d at 480, that the pavers are all similarly situated because they were all subject to NY Paving's alleged unlawful wage policy. See, e.g., McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (certification of a modified class based on plaintiff's declaration, which demonstrated "personal knowledge of alleged violations and directives from supervisors in his specific district");

Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (plaintiff's declaration "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were . . . paid less than the statutory minimum wage and not paid overtime pay" was sufficient for conditional certification); see also Colon v. Major Perry St. Corp., 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("it is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA") (citing cases).

NY Paving's argument that the plaintiffs' allegations about the alleged policy are "simply untrue" is irrelevant because it is well settled that "[a]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted; alteration added); accord Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014); Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 456 (E.D.N.Y. 2014). "To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid." Pippins v. KPMG LLP, 2012 WL 19379, at *12 (S.D.N.Y. Jan. 3, 2012). Because the affidavits corroborate each other and plausibly describe a common illegal policy, we accept as true plaintiffs' allegations for purposes of deciding this motion.

### 2. Merits-Based Claims Regarding Non-Compensability

NY Paving next argues that the work plaintiffs claim they do is in fact not compensable work. See Def. Mem. at 9-14. They argue that "activities which are preliminary to or

postliminary to [an employee's] principal activity or activities" during a workday "are not compensable as a matter of law," id. at 9 (citing 29 U.S.C. § 254(a)(2)), and that "Plaintiff cannot establish that, as a matter of law, his commute time . . . is compensable" under the FLSA, id. at 14.

This contention is disputed in part on factual grounds by plaintiffs, who argue that, in fact, the work done at the central yard was part of their activities and occurred before the transportation to the work-site. See Pl. Reply at 6-7. Similarly, they contend that work was done before the commute and after the commute. Id. at 7. To the extent the defendants' argument relies on a legal dispute, it would not militate against approval of the collective action because a "contention that the unpaid hours are non-compensable . . . constitutes precisely the sort of substantive determination that must be avoided at this stage." Dieffenbauch v. Rhinehart R.R. Constr., Inc., 2018 WL 4150883, at *4 (N.D.N.Y. Aug. 30, 2018). To the extent the dispute is a factual one, as we have already noted, "the Court at this stage of the litigation must focus its attention solely on Plaintiff's 'pleadings, affidavits, and declarations,' and refrain from 'resolv[ing] factual disputes, decid[ing] substantive issues going to the ultimate merits, or mak[ing] credibility determinations.'" Id. (quoting Lynch, 491 F. Supp. 2d at 368); accord Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 527 (S.D.N.Y. 2015) ("The remainder of defendants' arguments, including that plaintiffs are not employees under the FLSA, attack the merits of the case, raise factual disputes, or question the credibility of Plaintiffs' declarations. These are not issues that can be addressed at this juncture.") (internal quotation marks and citation omitted); Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013) (finding "irrelevant" defendant's contention that plaintiff "was exempt from the FLSA minimum wage and overtime requirements" because to consider that argument would be to

"undertake the very type of premature merits determination that is proscribed at the preliminary

certification stage"). Thus, this argument does not militate against sending notice.

### 3. Whether the FLSA Claim is Preempted by the LMRA

NY Paving argues that plaintiffs' FLSA claims are preempted by Section 301 of the

Labor Management Relations Act ("LMRA"), Def. Mem. at 15-16, because plaintiffs' claims

arise from NY Paving's collective bargaining agreements ("CBAs") with the relevant union

shops. See id. at 16-17.

The court in Polanco v. Brookdale Hosp. Med. Ctr., 819 F. Supp. 2d 129 (E.D.N.Y.

2011), summarized case law regarding LMRA preemption of state law claims:

> Section 301 of the LMRA provides that "[s]uits for violation of contracts between
> an employer and a labor organization representing employees in an industry
> affecting commerce . . . may be brought in any district court of the United States
> having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has
> interpreted this section to preempt state law claims "founded directly on rights
> created by collective bargaining agreements" as well as "claims 'substantially
> dependent upon an analysis of a collective bargaining agreement.'" Lingle v.
> Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410[] (1988) (quoting Elec.
> Workers v. Hechler, 481 U.S. 851, 859 n. 3[] (1987)). According to the Court,
> preemption is necessary "to ensure uniform interpretation of collective-bargaining
> agreements, and thus to promote the peaceable consistent resolution of
> labor-management disputes." Id. at 404[]. Any claim that challenges a provision
> in a [CBA] must be brought under Section 301. Allis-Chalmers [Corp. v. Lueck],
> 471 U.S. [202,] 210 [(1985)][]; Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.
> 2003) ("[P]laintiff's challenge to the lawfulness of a term of the CBA will require
> substantial interpretation of the CBA.").

Id. at 133 (some citations omitted). NY Paving argues that there is preemption because the

"'regular' rate for which Plaintiff[s] seek[] pay is the rate provided for in the CBA's," and as the

rates are "individually applicable to each unit-employee," resolving the FLSA claims would

require "this Court to adjudicate rights provided for under [the] CBA[s]." See Def. Mem. at 16

(alterations added). NY Paving also claims that the Court would likewise need to review the

relevant CBAs to determine if plaintiffs' CBAs "covered" the alleged uncompensated work.  Id. at 16-17.

We are skeptical of this argument given that the defendants have not pointed to a provision of a CBA that would require "interpretation" in the event a jury found that plaintiffs regularly engaged in uncompensated work.  Once again, however, we do not reach this issue because the question of whether the LMRA preempts plaintiff's claims is a merits-based determination.  As we have already pointed out, "[a]t this procedural stage, the court does not . . . decide substantive issues going to the ultimate merits . . . ."  Lynch, 491 F. Supp. 2d at 368 (citation omitted).

Notably, none of the cases that NY Paving cites in support of its argument involved a motion for approval under section 216(b).  See Def. Mem. at 16, 18-19.  Rather, each case was decided either on a motion to dismiss or for summary judgment.   Here, NY Paving filed an answer rather than filing a motion to dismiss and has filed no motion for summary judgment. NY Paving points to no authority suggesting that a section 216(b) motion can be used as a vehicle for adjudicating whether an FLSA plaintiff's allegations state a claim for relief.  We thus reject its effort to do so here.

### 4.  Whether Differing CBAs Preclude Pavers from Being Similarly Situated

NY Paving argues that the persons sought to be included in the collective were governed by two different CBAs and for this reason alone cannot be deemed "similarly situated."  Def. Mem. at 20-25.  To support this argument, NY Paving points to provisions regarding pay and job duties that differ between the two CBAs.  See Def. Mem. at 21-24.  Defendant points to no provisions, however, that differ with regard to whether it was appropriate to pay plaintiffs for the activities alleged here, assuming plaintiffs allegations are true.  The mere fact that plaintiffs have

different job titles under two CBAs is not relevant to the question of whether they are "similarly situated." See Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 44 (S.D.N.Y. 2018) ("different job titles may be included within a conditional collective if there is evidence that plaintiffs may be similarly situated as to a common policy to violate the FLSA") (citing cases). Moreover, case law recognizes that "whether variance of job duties precludes collective treatment is more appropriately analyzed at the decertification stage of an FLSA collective action, not at the conditional certification stage." Id. at 45 (citing Romero v. H.B. Auto. Grp., 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012)); see also Castillo v. P & R Enters., Inc., 517 F. Supp. 2d 440, 446 (D.D.C. 2007) (differences between individuals in a proposed collective of janitors — for instance, that "janitors working in some buildings Defendant services are subject to union representation while janitors working in other buildings are not" — "appear[ed] to be immaterial to the [216(b)] motion"). Thus, the fact that the job duties for the pavers were distinct does not necessarily mean they are not similarly situated with regard to the alleged unlawful common policy mandating uncompensated overtime before the official work day began and after it ended.

NY Paving's brief declares that "courts in the Second Circuit routinely deny conditional certification in analogous cases." Def. Mem. at 24. The only case cited in support of this proposition, Severin v. Project Ohr, Inc., 2012 WL 2357410 (S.D.N.Y. June 20, 2012), however, involved a motion under Fed. R. Civ. P. 23. Defendants quote a portion of Severin that in turn quoted a paragraph of a prior oral decision regarding the approval of a collective action. See id. at *3. As noted in Severin, however, the court found that there were many "fact-specific" inquiries regarding the employees' job duties. Id. Here, by contrast, the plaintiffs are alleging a policy common to all employees in the proposed collective that resulted in an identical FLSA

15

violation.  While NY Paving points to language in the plaintiffs' declarations suggesting that not all duties were performed on all days, Def. Mem. at 25, we do not view this as suggesting that the proposed group members are not similarly situated.  There are sufficient allegations of a policy that violated the FLSA applicable to all workers to require a finding that the employees required to report to the central yard are similarly situated.  Jackson, 298 F.R.D. at 158 ("'any factual variances that may exist between the plaintiff and the putative class [will] not defeat conditional class certification'") (quoting Lynch, 491 F. Supp. 2d at 369) (alteration in original).  Obviously, if factual developments in this case show that there was not a uniform policy of requiring uncompensated work from all pavers who came to the yard, NY Paving will be free to make an argument for decertification.

### 5.  Promotion of Judicial Efficiency

Finally, NY Paving argues that the plaintiffs' motion must be denied because "conditional certification of the instant action will not promote judicial efficiency."  Def. Mem. at 25 (capitalization omitted).[2]  NY Paving claims that "the Court would be required to make individualized inquiries concerning each putative collective member's employment, given there was (and is) no company-wide policy" as alleged by plaintiffs.  Def. Mem. at 26; see id. at 26-28.  The premise of this argument, however — that there "was (and is) no company-wide policy" — once again impermissibly invites the Court to make a credibility determination.  If in fact plaintiffs are correct that employees were routinely required to report to the central yard and

---

[2]  While NY Paving does not cite a case in support of its appeal to "judicial efficiency," this concern in fact has been invoked in conditional approval decisions.  See, e.g., Cowell v. Utopia Home Care, Inc., 2016 WL 4186976, at *7 (E.D.N.Y. Aug. 8, 2016) ("Plaintiff's motion would fail to promote judicial efficiency, one of the underlying policies of the collective action mechanism.").

perform the tasks described, no individualized inquiries would be required as to liability. And it would not require complex calculations to determine damages for each worker.

One case that NY Paving cites in support of this argument, <u>Cowell v. Utopia Home Care, Inc.</u>, 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016), involved home health aides whose duties differed greatly depending on their individual patients. <u>Id.</u> at *6. <u>Cowell</u> emphasized that the employees implemented "unique and individualized Plans of Care" and that determining their duties would require "very fact-specific inquiries that are not susceptible . . . to a similarly-situated person analysis that would support the issuance of a collective action notice." <u>Id.</u> (internal quotation marks omitted; ellipses in original).[3] Here, of course, we accept plaintiffs' allegations that all pavers at NY Paving performed the same duties without pay in a similar manner. <u>See</u> Diaz Decl. ¶¶ 6-7, Wolfe Decl. ¶¶ 6-7, Holder Decl. ¶ 9, Alvarez Decl. ¶ 8.

\*    \*    \*

In sum, the Court concludes that all NY Paving pavers employed since June 3, 2015, are similarly situated with respect to the claim made in this lawsuit, and thus that a notice should be sent to these individuals informing them of their option to join this action.

## III. FORM OF NOTICE

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice." <u>Martin v. Sprint/united</u>

---

[3] NY Paving also cites for support <u>Rudd v. T.L. Cannon Corp.</u>, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011), <u>see</u> Def. Mem. at 28, but that case is also unhelpful. In <u>Rudd</u>, the court approved a collective action of employees at one of defendant's restaurant locations, but found that plaintiffs "[fell] short of identifying a particular policy or practice applied by the defendants uniformly across the board at all of their locations, leading to FLSA violations." <u>Id.</u> at *9. Here, plaintiffs have identified such a policy or practice that applies to all employees sought to be included in the collective action.

Mgmt. Co., 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016) (internal quotation marks omitted) (quoting Chhab v. Darden Rest., Inc., 2013 WL 5308004, at *15 (S.D.N.Y. Sept. 20, 2013)). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." Hoffmann-La Roche, 493 U.S. at 171. When determining the particulars of the notice, courts are "'guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants.'" Elmajdoub v. MDO Dev. Corp., 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013) (quoting Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).

It appears that the parties disagree on the following aspects of a notice.

A. Reminder Notice

After a notice is sent, plaintiffs seek to send a reminder notice to potential opt-in plaintiffs before the deadline for opting in. See Pl. Mem. at 18-19; Pl. Reply at 18-20. NY Paving objects and states that "[c]ourts generally deny" such requests "on the grounds that the reminder is unnecessary and . . . could be interpreted as encouragement by the court to join the lawsuit." Def. Mem. at 29 (quoting Guzelgurgenli, 883 F. Supp. 2d at 357). While NY Paving cites Guzelgurgenli in support of its argument, that court was addressing the issue in 2012 when "the Court [was] . . . unable to find[] any caselaw in the Second Circuit directly addressing a reminder notice." Guzelgurgenli, 883 F. Supp. 2d at 357. Since then, courts in this district have permitted sending a reminder notice in similar cases of class certification. See, e.g., Racey v. Jay-Jay Cabaret, Inc., 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (collecting cases). Accordingly, the Court grants plaintiffs' request to send potential opt-in plaintiffs a reminder

18

notice 21 days before the opt-in deadline.

B. <u>Opt-In Contact Information</u>

Plaintiffs seek production of "full names, last-known addresses, email addresses, home and cell phone numbers, job position(s), languages spoken, present or last known place of employment, and dates of employment." Pl. Mem. at 20; <u>see id.</u> at 19. NY Paving appears to object to producing any of this information, other than names and postal addresses. Def. Mem. at 30. NY Paving contends that the request is improper, "an impermissible invasion of privacy for non-parties," and "unnecessary to effectuate the Notice's purpose." <u>Id.</u>; <u>see id.</u> at 30-31.

After granting conditional approval, a court may order an employer to produce information "essential to identifying potential opt-in plaintiffs . . . ." <u>In re Penthouse Exec. Club Comp. Litig.</u>, 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010). "'Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.'" <u>Benavides</u>, 166 F. Supp. 3d at 488 (quoting <u>Martin</u>, 2016 WL 30334, at *19-20 (collecting cases)). However, courts must balance the need to provide plaintiffs with relevant information against the potential opt-in plaintiffs' privacy concerns. <u>Cf.</u> <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) ("While courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice."). Courts are split on whether it is appropriate to grant requests for the disclosure of potential opt-in plaintiffs' work locations. <u>Compare</u> <u>Fa Ting Wang v. Empire State Auto. Corp.</u>, 2015 WL 4603117, at *15 (E.D.N.Y. July 29, 2015) <u>and</u> <u>Ramos v. Platt</u>, 2014 WL 3639194, at *5 (S.D.N.Y. July 23, 2014), <u>with</u> <u>In re</u>

Penthouse Exec. Club Comp. Litig., 2010 WL 4340255, at *5. Courts are also split with respect to whether potential opt-in plaintiffs' dates of birth should be disclosed. Compare Platt, 2014 WL 3639194, at *5, with Michael v. Bloomberg L.P., 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015). Though it does not appear to be as commonplace as ordering production of names and addresses, at least one court in this circuit has found that plaintiffs were entitled to the job titles of potential opt-ins, see Strauch v. Comput. Scis. Corp., 2015 WL 75884, at *4 (D. Conn. Jan. 6, 2015), and at least one court has required production of "all known languages spoken," see Liping Dai v. Lychee House, Inc., 2018 WL 4360772, at *13 (S.D.N.Y. Aug. 29, 2018).

Here, plaintiffs have provided no reason why they require each specific category of information to notify potential opt-in plaintiffs. They simply cite cases that have required production of the various categories of information, see Pl. Mem. at 19, and reiterate in their reply brief that they request "only basic contact information commonplace in modern times and which is routinely provided in this circuit," Pl. Reply at 19. In light of the lack of an explanation as to why the specific items are being requested, the Court will require that NY Paving disclose only the full names, last-known addresses, job titles, and dates of employment with respect to pavers who worked for NY Paving from June 3, 2015 to the present. NY Paving shall disclose this information within 21 days from the date of this order. If plaintiffs can show a need for any additional information, they are free to make an application to the Court for such information after discussing the matter with defendants.

C. Pay Envelope Notice

Finally, recognizing that this Court has noted that posting a notice in the employee's workplace can be disruptive to the employer-employee relationship, see Pl. Mem. at 21 (citing Knox v. John Varvatos Enters. Inc., 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) and Garcia, 102

F. Supp. 3d at 551), plaintiffs seek to require that NY Paving include the notice in pay

envelopes, a method of delivery that plaintiffs note had been discussed (though not ordered) by

this Court, see Pl. Mem. at 21 (citing Garcia, 102 F. Supp. 3d at 551). Enclosure of a notice in a

pay envelope, however, is not always ideal because it may suggest either that the notice

originates with the employer or that filling it out may actually be required or expected by the

employer. Accordingly, the request is denied at this time. The Court would consider a request

to require that a separate envelope be delivered to the collective action members, either with a

pay envelope or at another time, as long as the envelope containing the notice is clearly marked

as emanating from a non-employer source. Any such envelope should be in lieu of, not in

addition to, an original or reminder mailing. The parties are encouraged to discuss this matter

before seeking a ruling from the Court.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional approval of a collective

action (Docket # 32) is granted as set forth above.

SO ORDERED.

Dated:      New York, New York
            December 3, 2018

GABRIEL W. GORENSTEIN
United States Magistrate Judge