LAW OFFICE OF STEVEN A. FELDMAN & ASSOCIATES, PLLC
763 DOGWOOD AVENUE
WEST HEMPSTEAD, NEW YORK 11552
TEL: 516-535-9756 FAX: 516-213-0245
STEVEN@SAFESQ.COM

Monday, March 22, 2021

VIA ECF
Honorable Gabriel W. Gorenstein                    **MEMORANDUM ENDORSEMENT**
United States Chief Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>Edgardo Diaz v. New York Paving, Inc.</u> **18-cv-4910(ALC)(GWG) (SDNY)**
             **Emque Systems Service, Inc.- Putative Non-Party Subpoena**

Dear Judge Gorenstein:

      We represent non-party Emque Systems Service, Inc., ("EMQUE") in the above referenced matter. We write, pursuant to Your Honor's Individual Practices, Rule 2.A to move this Court to quash Plaintiffs' improper Non-Party Subpoena *ad testificandum* and *duces tecum* (the "Putative Subpoena"), pursuant to Federal Rule of Civil Procedure 45(d).[1] As will be detailed below, EMQUE has made prodigious efforts to resolve the issues underlying the Putative Subpoena vis-à-vis the meet-and-confer process with all relevant parties, including Defendant. Despite EMQUE's attempted compliance with Rule 2.A, Plaintiffs have unreasonably threatened EMQUE with a motion for sanctions in connection with Plaintiffs highly inappropriate attempt to obtain discovery from a non-party. The Putative Subpoena is improper because, *inter alia*, it is over-broad and unduly burdensome to a non-party, and seeks materials which are already in Plaintiffs' possession, or which seem irrelevant to the prosecution and/or defense of Plaintiffs' claims otherwise. Additionally, Plaintiffs have failed to provide any context as to why Plaintiffs need the materials and information sought (via meet-and-confer or otherwise), much less sufficient context to allow non-party EMQUE the requisite details necessary to make a final determination as to such relevancy. As such, Plaintiffs Putative Subpoena must be quashed as both substantively and procedurally improper.

**RELEVANT FACTS AND PROCEDURAL POSTURE**

      As this Court is aware, Plaintiffs are concrete and asphalt laborers who allege that Defendant, their purported employer, violated applicable employments laws by failing to pay Plaintiffs for allegedly compensable work performed by Plaintiffs at Defendant's central yard prior/subsequent to their paving shifts. *See* Compl., ECF No. 1. Defendant has denied any liability for numerous reasons, including but not limited to the fact that Plaintiffs were not required to report to Defendant's central yard at any point in time, and/or to perform any compensable work thereat. *See* Answer, ECF No. 25.

---

[1] A copy of the Putative Subpoena is attached as Exhibit "A".

Hon. Gabriel W. Gorenstein, U.S.C.M.J.
Monday, March 22, 2021
Page 2

EMQUE is a non-party small business with no knowledge of any individual Plaintiffs, and with no knowledge concerning Defendant's pay policies, practices or procedures. Instead, EMQUE's involvement with this matter is limited to the fact that it created/installed Defendant's proprietary payroll system approximately 25-30 years ago. Apart from upgrades from a character based to a graphical based system, EMQUE and has performed very limited maintenance/repairs and on rare occasions since.

Moreover, All of EMQUE's customers belong to industries that were essentially closed during the last year, as a result of the COVID-19 pandemic. Now, as a result of easing restrictions, EMQUE been inundated with requests for custom programming to help customers deal with the new financial/operational challenges they face. At the same time due to their financial challenges, EMQUE is unable to increase its staff, of 4 active employees, especially in light of the economic conditions. To meet their demands, EMQUE would be required to divert or hire existing staff to comply with such a broad and vague request that would severely impacting operations.

A review of the docket initially shows that this Court entered into a Case Management Plan/Scheduling Order which specifically declined to mandate that any electronically stored information be produced in a specific format. *See* ECF No. 36. It further shows that Plaintiffs and Defendant exchanged discovery demands in or around October, 2018. *See* ECF Nos. 60-1; 66-5. This review next shows that, in the approximately **29 months** that have elapsed, Plaintiffs **never** proactively pursued **any** of the payroll/payroll adjacent information and documents from Defendant prior to burdening EMQUE. *Compare* Exhibit "A"; *with* the Docket (noting no motions or correspondence seeking the information demanded has been brought by Plaintiffs). Finally, review shows that the **only** issue Plaintiffs have raised in connection with Defendant's production of payroll/payroll adjacent documents concerns the **amount** of documents produced. *See* ECF No. 123 (Plaintiffs' Letter Motion seeking **only** that Defendant produce payroll information for putative class members, and not seeking that Defendant produce such information in any specific format, or produce distinct payroll information not previously produced for Opt-in Plaintiffs).

As a final matter, EMQUE has been made aware that Defendant produced more than **sixteen thousand pages** of payroll data. It did so beginning in February 2019, and continued to make supplemental productions throughout 2019 and 2020. Indeed, EMQUE has become aware that Defendant's final production of payroll documents was made in December 2020, and contained all "electronic timesheets" for putative class members demanded by Plaintiffs previously. *See* ECF No. 123. EMQUE also understands that all payroll data was produced as kept in the ordinary course of business, via PDF format. Most importantly, EMQUE understands that Plaintiffs **never** raised any issue with Defendant's production – including format of same – until it began harassing EMQUE as of March, 2021. As a final matter, EMQUE understands that the only concern Plaintiffs seem to have with Defendant's production of payroll information is that the production's format seems to have made Plaintiffs' review of same burdensome. Rather than contend with this burden of their own making, Plaintiffs instead desire to pass that burden along to a non-party. In this regard, EMQUE

Hon. Gabriel W. Gorenstein, U.S.C.M.J.
Monday, March 22, 2021
Page 3

understands the Putative Subpoena is being pursued solely in an attempt to force EMQUE to expend countless hours attempting **to produce the exact same information Plaintiffs already possess**, in a format that makes Plaintiffs' review of same easier.

With this limited, improper objective, Plaintiffs then inappropriately "served" the Putative Subpoena upon EMQUE on or about Monday, March 8, 2021 **by simply emailing same to the inbox of EMQUE's deceased representative Michael Quagliarello, who has been deceased since October 6, 2015**; as such, EMQUE actually did not receive formal notice of the Putative Subpoena until it received a facsimile copy of same on or about Monday, March 15, 2021.[2] Thus the Putative Subpoena effectively demanded EMQUE produce voluminous records within **two days of notice**, and be prepared to be deposed on said voluminous production within **four days of notice**. *See id*; Exhibit "A". Accordingly, the undersigned provided Plaintiffs' Counsel correspondence detailing the procedural and substantive failures of the Putative Subpoena, and requesting a fulsome meet-and-confer with **all** relevant parties, including Defendant, to resolve any outstanding issues applicable to same. *See* Exhibit "B". (EMQUE notes Defendant is a relevant party because the information Plaintiffs seeks should be in the possession of Defendant, and because said information contains proprietary and confidential information belonging to Defendant in any event.)

Rather than comply with their obligations to meet-and-confer with all relevant parties, Plaintiffs' Counsel instead attempted to ambush the undersigned with a private teleconference on or about Wednesday, March 17 to force EMQUE's counsel to divulge the information demanded in the Putative Subpoena.[3] Despite the undersigned's continued request for a meet-and-confer, Plaintiffs refused.[4] Instead, they waited almost 48 hours to send EMQUE a threatening correspondence on Friday, March 19, 2021, demanding that EMQUE confirm it would comply with the Putative Subpoena by end of day, or face a possible motion for sanctions. *See id.* Indeed, Plaintiffs' Counsel continued to push for EMQUE's compliance with the Putative Subpoena upon pain of sanctions, despite EMQUE's repeated request that Plaintiffs comply with their discovery obligations and engage in the fulsome meet-and-confer process envisioned by this Court. Such obstructive and improper conduct then necessitated the filing of the instant correspondence. *See id.*

**LEGAL ARGUMENT**

Initially, and in recognition of the ever-present potential for discovery abuse, Courts are authorized to limit discovery to that which is proper and warranted in the circumstances of the case. *See* Fed. Rule Civ. P. 26(b)(1); <u>Cohen v. City of New York</u>, No. 05 Civ. 6780, 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010); <u>Katz v. Batavia Marine Sporting Supplies</u>, 984 F.2d 422, 424 (Fed. Cir. 1993);

---

[2] See Correspondence from Steven Feldman, Esq. to Steven Wittels, Esq., dated March 17, 2021, annexed hereto at Exhibit "B".

[3] *See* Email Correspondence dated March 17, 2021, annexed hereto at Exhibit "C".

[4] *See* Email Correspondence dated March 19, 2021, annexed hereto at Exhibit "D".

Hon. Gabriel W. Gorenstein, U.S.C.M.J.
Monday, March 22, 2021
Page 4

Jack Frost Laboratories, Inc., v. Physicians & Nurses Manufacturing Corp., 1994 WL 9690 at *2 (S.D.N.Y. Jan.13, 1994). These include factors such as cost-shifting for non-party discovery and witnesses. Moreover,

> Even where information is relevant, [FRCP] Rule 26(b)(2)(C)(i)-(iii) authorizes a court to limit otherwise permissible discovery where, among other things, the discovery sought is "unreasonably cumulative," the party seeking the discovery has had "ample opportunity" to obtain the information sought, or "the burden or expense of the proposed discovery outweighs its likely benefit." Additionally, Rule 26(c)(1) provides that, where "good cause" is demonstrated, the court may forbid discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .. " Rule 26(c) "confers broad powers upon the court to limit or prevent discovery even though the information sought is relevant and within the scope of Rule 26(b)."

John Wiley & Sons, Inc. v. BOOK DOG BOOKS, LLC, No. 13 Civ. 816 (WHP)(GWG) (S.D.N.Y. Mar. 26, 2014) (*citing* Coyne v. Houss, 584 F. Supp. 1105, 1109 (E.D.N.Y. 1984)).

Here, the Putative Subpoena should be quashed as it ultimately seeks unreasonably cumulative – actually identical – payroll information, just in a format meant only to ease Plaintiffs' burden of review.  Further, Plaintiffs have had **more than two years –** *i.e.* "ample opportunity" – to procure this exact information from Defendant, and have failed to do so.  Moreover, given that **Plaintiffs already have the payroll information necessary to prosecute their claims in their possession**, any extra cost applicable (particularly to a non-party) cannot outweigh the expense and/or burden of associated with producing same.  As such, the Putative Subpoena should be quashed on general relevancy/burden grounds alone.

Next, and as it pertains to the fact that the Putative Subpoena is addressed to EMQUE, "[n]on-parties may occasionally have to testify and give evidence for and against litigants, but non-parties should not be burdened in discovery to the same extent as the litigants themselves. Requests to non-parties should be narrowly drawn to meet specific needs for information." Katz v. Batavia Marine Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993). Overbroad requests which impose an undue burden on a non-party must be denied. *See* Convolve, Inc. v. Dell, Inc., No. C 10-80071 WHA. (N.D. Cal. May. 9, 2011). **Thus litigants seeking to subpoena a non-party are obligated to take reasonable steps to avoid imposing undue burden or expense on such non-party, and/or to otherwise apprise said non-party of the subject matter of the subpoena and the limits on discovery under Federal Rules 26 and 34.**  *See* Atwell v. City of New York, No. 07 Civ. 2365(WHP), 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008) (*citing* Burns v. Bank of Am., No. 03 Civ. 1685(RMB)(JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (Francis, Mag. J.)).

Hon. Gabriel W. Gorenstein, U.S.C.M.J.
Monday, March 22, 2021
Page 5

Moreover:

> In addition to shifting costs for non-parties' compliance with a subpoena, Rule 45 directs district courts to "impose an appropriate sanction—which may include . . . reasonable attorney's fees—on a party or attorney who fails to comply" with the Rule's mandate to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). That provision authorizes district courts to "protect non-parties from abusive subpoenas" by "award[ing] . . . attorneys' fees for litigating the subpoena."

In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69.120.35.31, 2010 WL 2219343, at *11 (E.D.N.Y. Feb. 5, 2010). Indeed, Section 28 U.S.C. § 1927 "permits a court to compensate the victims of abusive litigation practices, not merely to deter and punish offenders. " IN RE TIRES R US LTD, No. 1-11-50395-ess (Bankr. E.D.N.Y. June 17, 2016).

It is obvious that the Putative Subpoena was not narrowly drawn, in that it seeks **all** contracts and records, **all** invoices and statements, and **all** communications between EMQUE and Defendant for a period covering **25 (or more)** years. *See* Exhibit "A". It also obvious that Plaintiffs did not take any (much less reasonable) steps to avoid imposing undue burden in that the Putative Subpoena seeks vast and unmitigated information on the method and manner in which EMQUE could assume a burden to produce payroll data held on Defendant's system and already produced by Defendant. *See id.* Plaintiffs' failure to comply with the aforementioned obligations is further shown by the fact that: (i) Plaintiffs have never sought to compel this information directly from Defendant (despite being in possession of payroll records since **February, 2019**); and (ii) (as EMQUE understands its), **Plaintiffs already have all payroll information they need to prosecute their claims in their possession.**

Thus, to expect EMQUE to produce voluminous documents and appear for a deposition solely so Plaintiffs' Counsel can minimize their burden in reviewing documents they themselves demanded (and already possess) is inequitable, and finds no support in any precedent. Additionally, Plaintiffs have failed to comply with the procedural requirements necessary to subpoena a non-party in that they have yet to file proof of service of the Putative Subpoena, and have so far refused to agree to an undertaking to reimburse the full costs of compliance, including attorneys' fees pursuant to FRCP Rule 45(c)(2)(B).

As such, the Putative Subpoena should be categorically Quashed on these grounds as well.

Finally, the Putative Subpoena also needs to be quashed given Plaintiffs' failure to comply with this Court's applicable orders and rules. Notably, Plaintiffs' conduct throughout as detailed herein violates Judge Gorenstein's February 12, 2021 Order [ECF # 178] extending two (2) years of ongoing discovery to April 1, 2021, as it "direct[ed ALL] parties to cooperate in the future to the maximum degree possible in the drafting of letters and everything else." Plaintiffs' conduct also violates Rule 2.A., which (like the order), requires the parties *meet and confer* on discovery motions

Hon. Gabriel W. Gorenstein, U.S.C.M.J.
Monday, March 22, 2021
Page 6

including discovery motions involving non-parties under <u>Rule 45</u> of the Federal Rules of Civil Procedure ("FRCP"):

> Discovery Motions. No application relating to discovery (that is, any dispute arising under Rules 26 through 37 or Rule 45 of the Federal Rules of Civil Procedure) shall be heard unless the moving party has first conferred in good faith by telephone or in person with all other relevant parties in an effort to resolve the dispute.

*Individual Rules of Honorable Gabriel W. Gorenstein Rule 2 A.*

Given Plaintiffs' categorical failure to comply with their obligations to "cooperate . . . to the maximum degree possible," and to otherwise "confer[] in good faith . . . with **all other** relevant parties," Plaintiffs' Putative Subpoena should be rejected, and any future motion seeking to compel same should be denied.

In conclusion, Plaintiffs' extraordinary threats and tactics made; (i) without the benefit of any *meet and confer*, (ii) in a transparent effort to avoid any reasonable discovery negotiations, (iii) without ensuring that the subpoena sought is narrow and reasonably-tailored, (iv) in favor of unnecessary and vexatious legal jockeying and motion practice instead, must be roundly quashed.

Accordingly, we respectfully request that your Honor quash the Putative Subpoena pursuant to Federal Rule of Civil Procedure 45(d); otherwise direct Plaintiff to cease contacting our client directly; and demand that Plaintiffs first seek discovery via the parties to the litigation before burdening EMQUE with something it may have already obtained or may obtain through the ordinary meet and confer process. EMQUE further requests this Court award costs to EMQUE as against Plaintiffs concerning the drafting of this correspondence, and any other relief deemed just. Thank you for your consideration of this matter.

Respectfully submitted,

_____/s/_____

Steven A. Feldman, Esq.

**Application denied. Both this letter and plaintiffs' response reflects that EMQUE has not complied with paragraph 2.A of the Court's Individual Practices. While the Court is certainly mindful of not putting an undue burden on a nonparty recipient of a subpoena, the best way for EMQUE to proceed is to hold a telephone conference with plaintiffs with a knowledgeable IT professional from each side on the line. EMQUE should respond as fully as possible to questions from plaintiffs regarding the documents they seek as it is only full and cooperative disclosure that will potentially obviate any need for deposition testimony. For their part, plaintiffs must cooperate to minimize the burden imposed on EMQUE. It may be that what plaintiffs ultimately need (as opposed to what they requested) can be swiftly and easily supplied by EMQUE. If not, it is EMQUE's responsibility to explain to plaintiffs exactly what the burden is. Failing to give that explanation may ultimately create more burden down the road. Accordingly, EMQUE's counsel is directed to arrange the telephonic conference to occur as soon as possible.**

So Ordered.

GABRIEL W. GORENSTEIN
United States Magistrate Judge
March 30, 2021