# EXHIBIT B

LAW OFFICES

# MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

190 WILLIS AVENUE, MINEOLA, NY 11501

TELEPHONE: (516) 747-0300

FASCIMILE: (516) 747-0653

INTERNET: www.meltzerlippe.com

*Jonathan D. Farrell, Esq.*
*Writer's Tel. No.: (516) 470-0111*
*Writer's Fax No.: (516) 237-2893*
*Email: jfarrell@meltzerlippe.com*

*Video Conference Facilities*

April 24, 2018

**Via Email <mrocco@rothmanrocco.com>**
Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
3 West Main Street, Suite 200
Elmsford, NY 10523

> Re:   **Correspondence of March 14, 28 and April 18**
>        **Our Client: New York Paving, Inc.**
>        **MLGB File No.: 09676-00080**

Dear Mr. Rocco:

As you are aware, this firm represents New York Paving, Inc. ("NY Paving"). I write in response to your correspondences dated March 14, March 28 and April 18. I apologize for the delay in responding, in writing, to your correspondences but I have been in continual contact with your partner, Gary Rothman, Esq., and have attempted to resolve many of the issues raised in your letters through a meeting of our respective clients. During my (at least three (3)) conversations with attorney Rothman, we discussed, in some granular detail, resolution of some of the disputes between NY Paving and Construction Council 175, Utility Workers of America ("Local 175"). In response to your correspondences, please be advised of the following:[1]

1.      March 14 correspondence – Local 175 objected to NY Paving's non-renewal of the Collective Bargaining between NY Paving and Local 175, as stated in attorney Coletti's correspondences dated February 16 and April 18. You state that NY Paving is a member of the New York Independent Contractors Association ("NYICA") and that the NYICA *Collective Bargaining Agreement* renewed for a period of five (5) years. Please be advised that you are incorrect.

NY Paving is not currently a member of NYICA and has not been a member since at least 2006. Therefore, NYICA is not NY Paving's authorized representative for the purposes of collective bargaining with regard to the NYICA agreement. Even if pursuant to the Paving Division Assumption Agreement entered into between NY Paving and NYICA on August 24,

---

[1] NY Paving will respond to the allegations as they appeared in each letter, said letters being responded to in accordance with the dates the letters were sent to this office and attorney Robert J. Coletti's office.



*Long Island's Business Law Firm ℠*

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
April 24, 2018
Page 2

2011 ("*Assumption Agreement*"), NYICA is NY Paving's authorized bargaining representative -- which it is not -- NY Paving has timely terminated the *Collective Bargaining Agreement* between NYICA and Local Lodge CC175 International Association of Machinists & Aerospace Workers, AFL-CIO, effective June 1, 2014 through June 30, 2017 ("*Agreement*"). Specifically, the *Agreement* renews year-to-year subsequent to its termination on June 30, 2017. See Article, IV "Term Renewal." Article IV further provides that the *Agreement* may be terminated, in writing, on or before March 15th of "any year thereafter" in which the *Agreement* renewed. In accordance with Article IV, entitled "Term Renewal," on February 16, 2018 (almost one (1) month prior to the March 15th deadline), NY Paving timely sent written correspondence to Local 175's President, Michael Bedwell informing him that the *Agreement* would not automatically renew after its expiration on June 30, 2018. The foregoing timely written notice was in compliance with Article IV of the *Agreement*, as well as paragraph 5 if the *Assumption Agreement* (as well as NYICA's by-laws, if they even are applicable (in any event)).

Further, it must be noted that NY Paving has not been a member of NYICA (if it ever was), for many years. As you were previously advised, for a period of at least ten (10) years, NY Paving has not been a member of NYICA. NY Paving has not received notice of any NYICA membership meetings, attended any NYICA meetings, voted for any NYICA officer, or voluntarily paid any NYICA dues. Accordingly, any statement that NY Paving was knowingly a member of NYICA is demonstrably false. In fact, on several instances, Local 175's Business Agent, Roland Bedwell negotiated and/or requested to meet with NY Paving representatives to negotiate a collective bargaining agreement, thereby belying any allegation that NY Paving was a member of NYICA. Finally, I also note, NYICA has a history of claiming that certain contractors were members of NYICA when said contractors were not, in fact, members of NYICA. *See* The New York Independent Contractors Alliance, Inc. v. Consolidated Edison of New York, Inc., Index No. 708737/2017 (N.Y Sup. Ct. April 17, 2018), page 7.

2.     March 28 correspondence – Local 175 objected to NY Paving's crew of unit employees in that NY Paving used a crew of five (5) unit employees for the "top crew" and two (2) unit employees on the "binder" crew," notwithstanding the *Agreement's* requirements of a crew of seven (7) and three (3) employees, respectively. Local 175 cites to Article 6(c) of the *Agreement* in support of its (misplaced) allegation NY Paving has failed to adhere to the manning levels required by the *Agreement*. While Local 175 is correct in that Article 6(c) requires minimum staffing levels, Local 175 fails to cite another article of the *Agreement* that permits NY Paving's conduct. Article XXI of the *Agreement*, entitled "Most Favored Nations" states as follows "[t]he Union agrees that it will not enter into an Agreement with any employer containing more favorable conditions or wages than those agreed to in the current Agreement. Should it be shown that more favorable conditions or wages prevail, than the current conditions or wages shall apply to all signatories to this Agreement." As we discussed, and as you seemed to be aware, many, if not most of the asphalt contractors signatory to a collective bargaining

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
April 24, 2018
Page 3

agreement with Local 175 operated with a crew size of "five (5) and two (2)" unit employees. In fact, upon information and belief, one company formerly signatory to a collective bargaining agreement with Local 175 operated with a "five (5) and one (1)" crew. In all events, and for many years, asphalt companies signatory to collective bargaining agreements with Local 175, and its predecessor union, Local 1018, LIUNA, have permitted companies to operate with a reduced manning level. Accordingly, Local 175's statement that NY Paving violated the minimum staffing of the *Agreement* is incorrect because NY Paving's actions were permitted by the express language contained in the *Agreement's* "Most Favored Nations" clause.

3.     April 18 correspondence – Local 175 objected to the badging procedure implemented by NY Paving, Di-Jo Construction Company's ("Di-Jo") hiring practices and NY Paving's certain payroll practices. First, please note the implementation of NY Paving's badging procedures is the subject of Local 175's unfair labor practice charge 29-CA-20983. While NY Paving will not repeat what it previously advised the Region, please be advised in or about April, 2017, in an effort to streamline the employee hiring process, improve safety on the premises, and to comply with the applicable federal laws requiring employment verification, NY Paving implemented new identification and employee badging procedures. According to these procedures, *any NY Paving employee* who worked in the field was required to obtain a NY Paving badge, which must be worn around their shoulders at all times. *This neutral policy applied to all employees working in the field regardless of their union affiliation.* In fact, even non-union employees and supervisory employees who work in the field were required to obtain badges. The process of receiving the identification badges is remarkably simple and applied to all existing and new employees. Employees who wished to be employed (or continued to be employed) by NY Paving had to complete the necessary paperwork, including producing sufficient documents demonstrating he/she is authorized to work in the United States, and have their picture taken. After the applicant's social security number was processed and cleared the E-Verify system, NY Paving hired the applicant and issued him/her a NY Paving badge. Every other labor organization representing NY Paving's employees, *i.e.*, Local 282, IBT; Local 1298, LIUNA; Local 1010; Local 14-15, IUOE; and Local 138, IUOE, understood this process, agreed to the process, and adhered (and continues to adhere) to same.

The process instituted by NY Paving is completely straightforward, reasonable and rational. NY Paving does not want people who have not been hired and processed by NY Paving working on its premises. Understandably, NY Paving's desire is to process the applicants through its hiring system by collecting the necessary new-hire information and documents, E-Verify as permitted by federal law, and issue badges before they begin working for NY Paving. Another purpose of NY Paving's hiring process, in addition to complying with applicable federal and state laws, is to ensure the safety of other NY Paving employees by ensuring only those individuals properly hired by NY Paving have access to NY Paving's jobsites and premises. Finally, NY Paving would face significant liability (including monetary damages) if any

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
April 24, 2018
Page 4

individual not hired by NY Paving got injured while working for NY Paving. It is beyond peradventure NY Paving's desire to ensure only those persons hired by NY Paving through its hiring system have access to NY Paving premises and job sites is rational, neutral, and lawful.

As a legal matter, Local 175's attorney, Eric Chaiken, was at the very meeting wherein NY Paving introduced the badging procedure and did not object to same. He only objected to NY Paving's badging procedure many months later. Accordingly, pursuant to well established Board Law, Local 175's time to object to the implementation of NY Paving's badging procedure has long passed and was waived (by Local 175).

Local 175 raised other objections vis-a-vis NY Paving's conduct in its (Local 175's) April 18th correspondence. For instance, Local 175 alleges, upon "information and belief," that Di-Jo is an "alter ego" to NY Paving. While that is not true, please be advised that Di-Jo performs no unit work that could be considered, in any way, "Local 175 work." As you could readily confirm, Di-Jo provides guard services, mechanics and yard-men to NY Paving's facilities located in Long Island City and Old Bethpage. Additionally, Di-Jo previously employed new hires, from time to time, for the maximum period of thirty (30) days, to determine if the new hires could perform concrete – and not asphalt – work.[2] Accordingly, Local 175's concern, while legitimate, is misplaced.

Local 175 also objected to NY Paving's participation in the program "Helmets to Hardhats" in that allegedly only unions affiliated with the "building trades" could participate in the program. Local 175 is incorrect and its objections are misplaced. First, the *Agreement* expressly provides NY Paving the right to hire and employ any and all who NY Paving sees fit. Article I, Section – 2(f) expressly provides as follows: "[e]mployers are at liberty to employ and discharge whomever they see fit and the Employer shall at all times be the sole judge as to the work to be performed . . ." Second, please be advised *NY Paving* has enrolled in the "Helmets to Hardhats" program, therefore your statement concerning a union's participation in the program is an irrelevancy. Third, it cannot be argued only "buildings trades" locals can participate in the program when, as you readily admit, several of NY Paving's hires from the program were assigned to perform asphalt work and have become or will become members of Local 175 in accordance with the express provisions as set forth in the *Agreement*. Finally, I do not understand Local 175's objection in hiring veterans of the United States Armed Forces. NY

---

[2] In fact, in the one instance where a Di-Jo employee performed asphalt work – for a single day – that employee was fired by Di-Jo.

835807-2

MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
April 24, 2018
Page 5

Paving finds nothing objectionable in offering gainful employment to those who have admirably served their country and plan to continue to do same.[3]

Local 175 also objected to the fact that there are several asphalt unit employees "on the bench" who allegedly have not been offered the opportunity to work at NY Paving. In fact, you cite to an email I sent, dated November 8, 2017, in connection with same. Once again please be advised Local 175 is incorrect. As I advised you, there are several employees who NY Paving has "badged" and placed on its "badged" and "alternate" list *who have not even reported to work for one (1) day during 2018.* Upon information and belief, NY Paving believes said employees have not reported to work at NY Paving upon the express instructions of Local 175. These employees are Messrs. Wayne Kennedy, Mark Palumbo, Salvatore Pecoraro and Jaime Rivero. The alternate badged employees are as follows: Patrick Taylor, Frank Rose and Sal Messina. It would be NY Paving's pleasure if the aforementioned employees actually showed up to work at NY Paving. If the foregoing employees wish to work for NY Paving, they should contact the Local 175 shop steward. In all events, please be advised NY Paving has not prevented, in any way, badged employees from working at NY Paving.

Finally, Local 175 raised issues in connection with NY Paving's payroll practices. While Local 175's allegations concern practices that have occurred for many years, and therefore have also long since been waived by Local 175, please be advised to the extent the issues you raised require NY Paving to alter its payroll practices, said practices will be altered. In connection with the foregoing please be further advised the policy you raised regarding travel time was instituted solely for the benefit of the employees. NY Paving employees were never required to report to NY Paving's yard prior to the commencement of the workday.

As discussed, prior NY Paving's implementation of said policy, employees were responsible for driving to the "first job of the day" and paying for all gas, tolls and parking associated with same. If the employee was lucky, his/her car would remain in the parking spot for the entire day without damage, tickets or towing. At the end of the day, employees would have to walk back to their own individual vehicle, regardless of the heat, cold or possible rain. Said walk often exceeded several miles. In response to the fact pattern described above, and in response to the requests from NY Paving's employees, NY Paving instituted the policies which Local 175 (alone) now objects to. Notwithstanding the foregoing, and in response to Local 175 objections, please be advised unless Local 175 and NY Paving agree to certain protective measures, on Monday, May 23, 2018, all asphalt employees – other than working foreman – will

---

[3] Once again Local 175 objects to conduct *no other labor organization finds objectionable.* While NY Paving, due to its business needs, assigned the first hires from the "Helmets to Hardhats" program to its asphalt unit, other labor organizations have been advised NY Paving plans to assign hires from the program to other trade classifications. Other than Local 175 no other labor organization has objected to NY Paving's participation in the program.

Meltzer, Lippe, Goldstein & Breitstone, LLP

Mathew P. Rocco, Esq.
Rothman Rocco LaRuffa, LLP
April 24, 2018
Page 6

no longer be afforded the option of riding on NY Paving's vehicles and will have to meet NY Paving at the "first job of the day."[4]

Please realize nothing contained herein should be considered an admission of any kind or a waiver of any procedural or substantive right, claim or defense, all of which are expressly reserved. Please also realize the foregoing is not an exhaustive list of NY Paving's arguments in response to the allegations raised in your correspondences dated March 14, March 28 and April 18, and NY Paving expressly reserves the right to allege additional arguments and defenses to Local 175's allegations. Finally, in the interest of brevity and efficiency, I have not listed NY Paving's all arguments in response to the issues raised in this letter. NY Paving therefore expressly reserves the right to raise additional arguments in response to Local 175's allegations enumerated in the instant correspondence.

Upon your receipt and review of this correspondence if you should have any questions please do not hesitate to contact me or my colleague Ana Getiashvili, Esq. I can be contacted at the number listed above; attorney Getiashvili can be reached at (516) 747-0300, ext. 174.

Very truly yours,

Jonathan D. Farrell/AG

JDF:epr                                    Jonathan D. Farrell

cc:      Client (*via email*)
         Gary Rothman, Esq. (*via email*)
         Ana Getiashvili, Esq. (*via email*)

---

[4] NY Paving employees who are provided company vehicles, *i.e.*, "pick-up trucks" and load and unload, gas up and drive said vehicles to the "first job of the day" will be compensated, at the minimum wage rate, for said activity. Notwithstanding NY Paving's ability to pay said employees overtime at a "blended rate," NY Paving will pay said employees overtime calculated at an employee's highest hourly rate as provided for in the relevant collective bargaining agreement.

835807-2