18-CV-04910 (ALC)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGARDO DIAZ, Individually and on Behalf of
All Others Similarly Situated,

Plaintiff,

-against-

NEW YORK PAVING INC.

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO SANCTIONS MOTION

**MELTZER, LIPPE, GOLDSTEIN**

**& BREITSTONE, LLP**

Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501

(516) 747-0300

Ana Getiashvili, Esq.

Christopher P. Hampton, Esq.

Larry R. Martinez, Esq.

Nicholas P. Melito, Esq.

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

    A.    Plaintiffs and Wittels Have Known of the Existence of Old Bethpage Since 2018………............................................................................... 3

    B.    Despite Their Direct Knowledge of Old Bethpage, Wittels Makes the Tactical Decision to Limit the Complaint to Long Island City ............................. 5

    C.    Wittels Limited Their Pre-Discovery Conditional Collective Certification Motion to Long Island City........................................................ 5

    D.    Wittels Limited Discovery to Long Island City...................................... 7

    E.    Defendant Complied with All Discovery Obligations.............................. 7

    F.    Wittels Fraudulently Concealed the Old Bethpage "Dispute" from Both the Court and Defendant ..................................................... 8

ARGUMENT ........................................................................................................... 11

    POINT I    WITTELS' MOTION IS PREMISED ON A FLAGRANT MISREPRESENTATION TO THE COURT ........................................... 11

    POINT II    PLAINTIFFS ARE PRECLUDED FROM SEEKING DISCOVERY AND SANCTIONS........................................................... 11

        A.    FRCP 26(b)(2)(C)(ii) Precludes Discovery Regarding Old Bethpage ............................................................................. 12

        B.    Class-Based Discovery is Limited to Long Island City................ 15

    POINT III    GIVEN WITTELS LIMITED THEIR CONDITIONAL CERTIFICATION MOTION TO LONG ISLAND CITY, WITTELS IS NOT ENTITLED TO PROVIDE NOTICE OF SAME TO EMPLOYEES OUTSIDE OF LONG ISLAND CITY ......... 17

        A.    Relevant Legal Standard ............................................................. 17

        B.    Wittels Is Entitled to Provide Notice to Only Long Island City Employees .......................................................................... 18

i

POINT IV     WITTELS FAILS TO MEET THE STANDARD FOR IMPOSITION OF RULE 37 SANCTIONS ............................................. 19

    A.     Wittels Fails to Establish a Violation of FRCP Rules 26 and 37(b) ...................................................................................... 20

    B.     Wittels Fails to Establish a Violation Of FRCP Rules 26 and 37(c) ....................................................................................... 23

        i     *Wittels Cannot Establish the Rule 37(c) "Obligation to Produce" Requirement* ..................................................... 23

        ii     *Wittels Cannot Establish the Rule 37(c) "Culpable State of Mind" Requirement* ............................................. 24

        iii     *Wittels Cannot Establish the Rule 37 "Relevance" Requirement* .................................................................... 26

POINT V     DEFENDANT'S ACTIONS WERE SUBSTANTIALLY JUSTIFIED AND HARMLESS ................................................. 27

POINT VI     SANCTIONS ARE NOT WARRANTED IN LIGHT OF WITTELS ACTIONS AND MISREPRESENTATIONS ........................ 29

    A.     To the Extent Any Sanctions Are Warranted, Only the Least Harsh Sanction of Further Discovery Can Be Ordered ....... 29

    B.     Further Discovery Is Not Warranted In Light of Wittels' Duplicitous Conduct .................................................... 31

POINT VII     WITTELS HAS WAIVED ANY RIGHT FOR RECOVERY ................ 32

CONCLUSION ........................................................................................................ 34

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases (Federal)**

Cabrera v. Stephens,
No. 16-CV-3234, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) ........................................... 22

Curcio v. Roosevelt Union Free Sch. Dist.,
283 F.R.D. 102 (E.D.N.Y. 2012) ...................................................................................... 23, 24

Davis v. Artuz,
No. 96-CV-7699, 2001 WL 50887 (S.D.N.Y. Jan. 19, 2001) .................................................. 30

Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.,
873 F.3d 85 (2d Cir. 2017) .................................................................................................. 25

Ford Motor Co. v. Edgewood Properties, Inc.,
257 F.R.D. 418 (D.N.J. 2009) ............................................................................................ 33

Genesis Healthcare Corp. v. Symczyk,
569 U.S. 66, 133 S. Ct. 1523 (2013) .................................................................................. 22

Gucci Am., Inc. v. Guess? Inc.,
790 F. Supp. 2d 136 (S.D.N.Y. 2011) ........................................................................... passim

Hickey v. State Univ. of New York at Stony Brook Hosp.,
2012 WL 3064170 (E.D.N.Y. July 27, 2012) ....................................................................... 26

Hnot v. Willis Grp. Holdings, Ltd.,
2006 WL 2381869 (S.D.N.Y. Aug. 17, 2006) ............................................................. 15, 16, 32

John Wiley & Sons, Inc. v. Dog Books, LLC,
No. 13-CV-816, 2015 WL 5769943 (S.D.N.Y. Oct. 2, 2015) ........................................... 29, 31

Jordan v. United Health Grp.,
No. 15-CV-00442-RJA-JJM, 2016 WL 11704271 (W.D.N.Y. June 17, 2016) ...................... 16

Kunstler v. City of New York,
242 F.R.D. 261 (S.D.N.Y.2007) ....................................................................................... 27, 28

Laroque v. Domino's Pizza, LLC,
557 F. Supp. 2d 346 (E.D.N.Y. 2008) ............................................................................. 18, 19

Local 3621, EMS Officers Union v. City of New York,
No. 18-CV-4476(LJL)(SLC), 2021 WL 134566 (S.D.N.Y. Jan. 14, 2021) ...................... 20, 21

Maddison v. Comfort Sys. USA (Syracuse), Inc.,
   No. 5-17-CV-0359, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)..............................................13

Mazzocchi v. Windsor Owners Corp.,
   2017 WL 1906859 (S.D.N.Y. May 5, 2017) ...........................................................................13

Myers v. Hertz Corp.,
   624 F.3d 537 (2d Cir. 2010).................................................................................................22

Orlik v. Dutchess Cty., N.Y.,
   No. 08-CV-1213, 2010 WL 1379776, (S.D.N.Y. Mar. 25, 2010).....................................27, 28

Patino v. Brady Parking, Inc.,
   No. LL-CV-03080, 2015 WL 513180 (S.D.N.Y. Jan. 22, 2015) ...........................................30

Puglisi v. TD Bank, N.A.,
   998 F. Supp. 2d 95 (E.D.N.Y. 2014) ....................................................................................22

Raymond v. City of New York,
   No. 15-CV-6885, 2020 WL 7055572 (S.D.N.Y. Dec. 2, 2020) ..............................................24

Rep. and Rec. Adopted
   No. 11-CIV-3080, 2015 WL 509601 (S.D.N.Y. Feb. 6, 2015) ...............................................30

Residential Funding Corp. v. DeGeorge Fin. Corp.,
   306 F.3d 99 (2d Cir.2002)...............................................................................................23, 26

Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. V. Coventry First LLC,
   280 F.R.D. 147 (S.D.N.Y. 2012) ....................................................................................27, 28

Rudd v. T.L. Cannon Corp.
   No. 3:10-CV-0591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) .......................................17, 18

Sampson v. MediSys Hlth. Netwrk, Inc.,
   No. 10-CV-1342, 2012 WL 3027850 (E.D.N.Y.  Feb. 9, 2012) .................................13, 14, 26

Sanchez v. JMP Ventures, L.L.C.,
   No. 13 CIV. 7264 KBF, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)...............................17, 22

Secured Worldwide, LLC v. Kinney,
   No. 15-CV-1761, 2017 WL 3866285 (S.D.N.Y. Aug. 31, 2017)............................................25

Sharma v. Burberry Ltd.,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) .........................................................................17, 18, 19

iv

Shipstad v. One Way or Another Productions, LLC,
    No. 16-CV-5145(LAK)(JCF), 2017 WL 2462657 (S.D.N.Y. June 6, 2017) .............. 29, 30, 31

Sterling v. Interlake Indus., Inc.,
    154 F.R.D. 579 (E.D.N.Y. 1994) ................................................................... 19, 20

Telesford v. Wenderlich,
    No. 16-CV-6130, 2020 WL 289300 (W.D.N.Y. Jan. 21, 2020)................................ 19

Trinidad v. Pret A Manger (USA) Ltd.,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013)........................................................... 18, 19

Tylena M. v. Heartshare Children's Servs.,
    220 F.R.D. 38 (S.D.N.Y. 2004) ..................................................................... 33

Ungar v. City of New York,
    No. 15-CV-609, 2021 WL 1700217 (E.D.N.Y. Apr. 29, 2021) ............................... 26

United States v. Consolidated Edison Co. of New York,
    1988 WL 138275 (E.D.N.Y. Dec.15, 1988) ...................................................... 16

Valenti v. Penn Mut. Life Ins. Co.,
    850 F. Supp. 2d 445 (S.D.N.Y. 2012)............................................................... 24

Viriri v. White Plains Hosp. Med. Ctr.,
    320 F.R.D. 344 (S.D.N.Y. 2017) ................................................................ 17, 19

Wandering Dago Inc. v. New York State Off. of Gen. Servs.,
    No. 13-CV-1053, 2015 WL 3453321 (N.D.N.Y. May 29, 2015)............................... 24

Warman v. Amer. Nat'l Standards Inst.,
    193 F. Supp. 3d 318 (S.D.N.Y. 2016)........................................................... 18, 19

**Cases (State)**

Ling v. Kemper Independence Ins. Co.,
    No. 650092/2014, 2017 WL 6039513 (N.Y. Sup. Ct. Dec. 06, 2017) ...................... 16

**Statutes**

29 U.S.C. § 216(b) .......................................................................................... 22

**Rules**

Fed. R. Civ. Pro. 37....................................................................................... passim
Fed. R. Civ. Pro. 26....................................................................................... passim

v

**PRELIMINARY STATEMENT**

On June 7, 2021, the Law Offices of Wittels, McInturff & Palikovic (collectively hereinafter referred to as "Wittels") filed a Motion for Sanctions ("Plaintiffs' Motion") under the Federal Rules of Civil Procedure ("FRCP" or "Rule") 37 to purportedly redress Defendant's alleged "concealment" of its facility located at 161 Sweet Hollow Road, Old Bethpage, NY 11804 (the "Old Bethpage Location" or "Old Bethpage"). Defendant submits this Memorandum of Law in opposition to Plaintiffs' Motion.

As discussed below, the inescapable and documented truth of the matter is that Defendant made Wittels aware of Old Bethpage in a correspondence dated April 24, 2018. Despite this knowledge, Wittels made the tactical decision to expressly limit the June 2018 Complaint, the scope of their August 2018 Collective Certification Motion, and their ensuing discovery requests to Defendant's facility located at 37-18 Railroad Avenue, Long Island City, New York, NY 11101 (the "Long Island City Location" or "Long Island City"). Based on Wittels' limitation on the scope of this matter, Defendant complied with the requirements of FRCP 26 by providing all relevant information about Long Island City, subject to properly and timely raised objections to Wittels' discovery requests seeking same.

Notwithstanding the foregoing, Wittels submitted a declaration in support of the instant motion which alleges, *inter alia*: (i) Wittels was unaware of the existence of Old Bethpage until "fortuitously independently learning of the Old Bethpage facility . . . earlier this year" (*i.e.* in February 2021); and (ii) Defendant actively attempted to conceal Old Bethpage from Wittels.[1] Defendant respectfully submits Plaintiffs' Motion perpetrates a serious fraud on this Court, and

---

[1] *See* Decl. of Steven L. Wittels (ECF No. 212) ("Wittels Dec."), ¶ 4 and <u>generally</u>.

is nothing more than an attempt to present this Court with a contrived story to secure a windfall of certification of a class/collective for the Old Bethpage Location.

Even assuming Wittels is being truthful when they stated they only learned of Old Bethpage's existence "in or around February 2021", Wittels nevertheless still committed a fraud on this Court. Specifically, in the four (4) months that transpired between their alleged discovery of Old Bethpage in February 2021 and their filing of this motion, Wittels never propounded discovery requests for the Old Bethpage Location and never moved the Court to compel discovery pertaining to Old Bethpage.[2] Rather, Wittels concealed this dispute from the Court to allow for the filing of the instant baseless Motion for sanctions.

Nevertheless, the inescapable fact remains – the filing of a motion with this Court falsely premised on Wittels' gaining knowledge of a fact in 2021, which they were actually aware of in 2018, warrants the imposition of sanctions against Wittels.[3] Accordingly, Plaintiffs' Motion should be categorically denied.

## STATEMENT OF FACTS[4]

The facts and procedural posture in this matter indisputably reveal the following: (i) Plaintiffs and Wittels knew of the existence of Old Bethpage before the inception of this litigation; (ii) despite such direct knowledge, Wittels made the deliberate decision to limit their Complaint, Motion for Conditional Certification, and Discovery Demands to only Long Island City; and (iii) Wittels thereafter deliberately concealed material information from both

---

[2] FRCP, Rule 26(b)(2)(C)(ii).

[3] As noted in Defendant's Pre-Motion Letter for Sanctions, dated June 17, 20201, Defendant seeks sanctions for Wittels' patent misrepresentations, fraudulent accusations, and bad-faith filing which has needlessly multiplied the proceedings.

[4] In the interest of expediency, Defendant's Memorandum will only address the most pertinent events relevant to Wittels' fraudulent Motion.  Defendant believes it is prudent for the Court to know the full litany of improprieties, misrepresentations and failures of Wittels relevant herein, and thus annexes a chronology of same hereto to the Declaration of Christopher P. Hampton, Esq. dated June 17, 2021 ("Hampton Dec."), at Exhibit "A".

Defendant and the Court to fraudulently bring the instant baseless Motion. They also reveal Defendant properly provided responses regarding the Long Island City location in accordance with the prescriptions of FRCP 26 at all relevant times herein.

**A.     Plaintiffs and Wittels Have Known of the Existence of Old Bethpage Since 2018**

On April 24, 2018, counsel for Defendant sent correspondence to Matthew Rocco, Esq. and Eric Chaikin, Esq. (counsel for Construction Council Local 175, Utility Workers of America, AFL-CIO ("Local 175")).[5] Local 175 is one of the unions that represents pavers employed by Defendant, including the only Named Plaintiff and the vast majority of Opt-ins to this case. Defendant's April 24th correspondence responded to a series of issues raised by Local 175. One issue was the contention that Local 175 members were entitled to compensation for the time Defendant purportedly required them to report to Defendant's yard at Long Island City. Further, in responding to an issue unrelated to this contention, Defendant specifically and directly identified the existence of its Old Bethpage facility. Id. at p. 4.

On May 30, 2018 (4 days before filing the instant complaint), Wittels responded to Defendant's April 24 correspondence.[6] In their responsive correspondence, Wittels informed Defendant they were working closely with counsel for Local 175 and were in possession of the April 24th correspondence, which discussed the Old Bethpage facility. Upon information and belief, Wittels learned more about the Old Bethpage facility during a series of investigatory meetings held with Local 175 members and leadership. Specifically, prior to the filing of the instant Complaint, Wittels held investigatory meetings with Local 175 members, including some

---

[5] See Defendant's Counsel's April 24, 2018 Correspondence, annexed to the Hampton Dec. at Exhibit "B".

[6] See Wittels' May 30, 2018 Correspondence, annexed to the Hampton Dec. at Exhibit "C".

3

of the first Opt-in Plaintiffs in this matter.[7] Wittels also met with officers of Local 175, including but not limited to Anthony Franco and Charles Priolo.[8] Mr. Franco holds a high-level leadership position with Local 175 and has decades of in-depth knowledge about Defendant's operations and the grievances pending before the National Labor Relations Board ("NLRB"). *Id.* See also Ex. "C".

Finally, Wittels' allegation that he just learned of Old Bethpage through a recent discovery of an NLRB hearing transcript is also untrue. Seven original Opt-in Plaintiffs in this case testified in the 2018 NLRB hearing. The testimony occurred in the same period of time that Wittels filed the instant FLSA suit and his Motion for Conditional Certification.[9] See also Pl. Br., p. 5. If there was any doubt regarding the Old Bethpage Location, it was certainly resolved when an Opt-In Plaintiff attended the NLRB proceedings and directly witnessed the testimony of Defendant where Old Bethpage was discussed. Specifically, Opt-in Plaintiff Salvatore Franco directly observed the testimony of Peter Miceli relating to the Old Bethpage Location.[10] It strains credulity for Wittels to allege they were not aware of the NLRB hearing or of the Old Bethpage Location until 2021 when they were informed of and actively participating in these collateral events in 2018. See Wittels Dec., ¶ 4.

---

[7] See Deposition Transcript of Edgardo Diaz at 44:14-49:03, 133:07-134:08, 139:06-149:24, 147:11-148:16; Deposition Transcript of Frank Wolfe at 28:11-30:19; Deposition Transcript of Terry Holder at 39:24-47:06, annexed to the Hampton Dec. at Exhibit "D".

[8] See Plaintiffs' Brief in Support of their Motion ("Pl. Br.") (ECF No. 211), pg. 1 (vaguely referencing their pre-suit investigation which consisted of information from "witnesses" and "other resources").

[9] See Transcripts from the National Labor Relations Board proceeding in New York Paving, Inc. (29-CA-209803, 29-CA-197798, 29-CA-213828, 29-CA-213847), dated October 16, 17, 18, 2018, collectively annexed to the Hampton Dec. at Exhibit "E" (noting that Opt-in Plaintiffs Michael Bartilucci, William Smith, Mike Bedwell, and Shomari Patrick testified at the NLRB proceeding October 16, 2018; that Opt-In Plaintiffs, Glenn Patrick and Greg Schmaltz, testified on October 17, 2018; and that Opt-In Plaintiff, Salvatore Franco, testified on October 18, 2018).

[10] See Transcript from the National Labor Relations Board proceeding in New York Paving, Inc. (29-CA-209803, 29-CA-197798, 29-CA-213828, 29-CA-213847), dated September 21, 2018, at 197:6-197:14, 213:19-214:8, annexed to the Hampton Dec. at Exhibit "F".

**B.**     **Despite Their Direct Knowledge of Old Bethpage, Wittels Makes the Tactical Decision to Limit the Complaint to Long Island City**

Despite being aware of Old Bethpage, Wittels drafted the instant Complaint which limited allegations of wrong-doing to Long Island City.[11] Wittels commenced the Complaint's factual allegations by making the limited claim that Defendant required its pavers "to arrive at **Defendant's central yard in Long Island City**" at which they purportedly performed uncompensated work. Complaint ¶ 20 (emphasis added). Wittels then continued to allege all the specific "work" purportedly performed by Plaintiffs was limited to working at, and driving to/from, the yard in Long Island City. See id. at ¶¶ 21-24, 28-29, 31-32. Wittels went so far as to also limit all alleged post-liminary work to Long Island City as well. Id. at ¶ 28 ("After completing the final paving assignment, pavers are required to reload the company truck, ride with or drive the tools and materials **back to Defendant's yard in Long Island City** . . ." (emphasis added)).   At no point throughout the Complaint did Wittels make any allegations encompassing actions occurring outside of Long Island City (*i.e.* in Old Bethpage). See id., generally.[12]

**C.**     **Wittels Limited Their Pre-Discovery Conditional Collective Certification Motion to Long Island City**

On August 23, 2018, Wittels moved for Conditional Certification of an FLSA Collective Action, limiting the motion to Long Island City.[13] It is important to note Wittels made the deliberate decision to move for Conditional Certification prior to seeking – let alone receiving –

---

[11] See Complaint (ECF No. 1) ¶¶ 2, 10, 20-32, 35-36.

[12] Wittels makes the allegation that they performed multiple searches prior to and during this litigation that failed to uncover the existence of Old Bethpage. Wittels Dec., ¶¶ 5-6.  Such assertions are incredulous in that a singular Google search conducted by Defendant discloses such information immediately.  See Screenshot of Google Search, annexed to the Hampton Dec. at Exhibit "G".

[13] See ECF Nos. 32-34.

a single item of discovery.[14] It is also important to note Wittels still admits Plaintiffs have had no knowledge of work conditions at Old Bethpage at any point in time, much less when they moved for conditional certification for only Long Island City. See Pl. Br., p. 5; see also Wittels Dec. at ¶¶ 4-6.

In support of this restriction, Plaintiffs' Memorandum in Support limited its allegations to employees who purportedly performed uncompensated work "at New York Paving's yard" in Long Island City.  ECF No. 33, pp. 2, 5, 14.  The Memorandum specifically acknowledged that "the work primarily at issue in this case" was limited to "New York Paving's yard **in Long Island City**." Id. at p. 10 (emphasis added).  Additionally, the factual allegations Wittels used to support their conditional collective also were limited to Long Island City.[15] Finally, in the proposed Notice of Conditional Certification Wittels limited distribution to individuals that reported to "yard" in Long Island City.[16]

During Collective Certification Motion briefing, seven Opt-in Plaintiffs attended and/or testified before the NLRB in connection with the 2018 hearing. Exs. "E", "F". This provided Wittels with the opportunity to further learn of Old Bethpage, and raise the issue of its existence to the Court before their motion was fully briefed.[17] Wittels did not. See id. The  Court then issued an Order certifying a collective limited to the Long Island City facility.[18]

---

[14] In this regard, Plaintiffs' Motion was filed August 23, 2018. See id. This is despite the fact that the Preliminary Conference was not held until August 28, 2018; that initial disclosures were not due to be exchanged until September 11, 2018; and that discovery demands were not due to be served until October 12, 2018. See ECF Nos. 27 and 36.

[15] See, e.g., Declaration of Edgardo Diaz (ECF No. 34-1), ¶¶ 4-11 (limiting all factual allegations to the Long Island City and being utterly devoid of any claims relating to Old Bethpage); Declaration of Frank Wolfe (ECF No. 34-2), ¶¶ 4-11 (same); Declaration of Terry Holder (ECF No. 34-3), ¶¶ 7-13 (same)

[16] See Conditional Notice (ECF No. 34-5) (limiting its allegations to a singular "yard" located in Long Island City).

[17] See ECF Nos. 41-42 (showing a filing date for Reply of October 26, 2018).

[18] See Opinion and Order Regarding Plaintiffs' Motion for Conditional Certification dated December 4, 2021 (ECF No. 45), p. 2 (noting that relevant allegations were limited to "the yard in Long Island City"); p. 3 (acknowledging

4827-7725-3870, v. 6

### D.     Wittels Limited Discovery to Long Island City

Despite having knowledge of Old Bethpage, Wittels limited their Initial Disclosures to "Plaintiff and the other individuals who have opted into the collective," and explicitly limited the scope of documents relevant to same to, *inter alia*, "Plaintiff's and opt-in Plaintiffs' pay statements."[19] At that time, Plaintiff and all Opt-in Plaintiffs work(ed) exclusively at Long Island City. Next, Wittels limited the Discovery Demands to Long Island City.[20] In this regard, Wittels' Discovery Demands sought specific responses limited to the "Yard" which Wittels defined as "the NY Paving Yard at 3718 Railroad Avenue, Long Island City, NY 11101." See id.[21]

### E.     Defendant Complied with All Discovery Obligations

Consistent with the limitations Wittels created, Defendant timely responded to Plaintiffs' Discovery Demands.[22] Defendant's Responses and Objections informed Wittels that it was limiting disclosure for all requests which sought data for non-Opt-in-putative class members to only providing disclosures for "Named Plaintiff and Opt-In Plaintiffs as of the date of this response." Id. Defendant then informed Wittels that, subject to that express limitation, it was not withholding any documents for a large majority of Wittels' demands. See id. at Requests Nos. 13, 27-33, 53, 55, 57.

---

that Plaintiffs are limiting their allegations to the "**main** yard . . . located in Long Island City" (emphasis added)); pp. 4-6, 12 (discussing the work done at the "central yard" in Long Island City); p. 16 ("There are sufficient allegations of a policy that violated the FLSA . . . to require a finding that the employees **required to report to the central yard** [and no other location] are similarly situated." (emphasis added)).

[19] See Plaintiffs' Initial Disclosures, annexed to the Hampton Dec. at Exhibit "H".

[20] See Plaintiffs' Interrogatories and Document Demands directed to Defendant, dated October 12, 2018, annexed to the Hampton Dec. at Exhibit "I".

[21] In addition, Wittels specifically propounded supplemental discovery demands which also failed to seek discovery concerning Old Bethpage. See Plaintiffs Second Request for Production of Documents, dated July 16, 2020, annexed to the Hampton Dec. at Exhibit "J".

[22] See Defendant's Response and Objections dated December 21, 2018, and Defendant's Fourth Supplemental Responses and Objections, dated January 13, 2020, copies of which have been annexed hereto at Exhibit "K".

7

Additionally, Defendant explicitly objected to the very document demands Wittels claims may have revealed information concerning Old Bethpage, and affirmatively stated it was withholding documents in connection with such requests:

- Request 35: "All corporate organization documents, including corporate organization charts, filings, phone directories, or other documents showing the relationship between NY Paving and any of its employees, officers, directors, trustees, executives, independent contractors, service providers, parent, subsidiary, or affiliate companies or entities."

- Request 36: "All documents that constitute or reflect the management structure of NY paving and any affiliate companies or entities."

- Request 50: "All financial statements, bank statements, trial balance, detailed general ledger, and cash disbursement journal, from January 1, 2012 to the present." See id.

At no point in time did Wittels seek move to compel responses to these Document Requests which they now allege **may** have yielded information pertaining to other locations. See Docket, generally.

Finally, to the extent this Court issued any Orders mandating Defendant produce or permit discovery,[23] Defendant fully and faithfully complied with same. See Pl. Br., generally (failing to raise any issue of non-compliance).

**F.** **Wittels Fraudulently Concealed the Old Bethpage "Dispute" from Both the Court and Defendant**

Wittels engaged in a scorched-earth litigation strategy by filing an inordinate number of discovery motions.[24] Yet, despite knowing of Old Bethpage since 2018, Wittels made the targeted decision to exclude Old Bethpage from all such motions. See id. Wittels also avoided

---

[23] See, e.g., ECF Nos. 71; 77; 98; 115; 152; 161; 167.

[24] See, e.g., ECF Nos. 66; 67; 121; 122; 123; 140; 141; 163; 184-89.

4827-7725-3870, v. 6

introducing this issue when they moved this court for Corrective Notice, which could have included notice provisions encompassing Old Bethpage (if there were a legal basis to do so).[25]

Wittels claims to have discovered the existence of Old Bethpage while reviewing the transcript of an NLRB proceeding between Defendant and Local 175. See Wittels Dec. ¶ 4.[26] Wittels then claims that such discovery was made in preparation for their taking of the FRCP 30(b)(6) deposition of Peter Miceli – i.e. the same individual who gave the testimony regarding Old Bethpage at the NLRB hearing. See id.  Wittels nevertheless did not ask Mr. Miceli a single question about Old Bethpage of his NLRB testimony during his depositions on February 11, 2021 and February 15, 2021.[27] See id. Additionally, Wittels proceeded with a separate FRCP 30(b)(6) deposition of Defendant's General Counsel on February 24, 2021, and also intentionally refused to ask any questions concerning Old Bethpage or said NLRB testimony at same.[28]

Further, Wittels doggedly pursued expansive discovery from both Defendant and non-party Emque during the early portion of March, 2021 and once again avoided addressing the Old Bethpage issue. See ECF Nos. 184-89.  Instead, Wittels waited until March 22, 2021 to put into action a plan that would culminate with the instant baseless Motion for sanctions. The plan started with an email to Defense Counsel where Wittels patently misrepresented that they "**just became aware that Defendant New York Paving has a facility in Old Bethpage**" and demanded an emergency meet-and-confer.[29] Wittels made this representation and urgent demand despite

---

[25] See ECF No. 59.

[26] Defendant is curious as to: (i) how Wittels came to be in possession of a confidential transcript of an unrelated NLRB proceeding; (ii) why Wittels was reviewing same, given that it concerned a dispute wholly unrelated to the instant matter; and (iii) why Wittels did not receive or review same until 2021, given that such testimony was given in 2018 and was observed by an "original" Opt-In at the time it was given.

[27] See Miceli Transcript Cover Pages, annexed to the Hampton Dec. at Exhibit "L".

[28] See Coletti Transcript Cover Page, annexed to the Hampton Dec. at Exhibit "M".

[29] See Email Correspondence dated March 22, 2021, annexed to the Hampton Dec. at Exhibit "N" (emphasis added).

knowing of Old Bethpage for approximately **sixty (60) days**. Wittels then threatened Defendant with sanctions for their "concealment" of Old Bethpage.[30] Wittels thereafter categorically refused to seek discovery concerning Old Bethpage, and instead demanded Defendant consent to automatic certification of a 216(b) collective and Rule 23 class encompassing the Old Bethpage location. See id.

Finally, Wittels then intentionally withheld this dispute from the Court. In this regard, Wittels requested an adjournment of the discovery deadline on March 31, 2021, and represented to the Court that the basis for the request was, *inter alia*, to resolve the discovery-related dispute regarding Old Bethpage.[31] Yet, Wittels intentionally refused to seek such discovery from Defendant, and/or to bring this dispute to the Court's attention. See Docket, generally. Instead, on June 1, 2021, Wittels moved for a limited adjournment of the discovery deadline which explicitly excluded discovery concerning Old Bethpage.[32] Wittels then waited until the Court had approved of this limited discovery adjournment to seek redress for Defendant's "concealment" of Old Bethpage vis-à-vis sanctions.[33] This is despite: (i) knowing about Old Bethpage since early 2018; (ii) never seeking discovery about Old Bethpage; and (iii) never moving to compel discovery about Old Bethpage.

---

[30] See Letter Correspondence dated March 26, 2021, annexed to the Hampton Dec. at Exhibit "O".

[31] See ECF No. 190 (seeking a limited extension of the discovery deadline "solely so that the parties can continue to attempt to resolve the following discovery-related topics: . . . 3. Defendant's Old Bethpage location").

[32] See ECF No. 205 (limiting the adjournment to Defendant's production of time records for Long Island City employees in electronic format).

[33] See ECF Nos. 206, 207, 210-212.

4827-7725-3870, v. 6

## **ARGUMENT**

### **POINT I**

### **WITTELS' MOTION IS PREMISED ON A FLAGRANT MISREPRESENTATION TO THE COURT**

Wittels represented to this Court they were unaware of the existence of Old Bethpage until February 2021. That is patently false, as Wittels learned about Old Bethpage in April 2018 following receipt of correspondence from Defendant which specifically identified Old Bethpage; and in May 2018 following further investigatory meetings concerning Old Bethpage. See Statement of Facts ("SF"), Section A, supra. Accordingly, Plaintiffs' Motion premised on alleged "concealment" of Old Bethpage must be denied in its entirety.

### **POINT II**

### **PLAINTIFFS ARE PRECLUDED FROM SEEKING DISCOVERY AND SANCTIONS**

Having demonstrated Plaintiffs were aware of Old Bethpage since 2018, the remaining questions relative to the instant motion are whether: (i) Defendant was required to provide information pertaining to Old Bethpage in response to Plaintiffs' discovery demands, and, if so, (ii) such a failure to produce this information is sanctionable. Defendant submits, since Wittels limited all discovery requests to events emanating from Long Island City, no Rule 26 obligation to disclose information for Old Bethpage was triggered. However, even if the broadest reading of FRCP 26 could reveal such obligation was triggered, Wittels' failure to raise this issue during discovery precludes further discovery regarding Old Bethpage and the sanctions they so desperately seek.

11

A.     **FRCP 26(b)(2)(C)(ii) Precludes Discovery Regarding Old Bethpage**

While the scope of discovery permitted under FRCP 26 is broad, such "broad standard ... is not a license for unrestricted discovery." Gucci Am., Inc. v. Guess? Inc., 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011). That is because the "Federal Rules allow courts to limit the extent of discovery … 'where the party seeking same has had ample opportunity to obtain the information by discovery in the action'." Id. (citing Fed. R. Civ. Pro. 26(b)(2)(C)(ii)). In Gucci Am., Inc., plaintiff brought claims of trademark infringement and sought a motion under FRCP 37 to compel the production of additional information concerning defendants' revenues for products ultimately distributed outside of the United States. Id. at 138-39.[34] Plaintiff's motion was brought following the close of discovery. Id. The plaintiff attempted to explain its delay in seeking the discovery by arguing that plaintiff came to realize defendants had withheld foreign purchase discovery "only late during the discovery process." Id. The plaintiff's attorneys also argued they had placed defendants on notice of this non-disclosure while discovery remained open. See id. (noting plaintiffs sent deficiency correspondence to defendants on or about February 1, 2011 with discovery closing on or about March 15, 2011). The plaintiff further argued it did not know that defendants would refuse to produce such discovery until April 5 (following the close of discovery), at which point in time the plaintiff "immediately raised the issue with the Court." Gucci Am., Inc. 790 F. Supp. 2d at 140-41.

The court categorically denied plaintiff's motion to compel under FRCP 37, precisely because "[d]efendants' position on the issue of foreign sales was made clear early and often." Id. at 141. In this regard, the court noted that defendants specifically objected to the plaintiffs'

---

[34] Defendant understands the Gucci plaintiff did not move for sanctions under FRCP 37.  Nonetheless, they still moved under FRCP 37, and premised such motion on defendants' purported non-disclosure of discoverable information (like Wittels here).  As such, Defendant respectfully notes the conclusions drawn by the court therein apply in full force to the instant matter.

12

document demands which would tend to require and/or reveal foreign sales discovery, and plaintiff "never challenged those objections in an application to the Court." Id. In fact, the court noted that "nothing in the record establishes that [plaintiff] took issue with [defendants'] productions" which excluded foreign sales information, even "though [plaintiff] was plainly on notice as to [d]efendants' position on foreign sales information." Id. The court also made clear it did not believe plaintiff's argument of just becoming aware of this non-disclosure by noting "it is hard to believe that [plaintiff] needed more than one year of discovery to piece together the nature of [d]efendants' foreign sales activity." Id.

Thus, pursuant to FRCP 26(b)(2)(C)(ii), if a plaintiff is on notice of outstanding discovery and fails to timely seek same, they cannot be entitled to it (and thus cannot sustain a motions for sanctions for a party's failure to produce it).  See, e.g., Gucci Am., 790 F.Supp.2d at 140-41; Mazzocchi v. Windsor Owners Corp., 2017 WL 1906859 (S.D.N.Y. May 5, 2017) (denying plaintiffs' motion to compel defendants to supplement their production after the close of discovery because plaintiffs had "ample opportunity" to move to compel said production prior to the close of discovery yet failed to do so). That is the exact situation that occurred here.

Wittels knew of Old Bethpage since April 2018, yet purposefully crafted their June 2018 Complaint, September 2018 disclosures and October 2018 demands to exclude Old Bethpage. See SF, Sections B, D, supra. Wittels' attempt to revise history to argue that their generic, legally conclusory class definition found within their Complaint expands this matter to include Old Bethpage employees (see Pl. Br., p. 5) must be rejected.[35] Next, to the extent any of Wittels'

---

[35] Had Wittels specifically referenced Old Bethpage in their class definition, it is likely that this Court would have been required to strike/dismiss allegations against same. This is because class allegations for a specific location which lack factual support must be stricken and/or dismissed. See, e.g., Sampson v. MediSys Hlth. Netwrk, Inc., No. 10-CV-1342, 2012 WL 3027850, *13-17 (E.D.N.Y.  Feb. 9, 2012); Maddison v. Comfort Sys. USA (Syracuse), Inc., No. 5-17-CV-0359, 2018 WL 679477, *7 (N.D.N.Y. Feb. 1, 2018) (granting defendant's motion to strike class allegations). In Sampson, the Court specifically dismissed class allegations concerning locations where plaintiffs did not work and about which plaintiffs had no knowledge. 2012 WL 3027850 at *13-17. In doing so, the court noted

demands could be interpreted to have sought information about Old Bethpage, Defendant provided timely objections and limitations to same. See SF, Section E, supra. Defendant also informed Wittels it was withholding documents in connection with those objections, and was producing other documents pursuant to those limitations. See id. Wittels "never challenged those objections [and/or limitations] in an application to this Court," despite being "plainly on notice as to Defendants' position" regarding production of information to Old Bethpage at all times relevant herein. See id.; see also Gucci Am., Inc., 790 F. Supp. 2d at 140-41.

Nor can Wittels credibly claim that their alleged February 2021 discovery of Old Bethpage prevented them from raising this issue before the June 2021 filing of the instant motion.  First, Wittels took a series of 30(b)(6) depositions in the time period between February 11th, 15th and February 24th 2021 and avoided seeking any testimony regarding Old Bethpage. SF, Section F. Second, Wittels waited for approximately sixty (60) days from the alleged February 2021 discovery to inform Defendants of their newfound information. See Ex. "N".

Third, as of March 25, 2021 Wittels knew of Defendant's rejection of Wittels' extortionist demand that Defendant concede automatic certification of a class and collective encompassing Old Bethpage or face a motion for sanctions. SF, Section F. Yet they altogether refused to present this issue to the Court. Id. Instead, Wittels provided correspondence to the Court which actually **foreclosed discovery on Old Bethpage**. See ECF No. 205 (seeking a discovery adjournment exclusively limited to the production of payroll data for Long Island City in electronic format). Wittels then waited until after the Court had endorsed this foreclosure of Old Bethpage discovery in order to inform the Court of their "need" for same. See, e.g., ECF No.

---

plaintiffs' "modest factual showing limited to their own individual experience at a single location was insufficient to allow [them] to propose a . . .class action comprised of the identified Class Members." Id

208 (endorsing the limited discovery adjournment); ECF Nos. 201-212 (Plaintiffs' Motion regarding non-disclosure of Old Bethpage).

Much like the Gucci plaintiffs, Wittels knew of the need for discovery regarding Old Bethpage since April 2018. Much like the Gucci plaintiffs, Wittels failed to seek discovery regarding Old Bethpage, or to move to compel discovery regarding Old Bethpage despite their knowledge. Much like the Gucci plaintiffs, Wittels also waited until discovery for Old Bethpage was foreclosed to make a motion regarding it.  As such, and much like the Gucci plaintiffs, any motions Wittels could make regarding Old Bethpage (including their instant motion regarding same pursuant to FRCP 37) should be categorically denied.

**B.**     **Class-Based Discovery is Limited to Long Island City**

In Hnot v. Willis Grp. Holdings, Ltd., Judge Lynch held plaintiffs are not entitled to discovery to expand the scope of a class where plaintiffs failed to seek and/or preserve their right to same. No. 01-CV-6558, 2006 WL 2381869, *1 (S.D.N.Y. Aug. 17, 2006).[36] In Hnot, plaintiffs sought certification of a class consisting of "high-level female employees" who alleged sexual discrimination against defendants. Id. at *1. The court then certified a class period of 1998 to 2001 in accordance with the evidence submitted by the plaintiffs. Id. at *2. Following certification, the plaintiffs moved for discovery of database information which would help them enlarge the class period through at least 2004. Id.

The Court denied plaintiffs' motion because it found no good cause for same, as plaintiffs "subsequently failed to take even minimal adequate steps to protect their alleged right to the discovery now at issue. Indeed, plaintiffs' own representations to the [c]ourt helped to preclude

---

[36] While Hnot does not concern a motion for sanctions pursuant to FRCP 37, it still concerns a plaintiffs' demand they are entitled to certain discovery meant to enlarge the scope of a class which has been (or is being sought to be) certified. Given Wittels' motion is premised on exactly this type of "dispute," Defendant again notes the Hnot court's conclusions and posture are directly applicable herein.

the . . . discovery they now seek." Id. at *4.  In this regard, the court found that plaintiffs were aware of the existence of the post-2001 database information which they allege would have supported their request for a larger class while discovery remained open. Id. Despite this knowledge, plaintiffs failed to seek discovery regarding the post-2001 database information and failed to move the court to compel such information, thereby failing to place the court on notice of plaintiffs' need for same. See Hnot, 2006 WL 2381869 at *4. Therefore, the court found "there [was] no basis for concluding that plaintiffs [had] been diligent in pursuing the discovery now at issue," and rejected their request for further discovery concerning enlarging the scope of the class sought. See also, Jordan v. United Health Grp., No. 15-CV-00442-RJA-JJM, 2016 WL 11704271, at *2 (W.D.N.Y. June 17, 2016) (denying plaintiff's request for discovery regarding overtime issues that were not alleged in the complaint); United States v. Consolidated Edison Co. of New York, 1988 WL 138275, *1–2 (E.D.N.Y. Dec.15, 1988) (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint).[37]

Here, Wittels was acutely aware the Complaint and discovery requests were limited to information pertaining to Long Island City and could never be construed to require disclosure regarding Old Bethpage. Wittels' deliberate limitations of this action to Long Island City, coupled with his failure to timely raise the issue relating to Old Bethpage, prevents Wittels from seeking any discovery regarding Old Bethpage at this late stage. See, e.g., Hnot, 2006 WL 2381869 at *4; Gucci Am., Inc., 790 F. Supp. 2d at 140-41.

---

[37] See also, e.g., Ling v. Kemper Independence Ins. Co., No. 650092/2014, 2017 WL 6039513, at *6 (N.Y. Sup. Ct. Dec. 06, 2017) (denying plaintiff's motion to compel discovery pertaining to issues not alleged in the complaint).

## POINT III

**GIVEN WITTELS LIMITED THEIR CONDITIONAL CERTIFICATION MOTION TO LONG ISLAND CITY, WITTELS IS NOT ENTITLED TO PROVIDE NOTICE OF SAME TO EMPLOYEES OUTSIDE OF LONG ISLAND CITY**

**A.**    **Relevant Legal Standard**

Three legal principles concerning conditional certification are critical to confirming that Defendant acted properly in limiting notice of conditional collective certification to Long Island City employees. First, "while a plaintiff's burden of proof is low, it is not non-existent – [conditional] certification is not automatic." Sanchez v. JMP Ventures, L.L.C., No. 13 CIV. 7264 KBF, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations and citation omitted). Second, when a plaintiff moves for conditional certification prior to discovery (as here), courts look only to the pleadings and any affidavits submitted by plaintiffs to determine the appropriateness (if any) and scope of conditional certification. See Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) (noting, when a plaintiff seeks conditional certification prior to discovery, courts determine whether employees are similarly situated "based on the pleadings, affidavits and declarations submitted by the … plaintiffs").

Third, "courts have not hesitated to deny conditional certification where the plaintiff seeks to certify a class comprising employees working at other store locations of which the plaintiff has no personal knowledge and cannot therefore testify as to the employment practices." Viriri v. White Plains Hosp. Med. Ctr., 320 F.R.D. 344, 352 (S.D.N.Y. 2017); accord Rudd v. T.L. Cannon Corp., No. 3:10-CV-0591(TJM)(DEP), 2011 WL 831446 at *8-9 (N.D.N.Y. Jan. 4, 2011); Sharma, 52 F. Supp. 3d 443, 458 (E.D.N.Y. 2014) (denying conditional certification because the plaintiff's "lack of knowledge of any pay violations at other New York stores[] do[es] not warrant a finding that [sales associates] at all New York stores are similarly situated to

17

the [p]laintiffs"); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008); Warman v. Amer. Nat'l Standards Inst., 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016).

**B.     Wittels Is Entitled to Provide Notice to Only Long Island City Employees**

Here, Wittels moved for Conditional Certification prior to discovery, and limited all pleadings and affidavits in support thereof to Long Island City. *See* Declaration of Edgardo Diaz (ECF No. 34-1), ¶¶ 4-11 (limiting all factual allegations to the Long Island City); Declaration of Frank Wolfe (ECF No. 34-2), ¶¶ 4-11 (same); Declaration of Terry Holder (ECF No. 34-3), ¶¶ 7-13 (same). Plaintiffs even conceded the Named Plaintiff and the forty-seven (47) employees who joined this lawsuit prior to conditional certification still have no knowledge of Old Bethpage. *See* Pl. Br., p. 5; see also Wittels Dec. at ¶¶ 4-6.

Thus the Court was necessarily constrained to determining the appropriateness of conditional certification for only Long Island City. See Sharma, 52 F. Supp. 3d at 452. The Court's own Order Conditionally certifying this matter limited itself to discussing the appropriateness of certification for only Long Island City.  See ECF No. 45, p. 2 (noting that relevant allegations were limited to "the yard in Long Island City"); p. 3 (acknowledging that Plaintiffs are limiting their allegations to the "**main** yard . . . located in Long Island City" (emphasis added)); pp. 4-6, 12 (discussing the work done at the "central yard" in Long Island City); p. 16 ("There are sufficient allegations of a policy that violated the FLSA . . . to require a finding that the employees **required to report to the central yard** [and no other location] are similarly situated." (emphasis added)). As this Court was constrained to Long Island City, Defendant's non-disclosure of the names and contact information for employees outside of Long Island City is proper, or at worst, harmless error. See, e.g., Rudd, 2011 WL 831446 at *8-9;

Viriri, 320 F.R.D. at 352; Sharma, 52 F. Supp. 3d at 458; Trinidad, 962 F. Supp. 2d at 558;

Laroque, 557 F. Supp. 2d at 355; Warman, 193 F.Supp.3d at 323.

Further, and as detailed below, since Wittels is entitled to conditional certification of only

Long Island City employees, and sought (is entitled to) only discovery about Long Island City,

Defendant's limitation of discovery to Long Island City is not sanctionable.

## POINT IV

### WITTELS FAILS TO MEET THE STANDARD FOR IMPOSITION OF RULE 37 SANCTIONS

Sanctions are available only to the extent Wittels can establish that Defendant "fail[ed] to

obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)";

or "fail[ed] to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R.

Civ. Pro. §§ 37(b)(2), (c). The burden of establishing sanctions always lies with the party seeking

them. See Telesford v. Wenderlich, No. 16-CV-6130, 2020 WL 289300, at *3 (W.D.N.Y. Jan.

21, 2020) (explaining a party's burden when seeking sanctions for failure to produce discovery

and denying plaintiff's motion for sanctions). "Imposition of sanctions under Rule 37 is a drastic

remedy, however, and should only be applied in those rare cases where a party's conduct

represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure."

Sterling v. Interlake Indus., Inc., 154 F.R.D. 579, 587 (E.D.N.Y. 1994). In Sterling, a plaintiff

moved for product liability damages, asserting she was injured when defendant's metal rack fell

on her while at work. Id. at 581. Defendant moved for summary judgment against plaintiff,

arguing *inter alia*, that it "neither designed, manufactured, produced, or distributed the metal

storage rack at issue." Id. at 582. In addition to opposing defendant's motion, plaintiff moved for

sanctions premised upon the fact that defendant allegedly "misled the plaintiff into believing that

[defendant] was the manufacturer of the [rack], and did not disclose to the plaintiff the

4827-7725-3870, v. 6

relationship of [defendant] and the [actual manufacturer of the rack] until after the three year statute of limitations period for bringing suit against [the manufacturer] had expired." Id. Importantly, plaintiff argued "that it could not have discovered the facts supporting the defendant's contentions . . . on its own." Id. In sum, the plaintiff alleged that defendant's Answer and all of defendant's discovery responses failed to suggest that the manufacturer was a separate entity. Sterling, 154 F.R.D. at 583.

Despite these allegations of flagrant concealment, the court nevertheless found the award of sanctions inappropriate as a matter of law.   That is because "the plaintiff never properly identified the rack at issue." Id. As such, the court found that defendant's answers and responses to plaintiff's discovery demands, which also did not reveal the manufacture of the rack, did "not qualify as 'flagrant bad faith' or 'callous disregard' for the Federal Rules". Id.

Here, since plaintiffs never "properly identified the [Old Bethpage location] at issue," Defendant's failure to identify same in their Answer and discovery responses also cannot qualify as flagrant bad faith or callous disregard for the Federal Rules, particularly FRCP 26, 37(b) and/or 37(c).[38]

A.    **Wittels Fails to Establish a Violation of FRCP Rules 26 and 37(b)**

In order for the Court to find Defendant's purported non-disclosure of information regarding Old Bethpage to be sanctionable pursuant to FRCP 37(b), it first must find that Defendant refused to obey a Court Order specifically directing Defendant to "produce or permit discovery" of Old Bethpage. See Local 3621, EMS Officers Union v. City of New York, No. 18-

---

[38] Defendant submitted its Answer on August 3, 2018. ECF No. 25. Defendant provided "short and plain" statements regarding its anticipated defenses and responded to every factual allegation raised in the Complaint. See id. Since Wittels' Complaint was utterly devoid of factual allegations concerning Old Bethpage, Defendant's Answer obviously could not admit or deny any allegations regarding same. As such, Wittels' argument that Defendant's Answer was improper for failing to address factual contentions about Old Bethpage which simply do not exist (see Pl. Br., p. 5) is ludicrous.

CV-4476(LJL)(SLC), 2021 WL 134566, *3-4 (S.D.N.Y. Jan. 14, 2021) ("A court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions."). In Local 3621, EMS Offices Union, plaintiffs moved for Rule 37 sanctions, alleging defendants' failure to produce an "Operations Order" warranted an adverse inference. Id. The plaintiffs alleged the Operations Order was vital to determine the scope of their class certification, and also cited to a litany of discovery motions and orders which they allege defendants had violated to support their motion. Id. The defendants opposed their motion on the ground that the plaintiffs failed to demonstrate any violation of a court order. Local 3621, EMS Offices Union, 2021 WL 134566 at *3. The court denied plaintiffs' motion holding that, since "[n]one of those other orders . . . dealt with the Operations Order . . . [p]laintiffs still fall short of [FRCP 37(b)'s] requirement that [d]efendants have failed to comply with a discovery order of this court." Id. at *4.

The same principles apply here. Wittels failed to identify a single court order that required the production of the Old Bethpage information. Even the broadest reading of FRCP 26 cannot warrant an inference that any discovery order in this case encompassed Old Bethpage. See, e.g., ECF Nos. 36; 71; 77; 98; 115; 152; 161; 167. Accordingly, like the plaintiffs in the Local 3621 matter, Wittels here falls woefully short of establishing that Defendant "failed to comply with a discovery order of this" Court.  See Local 3621, EMS Offices Union, 2021 WL 134566 at *4. Accordingly, Plaintiffs fail to establish any claim for Rule 37(b) sanctions. Moreover, Defendants made a fulsome production of all information pertaining to Long Island City in accordance with the Court's Certification Order. Indeed, the Certification Order was itself a product of Plaintiffs' Certification Motion which exclusively discussed the claims

emanating from Long Island City. Wittels made the deliberate choice to exclude Old Bethpage from their motion and they simply cannot contend otherwise. See SF, Section C, supra.

In the unlikely event the Conditional Certification Order is interpreted as somehow mandating disclosure of Old Bethpage, this interpretation cannot form the predicate for finding of sanctions under Rule 37(b). This is because a Conditional Certification Order is not a discovery device. See Sanchez v. JMP Ventures, L.L.C., No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (citing Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)) ("The notice and opt-in process outlined by the FLSA is not a discovery device to determine whether conditional certification is appropriate."). Instead, it is a mechanism for providing notice of collective action and opportunity to participate. See 29 U.S.C. § 216(b) (requiring any individual desiring to participate in a collective action to "give[] his consent in writing . . . and [to have] such consent filed in the court in which such action is brought"); see also Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 74, 133 S. Ct. 1523, 1530 (2013)) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court.'").

Furthermore, remedies for a violation of a conditional certification order are not found under Rule 37. Instead, the remedy is for a defendant to provide Notice to the employees who should have received it but did not. See Cabrera v. Stephens, No. 16-CV-3234, 2017 WL 4326511, at *12 (E.D.N.Y. Sept. 28, 2017) (finding Rule 37 sanctions inappropriate and instead ordering defendants to post notice in all of its store locations).[39]

---

[39] Wittels are not entitled to any remedy that would provide corrective notice to be issued to Old Bethpage. This is because any request for corrective notice is precluded by: (i) Wittels' purposeful limitation of their certification

**B.** <u>**Wittels Fails to Establish a Violation Of FRCP Rules 26 and 37(c)**</u>

Sanctions pursuant to Rule 37(c) are only applicable where a party "fails to provide information or identify witnesses as required by Rule 26(a) or (e)." Fed. R. Civ. Pro. 37(c)(2). In order to establish entitlement to sanctions under this section, the party seeking same bears the burden of establishing: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; **and** (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir.2002) (citations omitted and emphasis added). Nevertheless, a defendant may altogether thwart an award of sanctions where the purported failure to disclose "was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(2).

       i      <u>*Wittels Cannot Establish the Rule 37(c) "Obligation to Produce" Requirement*</u>

The Complaint is decidedly limited to the allegations of individuals that worked at one location – Long Island City. <u>See</u> Complaint (ECF No. 1) ¶¶ 2, 10, 20-32, 35-36. The Conditional Certification Motion which was filed before discovery began is also decidedly limited to seeking certification of a collective for employees who worked exclusively at Long Island City. <u>See</u> <u>SF</u>, Section C, <u>supra</u>.[40] Once Certification was complete, Wittels sought discovery and limited requests to the Long Island City yard. <u>See</u> <u>SF</u>, Section D, <u>supra</u>.

---

motion to Long Island; (ii) Wittels' violation of Rule 26(b)(2)(c)(ii); and (iii) Wittels' failure to take "even minimal adequate steps to protect their alleged right to the discovery" of Old Bethpage.

[40] In fact, Wittels concedes that neither Named Plaintiff nor any of the forty-seven (47) Plaintiffs who opted into this matter prior to conditional certification had any knowledge of the work done at Old Bethpage, let alone of the wage-and-hour policies necessary to conditionally certify same. <u>See</u> Pl. Br., p. 5; <u>see also</u> Wittels Dec. at ¶¶ 4-6.

As such, Defendant was under no obligation to "timely produce" any information concerning Old Bethpage, and thus sanctions under Rule 37(c) are inappropriate. See, e.g., Curcio v. Roosevelt Union Free Sch. Dist., 283 F.R.D. 102, 116 (E.D.N.Y. 2012) (denying plaintiff's request for sanctions and concluding "[d]efendants did not breach their obligation to timely produce evidence"); Valenti v. Penn Mut. Life Ins. Co., 850 F. Supp. 2d 445, 452 (S.D.N.Y. 2012), aff'd, 511 F. App'x 57 (2d Cir. 2013) (denying plaintiff's motion for an adverse inference where "defendants were simply not under any obligation to produce"). In Curcio, the court specifically found that, since no obligations under Rule 26 or vis-à-vis court order ever required the defendant to produce the evidence plaintiff alleges was not disclosed, defendants could not be found to have violated their "obligation to timely produce evidence." Curcio, 283 F.R.D. at 116.  Defendant never had obligations under Rule 26 to produce any discovery regarding Old Bethpage (or at least had such obligation excused due to FRCP 26(b)(2)(C)(ii)). Further, there was never any court order directing Defendant to produce same. Since Defendant had no obligation to produce Old Bethpage discovery, it cannot be found to have ever violated it. See id.

ii     *Wittels Cannot Establish the Rule 37(c) "Culpable State of Mind" Requirement*

In the unlikely event the Court finds there was an obligation to produce information pertaining to Old Bethpage, Wittels cannot establish the alleged non-disclosure was made with a "culpable state of mind". See Wandering Dago Inc. v. New York State Off. of Gen. Servs., No. 13-CV-1053, 2015 WL 3453321, *16 (N.D.N.Y. May 29, 2015) (denying plaintiff's motion for sanctions where plaintiff did not meet "its burden in demonstrating any culpable conduct on the part of the [d]efendants or their [c]ounsel")[41]; Raymond v. City of New York, No. 15-CV-6885,

---

[41] In Wandering Dago Inc., the court needed to determine whether defendant's irretrievable deletion of two emails was sanctionable. Id. at *11. The court found it was not, for two reasons. First, the court held defendant had no duty

2020 WL 7055572, *11 (S.D.N.Y. Dec. 2, 2020) ("The Court must take a case-by-case approach to determine if the party has such a culpable state of mind, that is, bad faith, gross negligence, or simple negligence."). "Negligence, broadly speaking, is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances." Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc., 873 F.3d 85, 129 (2d Cir. 2017).

In assessing the culpability requirement, Courts have seized on the reasonableness of a defendant's interpretation of a plaintiffs' discovery demands. See Secured Worldwide, LLC v. Kinney, No. 15-CV-1761, 2017 WL 3866285, *3-4 (S.D.N.Y. Aug. 31, 2017). In Secured Worldwide, LLC, plaintiff issued a subpoena to defendant demanding inspection of defendant's premises to allow plaintiff to assess defendant's financial status in connection with a judgment rendered against defendant. Id. at *3. While defendant allowed for an inspection of certain parts of their premises, they specifically denied plaintiff access to defendant's laboratory. Id. The plaintiff then filed a motion for sanctions due to defendant's "non-disclosure" of the laboratory in connection with plaintiff's subpoena. Id. The court specifically denied sanctions finding that the "Order granting [plaintiff's] motion for discovery in aid of execution of judgment, and the language of the subpoena, may have genuinely raised disputes as to whether or not the laboratory was to be inspected. The record does not demonstrate that [defendant's limited] interpretation [that it did not] was unreasonable or warrants sanctions." Id. at *4.

Wittels' targeted limitation of this matter to Long Island City at the very least "raised disputes as to whether or not" discovery concerning Old Bethpage was requested. As such, the

---

to preserve the emails at the time they were destroyed. Id. at *7. Second, and more importantly, the court found that the deletion was not "the product of a deliberate act or in bad faith by Defendants or their Counsel, or, for that matter, anyone else." Id. at *11. Here, since Defendant had no duty disclose, and since their non-disclosure was a good-faith response to Wittels' own limitations, a culpable state of mind cannot be found either.

record can "not demonstrate that [Defendant's] interpretation [that Old Bethpage was excluded from discovery] was unreasonable or warrant sanctions" either.[42]

### iii   _Wittels Cannot Establish the Rule 37 "Relevance" Requirement_

Where the breach of discovery obligations was merely negligent, the term "relevant" in the context of FRCP 37 "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." Residential Funding, 306 F.3d at 109. That is because the party seeking sanctions is not entitled to a "windfall for uncovering evidence that would have made little difference in the underlying case." See id. Here, if the sanctions sought by Wittels were granted, an improper windfall would occur. Given Wittels' explicit limitations of this action to only Long Island City prior to the onset of discovery, they are not and have never been entitled to discovery regarding the completely distinct Old Bethpage Location, as it is utterly irrelevant to their limited Long Island City claim. See Sampson, 2012 WL 3027850 at *13-17; Ungar v. City of New York, No. 15-CV-609, 2021 WL 1700217, *2 (E.D.N.Y. Apr. 29, 2021) ("No such claim is pled in the Complaint and it cannot be raised for the first time at this stage"); Hickey v. State Univ. of New York at Stony Brook Hosp., 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) (denying plaintiff's motion for Summary Judgement for raising issues not pled in the initial complaint). Thus, discovery regarding Old Bethpage is irrelevant to the scope of Wittels' claims of violations exclusively occurring in Long Island City. See SF, Sections B – D, supra.

As such: (i) Defendant was under no obligation to produce discovery concerning Old Bethpage; (ii) Defendant had no culpable state of mind in not disclosing Old Bethpage; and (iii) discovery concerning Old Bethpage is not relevant to Wittels' claims of alleged violations

---

[42] Given that Defendant cannot be even seen to have acted negligently as to its non-disclosure of Old Bethpage information, Defendant obviously cannot be found to have acted grossly negligent or in bad faith for same as well.

exclusively occurring in Long Island City.  Thus Wittels fails to satisfy their burden to an award for sanctions under Rule 37(c).

## POINT V

### DEFENDANT'S ACTIONS WERE SUBSTANTIALLY JUSTIFIED AND HARMLESS

Courts do not impose sanctions under FRCP 37(c) where a party's failure to comply with FRCP 26(a) or (e) was "substantially justified" or where the conduct "was harmless." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. V. Coventry First LLC, 280 F.R.D. 147, 158–59 (S.D.N.Y. 2012) (citations omitted). "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Kunstler v. City of New York, 242 F.R.D. 261, 264–65 (S.D.N.Y.2007) (internal quotations and citations omitted); see also Orlik v. Dutchess Cty., N.Y., No. 08-CV-1213, 2010 WL 1379776, (S.D.N.Y. Mar. 25, 2010). "Harmlessness means an absence of prejudice," (Ritchie Risk, 280 F.R.D. at 159), and the presence of bad faith. See Orlik, 2010 WL 1379776, at *2 (denying plaintiff's motion for FRCP 37 sanctions because "the Court [could not] say that Defendants' failure to produce [discovery] at an earlier time was the result of bad faith" and was therefore harmless).

Orlik establishes that Defendant's actions meet the substantial justification standard. In that matter, plaintiff brought an action seeking damages for defendant county's allegedly wrongful removal of plaintiff's son from her custody. Orlik, 2010 WL 1379776 at *1. In connection with this allegation, the plaintiffs moved under FRCP 37(c) to preclude defendants from using certain training manuals as part of their defense due to "[d]efendant's alleged failure to produce these documents in response to the [c]ourt's direction . . . and … [p]laintiffs' discovery demands." Id. The court categorically denied plaintiffs' motion finding defendant was

27

justified in withholding the training manuals. Id. at *2. The court accepted defendants' belief that "in the absence of language in [p]laintiffs' discovery demands specifying a request for **State** program manuals, the [p]laintiffs' discovery demands referred to **County** [manuals]." Id. (emphasis in original). As such, the court found that the defendants' non-disclosure of the state manuals was not "the result of bad faith," and therefore justifiable.  See id.

In this case, Wittels served document and interrogatory requests that, by definition, limited all responses to the Long Island City yard. See Ex. I, Doc. Requests Nos. 13, 27-33, 53, 55, 57. Thus, similar to the defendants in Orlik, Defendant's belief that it was required to only submit responses regarding Long Island City cannot be "the result of bad faith." See Orlik, 2010 WL 1379776 at *1. Nevertheless, Wittels now appears to argue these very same requests also mandated disclosure of information about Old Bethpage. Setting aside whether Wittels argument is made in good faith, the only salient truth that remains is that reasonable minds "could differ as to whether [Defendant] was required to comply with the [non-existent] disclosure request" about Old Bethpage. See Kunstler, 242 F.R.D. at 265 (denying defendant's motion for sanctions where plaintiff's conduct was found to be justifiable). The Court need only review the requests themselves to arrive at this inevitable conclusion. See Exhibit I, Doc. Request (defining "yard" as limited to Defendant's yard located at 3718 Railroad Ave, Long Island City, NY 11101).

Second, Defendant's actions are harmless and the case has suffered no prejudice. Discovery (although expressly limited by Wittels) remains open until June 30, 2021. Wittels has filed no dispositive motion, nor has any motion for final certification ensued. Therefore, in the unlikely event the Court finds that disclosure was required, the harm alleged by Wittels is simply non-existent. Since Defendant's non-disclosure was justifiable and harmless, Plaintiffs' motion

for sanctions must be denied on these grounds alone.  See, e.g., Ritchie Risk, 280 F.R.D. at 159;

Orlik, 2010 WL 1379776 at *2.

**POINT VI**

**SANCTIONS ARE NOT WARRANTED IN LIGHT OF WITTELS ACTIONS AND MISREPRESENTATIONS**

**A.   To the Extent Any Sanctions Are Warranted, Only the Least Harsh Sanction of Further Discovery Can Be Ordered**

Even were sanctions warranted, the harsh sanctions sought by Wittels are egregiously

inappropriate. "When determining the appropriate sanction under Rule 37, courts in this Circuit

weigh several factors, including: (1) the willfulness of acts underlying noncompliance; (2) the

efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the

noncompliant party was on notice that it faced possible sanctions" (collectively, "the *Shipstad*

Factors"). Shipstad v. One Way or Another Productions, LLC, No. 16-CV-5145(LAK)(JCF),

2017 WL 2462657 *3 (S.D.N.Y. June 6, 2017). To the extent any sanctions are imposed by a

court, they should be designed to: "(1) deter parties from engaging in spoliation; (2) place the

risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the

prejudiced party to the same position he would have been in absent the wrongful [withholding]

of evidence by the opposing party." John Wiley & Sons, Inc. v. Dog Books, LLC, No. 13-CV-

816, 2015 WL 5769943, *6 (S.D.N.Y. Oct. 2, 2015) (Gorenstein, J.) Additionally, this Court has

held "[i]t is well accepted that a court should always impose the least harsh sanction that can

provide an adequate remedy. The choices include—from least harsh to most harsh—further

discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default

judgment or dismissal." Id.

29

When evaluating the first *Shipstad* factor (willfulness of non-compliance), courts consider whether the order requiring discovery at issue was clear, whether the party to be sanctioned understood the order, and whether noncompliance was due to "factors beyond the party's control." See Davis v. Artuz, No. 96-CV-7699, 2001 WL 50887, *3 (S.D.N.Y. Jan. 19, 2001). In the instant matter, there was no order requiring Defendant provide or permit discovery concerning Old Bethpage. See SF, Section E, supra. Further, given that Wittels deliberately chose not to place Defendant on notice of their "intention" to seek discovery outside of Long Island City, there is no way Defendant was on notice of its need to produce same. See SF, Section D, supra. Thus Defendant could not have understood any "order" to mandate the production of Old Bethpage information. See Section IV.A, supra. Finally, Wittels' choice to deliberately omit Old Bethpage from this action constitutes a factor beyond Defendant's control. As such, this factor weighs against imposition of any sanctions, much less the "most harsh" sanctions sought by Wittels.

The second *Shipstad* factor (efficacy of lesser sanctions) also weighs in favor of significantly less severe sanctions (if any). Wittels fraudulently complains of two things: (i) Defendant "concealed" discovery regarding Old Bethpage; and (ii) Defendant prevented Wittels from providing notice of conditional collective certification to employees of Old Bethpage. See Pl. Br., generally. Were any remedy for this alleged harm warranted, such remedy is non-controversial – permit discovery regarding Old Bethpage. This "least severe sanction" has been endorsed by courts in this district. See Patino v. Brady Parking, Inc., No. LL-CV-03080, 2015 WL 513180, *7 (S.D.N.Y. Jan. 22, 2015), Rep. and Rec. Adopted, No. 11-CIV-3080, 2015 WL 509601 (S.D.N.Y. Feb. 6, 2015) (reviewing the efficacy of lesser sanctions in an FLSA action, and providing defendants yet another opportunity to produce the relevant documents that

30

remained outstanding on plaintiff's discovery demands, despite defendants' direct disobedience of several court orders concerning same otherwise). To the extent that discovery was ordered here, it would serve the function of any sanction, *i.e.* to "restore [Plaintiffs] to the same position [they] would have been in absent" Defendant's non-disclosure of information concerning only Old Bethpage. See John Wiley & Sons, Inc., 2015 WL 5769943, *6 (Gorenstein, J.).

The third *Shipstad* factor (duration of non-compliance) is also instructive in how inappropriate Plaintiffs' Motion and demands for relief are.  This is because the duration of non-compliance is measured from the date the non-compliant party was ordered to produce the information demanded. See Shipstad, 2017 WL 2462657 at *3. As noted above, there has never been an Order mandating Defendant produce or permit discovery regarding Old Bethpage. See SF, Section E, supra.  Thus, Defendant's duration of purported non-compliance is non-existent.

The final *Shipstad* factor (notice of potential sanctions) requires Defendant actually have received explicit notice from the Court that the sanction(s) being contemplated could be imposed absent compliance. See Shipstad, 2017 WL 2462657 at *4. Wittels made the deliberate choice to conceal this dispute from the Court for three years, and to never seek an order compelling discovery regarding Old Bethpage upon pain of sanctions. See SF, Section F, supra. As such, Defendant has never been on notice from this Court of the possibility of any of the sanctions sought. Therefore, the severe sanctions of dismissal, preclusion, and/or an adverse inference cannot be warranted.  Further, and as detailed throughout, imposition of even lesser sanctions such as discovery are also not warranted.

**B.**     **Further Discovery Is Not Warranted In Light of Wittels' Duplicitous Conduct**

Wittels failed to timely seek discovery regarding Old Bethpage, at any point in time.  As such, Wittels is now foreclosed from receiving such discovery as a matter of law. Fed. R. Civ. Pro. 26(b)(2)(C)(ii); see also Gucci Am., Inc., 790 F. Supp. 2d at 140-41. Further, Wittels waited

until this Court had granted their own request to foreclose discovery on Old Bethpage prior to seeking redress for Defendant's non-disclosure of it. See SF, Section F, supra. As such, this Court should find "no basis for concluding that [Wittels] have been diligent in pursuing the [Old Bethpage] discovery now at issue," and preclude Wittels from obtaining such discovery as well. See Hnot, 2006 WL 2381869 at *4.

This is not the first occasion in which Wittels concealed a discovery dispute from court in this Circuit in support of a baseless motion for sanctions. In Donin v. Just Energy Group Inc., No. 17-CV-5787 (WFK)(SJB), ECF No. 89 (E.D.N.Y. Dec. 18, 2019) Judge Bulsara denied Wittels' motion for sanctions finding Wittels, inter alia, engaged in "frivolous motion practice."[43] Judge Bulsara also denied Wittels' motion for sanctions and to compel discovery because Wittels "failed to take any meaningful steps or engage in motion practice before the" close of discovery. See Donin Order, ¶ 3. Similarly in this matter, Wittels was "on ample notice that [the] [d]efendants objected to [the] [p]laintiffs' assertion" as to the scope of discoverable information. See id. And yet, Wittels took no action for three years. Therefore, and similar to the Order in Donin, Defendant respectfully submits this Court should deny Wittels' motion in its entirety.

## POINT VII

### WITTELS HAS WAIVED ANY RIGHT FOR RECOVERY

This Court should not endorse Wittels' pattern and practice of substituting a baseless motion to compel with a manufactured motion for sanctions, in the hope that they get a sanction that awards them what they could never obtain in the context of a discovery dispute – certification of Old Bethpage. This calculated delay and gamesmanship should be seen for what

---

[43] Please see a copy of the Donin Order, annexed to the Hampton Dec. at Exhibit "P", ¶ 2.

it is: a waiver of any right for recovery. This Court has already made clear that all discovery disputes must be promptly brought to the Court's attention or be waived. See Case Management Plan (ECF No. 36), p. 6 ("All . . . applications to the Court with respect to the conduct of discovery[] must be initiated in time to be concluded by the deadline for all discovery. . . Any application not in compliance with this paragraph will be denied."). Many courts in this Circuit have adopted this sound proposition. See Tylena M. v. Heartshare Children's Servs., 220 F.R.D. 38 (S.D.N.Y. 2004) (affirming the Magistrate Judge's ruling "rejecting as untimely the plaintiffs' objections to the defendants' production of discovery. . ."); see also Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 426 (D.N.J. 2009) (finding defendant waited eight (8) months to object to plaintiff's production and an additional two (2) months to bring it to the court's attention and thereby waived any objection to plaintiff's production).

Wittels has been aware of the existence of Old Bethpage since April 2018. As such, any claim for relief regarding an issue that they waited three years to address must be deemed waived. Wittels has been admonished by other courts in the past for engaging in this kind of gamesmanship and Defendant respectfully requests this Court do the same here. Such tactical choice to fraudulently delay the revealing of a manufactured dispute from this Court in the hopes of procuring a windfall should not be countenanced, and Plaintiffs' Motion should be denied in its entirety.

## CONCLUSION

**WHEREFORE,** Defendant respectfully requests the Court deny Wittels' motion for sanctions, that the relief requested by Wittels be denied in all respects, and that Defendant be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:      Mineola, New York
            June 17, 2021

                                        **MELTZER, LIPPE, GOLDSTEIN &**
                                        **BREITSTONE, LLP**
                                        Attorney of for Defendant
                                        190 Willis Avenue
                                        Mineola, New York 11501
                                        (516)747-0700

                                        champton@meltzerlippe.com

                            By:    **ECF**              /s/
                                   _____
                                        Christopher P. Hampton

34