

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

*Nicholas P. Melito, Esq.*
*Writer's Direct Dial: (516) 470-0183*
*Writer's Facsimile: (516) 237-2893*
Email: nmelito@meltzerlippe.com

July 14, 2021

**Via ECF**
Honorable Andrew L. Carter, Jr.
Southern District of New York
40 Foley Square, Courtroom 1306
New York, NY 10007

      **Re:**    *Diaz v. New York Paving, Inc.*
             **Docket No. 18 Civ. 4910 (ALC)(GWG)**

Dear Judge Carter:

      This firm represents Defendant New York Paving, Inc. ("Defendant"). We write pursuant to Your Honor's Individual Rules of Practice, Rule 2(A) to: (i) respond to Plaintiffs' Pre-Motion Letter for Rule 23 Class Certification ("Plaintiff's Letter"); and (ii) request a pre-motion conference for Defendant's Motion to Decertify Plaintiff's Fair Labor Standards Act Collective. As detailed below, Plaintiff's Letter mischaracterizes the factual posture of this matter.[1]

**Summary of the Actual Facts Relevant to Plaintiffs' Anticipated Motion**

      Defendant provides asphalt and concrete paving services.[2] The employees who provide such services (collectively, "Pavers") from Defendant's Long Island City Yard generally are required to work at multiple locations throughout New York City in one single shift. As such, Pavers previously had to either drive their personal vehicles to each location during their shift (and find parking in New York City), or leave their personal vehicle at a location, only to return there from the last location. To avoid the issues which arose out of this daily procedure, Pavers began voluntarily meeting at Defendant's Long Island City yard (the "Yard") in order to carpool from location to location. This voluntarily carpooling began decades ago, and continues to this day.

---

[1] Relevantly, Plaintiffs' Counsel's entire Motion for Sanctions (ECF Nos. 210-212) perpetuates a fraud on this Court. See ECF Nos. 213-14. Plaintiffs' Counsel had correspondence drafted by Defendant's Counsel which explicitly identified Defendant's Old Bethpage location in its possession less than one week before they filed their Complaint. Further, Opt-in Plaintiffs directly observed Defendant testify about Old Bethpage's operations in September 2018. Despite the foregoing, Plaintiffs' Counsel claims they only "uncovered" the existence of Old Bethpage as of February 2021. Even if true, discovery did not close until June 30, 2021, and Plaintiffs never sought Discovery on Old Bethpage during those five months. Instead, Plaintiffs' Counsel concealed this matter from the Court solely in order to seek sanctions. Given this fraud upon the Court, Defendant intends to proceed with its own motion for sanctions following Judge Gorenstein's granting leave to pursue same. See ECF Nos. 215-216.

[2] This information, and other information relevant thereto, can be found in the Declarations of Peter Miceli dated September 17, 2018 (ECF No. 37-1), and Robert Zaremski dated September 14, 2018 (ECF No. 37-2).

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Andrew L. Carter, Jr.
July 14, 2021

Defendant has never codified this carpool to/from the Yard into any policy, and has never mandated any general Paver report to the Yard to participate in this carpooling service, or to perform work in the Yard in connection with same. Plaintiffs can point to no documents or written policies mandating Pavers report to/work at the Yard, because they do not exist. The only thing Defendant did was provide Pavers vehicles to use when carpooling/being chauffeured. Further, the only putative class members whom may have been required to perform any work outside of their paving shifts are Foremen (*i.e.* supervisors for each individual Paving crew). Foremen are compensated daily for this extra time. To the extent any non-Foremen believed they also were required to perform such work, such "requirement" likely was communicated to Pavers by their Foremen in *ultra vires* fashion. Thus this "requirement" cannot be imputed to Defendant. Additionally, any work performed at the Yard prior/subsequent to Paving shifts is limited to minimal loading of individualized tools, and takes no more than five to ten minutes of time. Further, any work done by Pavers in such "loading" is actually the responsibility of the Foremen.

All Pavers are members of two distinct unions. While the differing duties these unions perform make certification of both impossible as a matter of law, the applicable collective bargaining agreements (a "CBA") do share one critical condition. Unit-employees must be paid daily overtime pay for various reasons (including working more than 8 hours per day), regardless of whether they work more than 40 hours per week. Finally, in June 2018, Defendant enacted a policy that, to the extent non-Foremen drove the vehicles to/from the Yard (and/or performed the *de minimis* loading of same), Defendant began compensating such non-Foremen for that time.

## Individualized Inquiries Preclude Class and Collective Certification as a Matter of Law

Plaintiffs' class and collective is premised upon allegations that Defendant violated the Fair Labor Standards Act ("FLSA") and/or New York Labor Law ("NYLL") by requiring its Pavers to perform pre-/post-liminary work at the Yard without due compensation. *See* Plaintiffs' Letter.[3]

Pertinently, the FLSA and NYLL are limited to ensuring that an employer pays appropriate overtime for all hours worked over 40 per week. See Herrera Lopez v. Metrowireless 167 Inc., 2020 WL 289785, *2-3 (S.D.N.Y. Jan. 21, 2020). If an employer pays overtime for hours worked **below** 40 per week, such payment can be used to satisfy the overtime pay requirements applicable to any hours allowed to be worked **above** 40 per week. See 29 U.S.C. § 207(h); see also Conzo v. City of New York, 667 F. Supp. 2d 279, 290-91 (S.D.N.Y. 2009) (holding that offsetting premiums paid towards minimum wage and overtime compensation is calculated on a week-to-week basis). This means if a plaintiff worked 40 hours in one workweek and establishes they are entitled to an additional 5 hours of pay, they would not have an overtime claim for that week if they received

---

[3] Plaintiffs allege an "Agreed-upon Wages" claim under the NYLL. *See* ECF No. 1, ¶¶67-71. The NYLL does not recognize this claim. *See* Order dated June 4, 2018 in Contrera et al. v. Langer et al., No. 16-CV-3851 at p. 7-11, annexed at Exhibit "A". Even were such claim recognized, resolution of same would be preempted by the Labor Management Relations Act and/or the National Labor Relations Act. This is because determination of whether Defendant "agreed" to pay Pavers rates mandated by their respective CBAs for this pre-/post-liminary work requires an interpretation of applicable CBAs. See Hoops v. Keyspan Energy, 822 F. Supp. 2d 301, 306-07 (E.D.N.Y. 2011).

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Andrew L. Carter, Jr.
July 14, 2021

the equivalent of 5 hours of "premium" overtime pay (due to, *i.e.*, their employer's compliance with a CBA). See id. Further, pre-/post-liminary work is not compensable as a matter of law, unless it is an "integral and indispensable part of the [employee's] principal activities." Integrity Staffing Solutions, Inc. v. Busk, 135 S.Ct. 513, 517 (2014). Work which is *de minimis* in nature is also not compensable as a matter of law. See, e.g., 29 C.F.R. §785.47; Order dated December 5, 2013 in Colella v. City of New York, No. 07-CV-6312, p. 53, annexed at Exhibit "B". Finally, "[a]n employer's actual or imputed knowledge that an employee is working is a necessary condition to find the employer suffers or permits that work" for purposes of the FLSA/NYLL. Goodman v. Port Auth. of NY and NJ, 850 F.Supp.2d 363, 379 (S.D.N.Y. 2012).

Here, since Defendant never required Pavers to report to the Yard, it could not possibly know which of the approximately 400 Pavers did so, and which performed any "work" thereat. Thus, in order for any Paver to prove Defendant violated the FLSA/NYLL personally against them, such Paver must establish that: (i) Defendant (not the Paver's Foreman in *ultra vires* fashion) knew that individual Paver was being required to report to the Yard and perform work thereat, and allowed such work to proceed; (ii) the work that individual Paver performed while at the Yard on a daily basis was more than *de minimis*; and (iii) the work that individual Paver performed was sufficient such that the "premium" overtime payments they received pursuant to their CBA did not "cover" the overtime hours actually worked. Pavers would need to establish these items per daily shift, per week worked. Individualized inquiries such as these preclude class/collective certification as a matter of law. See, e.g., Enriquez v. Cherry Hill Market Corp., 993 F. Supp. 2d 229, 234-36 (E.D.N.Y. 2014) (denying certification because a determination as to how many hours class members worked, and thus whether they were underpaid, would amount to a mini-trial for each member); Scott v. Chipotle Mexican Grill, Inc., No. 12 Civ. 8333 (ALC)(SN), 2017 WL 1287512, at *8 (S.D.N.Y. Mar. 29, 2017) (Carter, J.) aff'd 954 F.3d 502 (2d Cir. 2020) (denying class certification where individualized inquiries were necessary to determine liability).

**Plaintiff's Claims Are Not Common/Typical of the Class Sought**

As a final matter, Plaintiff worked only for a few days in 2016 and a few months in 2017, and never worked as a Foreman. As such, he was not subject to Defendant's policy mandating Foreman perform **compensated** work outside their Paving shifts. Further, Plaintiff also was not subject to Defendant's policy of compensating the non-Foreman Pavers who drove the carpool/chauffeur vehicles, which arose in June 2018. To the extent Plaintiff is not subject to a policy common to all putative class/collective members, or is subject to different defenses uncommon/atypical to such members, certification must be denied. See, e.g., Shayler v. Midtown Investigations, Ltd., 2013 WL 772818, *4, 8 (S.D.N.Y. Feb. 27, 2013) (noting certification is only appropriate where "a class representative [possesses] the same interest and suffer[s] the same injury as the other members of the class"); Segal v. Bitar, 2015 WL 364449, *10 (S.D.N.Y. May 26, 2015) (denying certification because class plaintiffs would be entitled to different relief).

3

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**

Honorable Andrew L. Carter, Jr.
July 14, 2021

      Thus Defendant requests: (i) Plaintiffs' Letter seeking leave to pursue class certification be denied; and (ii) leave to proceed with Defendant's Motion to Decertify Plaintiff's FLSA Collective. We thank Your Honor for your time and consideration of the foregoing request.[4]

                                  Respectfully submitted,

                                  */s/ Nicholas P. Melito*
                                  Nicholas P. Melito, Esq.

cc:     All Counsel of Record (via ECF)

---

[4] Defendant has requested Plaintiffs consent to a briefing schedule for both Plaintiff's Motion for Certification and Defendant's Motion for Decertification. Plaintiff has yet to agree to any briefing schedule, other than noting it would consent to 60 days for Defendant to Oppose Plaintiffs' own Motion, and would request 30 days for Reply. Thus Defendant respectfully requests, that, to the extent leave to file either motion is granted, the briefing schedule be as follows: (i) Movant has 60 days to make their initial motion following the Court's approval to proceed with same; (ii) Opposition is due 60 days thereafter; and (iii) Reply is due 30 days after Opposition.

4849-9408-6385, v. 4