UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDGARDO DIAZ,                                              :
                                                           :    OPINION & ORDER
                        Plaintiff,                         :
                                                           :    18 Civ. 4910 (ALC) (GWG)
        -v.-                                               :
                                                           :
NEW YORK PAVING INC.,                                      :
                                                           :
                        Defendant.                         :
------------------------------------------------------------X
GABRIEL W. GORENSTEIN, United States Magistrate Judge

  Plaintiff Edgardo Diaz, who performed road and sidewalk repairs for his employer, New York Paving Inc. ("NY Paving"), filed this action alleging violations under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"), and the New York State Labor Law, § 190 et. seq., § 650 et. seq.  After the case was conditionally approved as a collective action under 29 U.S.C. § 216(b), with notice purportedly being sent to "all NY Paving pavers employed since June 3, 2015," more than 100 plaintiffs who worked at a worksite in Long Island City operated by NY Paving joined this suit as opt-in plaintiffs.  Plaintiffs have now filed a motion for discovery sanctions under Fed. R. Civ. P. 37, alleging that NY Paving failed to disclose that pavers worked for NY Paving at a second location, in Old Bethpage, New York, and failed to disclose to plaintiffs information relating to those pavers.[1]  For the following reasons, plaintiffs' motion for sanctions under Rule 37 is denied.

---

[1] See Notice of Motion, filed June 7, 2021 (Docket # 210); Memorandum of Law in Support, filed June 7, 2021 (Docket # 211) ("Pl. Mem."); Declaration of Steven Wittels in Support, filed June 7, 2021 (Docket # 212) ("Wittels Decl."); Declaration of Christopher Hampton in Opposition, filed June 17, 2021 (Docket # 213) ("Hampton Decl."); Memorandum of Law in Opposition, filed June 17, 2021 (Docket # 214) ("Def. Mem."); Plaintiffs' Reply in

I. BACKGROUND

The complaint in this case, filed on June 3, 2018 (Docket # 1), alleged that Diaz and the class he sought to represent worked "more than 40 hours per week to service NY Paving's clients," but NY Paving "failed to pay its pavers the proper wages and overtime they are legally and justly owed." Complaint ¶ 2. Diaz sought to bring "this action on behalf of himself and all similarly situated employees, both as a class action under Rule 23 . . . and as a collective action under the FLSA." Id. ¶ 5.

While the complaint contained broad allegations that referred to "pavers" without mentioning their location, the complaint specifically alleged that NY Paving had "locations at 37-18 and 37-28 Railroad Avenue, Long Island City, New York 11101," id. ¶ 10, and challenged defendant's pay practices — either explicitly or implicitly — with respect to pavers at the Long Island City locations, id. ¶¶ 20-36. For example, the Complaint alleged that NY Paving "requires its pavers, including Plaintiff, to arrive at Defendant's central yard in Long Island City early each morning" to do various uncompensated work. Id. ¶ 20. The Complaint alleged that after "completing the final paving assignment, pavers are required to reload the company truck, ride with or drive the tools and materials back to Defendant's yard in Long Island City, and then unload the truck and store the tools and materials at the yard," again without compensation. Id. ¶ 28. The Complaint made no mention of any other NY Paving location besides those in Long Island City.

The Complaint stated that Diaz was bringing a collective action "under the FLSA on behalf of himself and all other similarly situated current and former pavers . . . employed by

---

Support, filed June 24, 2021 (Docket # 217) ("Pl. Reply"); Reply Affidavit of Steven Wittels in Support, filed June 24, 2021 (Docket # 218) ("Wittels Aff.").

2

Defendant at any time within the three years prior to the date of the filing of this action and thereafter." Id. ¶ 40.  Diaz also made allegations on behalf of a putative Rule 23 class of pavers consisting of "[a]ll persons who were employed by NY Paving as pavers who, at any time within six years prior to the date of the filing of this action and thereafter, did not receive full compensation for all overtime and straight hours worked." Id. ¶ 46.

Three other pavers then joined the suit, and plaintiffs moved to have the case conditionally approved as a collective action under 29 U.S.C. § 216(b), asking for notice to be sent to "all New York Paving pavers employed since June 3, 2015," inviting them to join the action.  Notice of Motion for Conditional Certification, filed August 23, 2018 (Docket # 32), at 2.  The Court granted plaintiffs' motion on December 4, 2018.  See Opinion and Order (Docket # 45) ("FLSA Approval Decision").  While the decision made reference to affidavits of individuals who worked at the Long Island City yard, the opinion concluded broadly that "all NY Paving pavers employed since June 3, 2015, are similarly situated with respect to the claim made in this lawsuit," and thus ordered that notice be sent to those individuals.  Id. at 17.  Because defendant provided information only about Long Island City pavers, however, notice was sent only to those pavers, not to "all" pavers as stated in the Court's decision.

Discovery proceeded and the deadline for its conclusion was extended several times. See, e.g., Order, filed September 19, 2019 (Docket # 81); Order, filed January 22, 2020 (Docket # 84); Order, filed June 22, 2020 (Docket # 101); Order, filed October 15, 2020 (Docket # 137); Order, filed February 12, 2021 (Docket # 178).  Plaintiffs have not yet filed their motion for certification under Rule 23.

The current dispute was first mentioned to the Court on March 31, 2021, when plaintiffs asked for another extension of the discovery deadline "due to several as-yet unresolved

3

discovery issues, some of which have only arisen recently," and identified one of those disputes as "Defendant's Old Bethpage location." Letter from Steven Wittels, filed March 31, 2021 (Docket # 190), at 1. The Court granted the proposed extension. See Memorandum Endorsement, filed April 1, 2021 (Docket # 191). On June 1, 2021, plaintiffs filed a letter requesting a pre-motion conference on an anticipated motion for contempt and sanctions, alleging that NY Paving "willfully violated Your Honor's December 4, 2018 Opinion and Order . . . because Defendant hid from Plaintiffs and the Court the existence of its separate NY Paving Long Island facility in Old Bethpage where more than a hundred pavers have worked since 2015, and Notice was never sent to those pavers." Letter from Steven Wittels, filed June 1, 2021 (Docket # 207), at 1. The Court waived the pre-motion conference requirement and instructed plaintiffs to submit a motion containing "the requests for relief under Rule 37," with any "motion for contempt" to "await the disposition of the motion under Rule 37." Memorandum Endorsement, filed June 2, 2021 (Docket # 208), at 2. This motion followed.

## II. LEGAL STANDARD

Fed. R. Civ. P. 37(c) provides, in relevant part, that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) allows additional sanctions for this conduct, including sanctions such as directing that facts be taken as established, prohibiting particular evidence in support of claims, striking pleadings, or rendering a default judgment. See Fed. R. Civ. P. 37(c)(1)(C) (incorporating the sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi)).

"The district court has wide discretion in punishing failure to conform to the rules of discovery." Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988). In imposing sanctions, a court's "proper objective" is "to restore plaintiffs insofar as possible to the position they would have been in absent defendants' discovery defiance." Funk v. Belneftekhim, 861 F.3d 354, 372 (2d Cir. 2017) (punctuation omitted); accord In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 132 (S.D.N.Y. 2007) ("Rule 37 sanctions are intended to restore the parties to the position they would have occupied but for the breach of discovery obligations."). "[A] district court abuses its discretion in issuing harsh sanctions where lesser efficacious alternatives are available." Ayinola v. Lajaunie, --- Fed. App'x ----, 2021 WL 1920966, at *3 (2d Cir. May 13, 2021) (citing Funk, 861 F.3d at 372-73).

## III. DISCUSSION

Plaintiffs argue that NY Paving has "egregiously and systematically concealed its Old Bethpage facility from Plaintiffs and from the Court," Pl. Mem. at 2, and that this behavior violates Rule 37(c)(1) because NY Paving failed "to provide full and truthful information in response to Plaintiffs' discovery requests," id. at 3.[2] Plaintiffs argue that their discovery requests should have resulted in NY Paving producing documents related to the Old Bethpage facility, but that NY Paving never produced any such documents and represented that "it was not withholding any responsive documents," when, in fact, it was. Id. at 9. Plaintiffs argue that this behavior "constitutes bad faith and intentional concealment of members of the certified Collective and

---

[2] In their opening brief, plaintiffs alleged that NY Paving had violated Rule 37(b)(2)(A) because it failed to "comply fully" with the FLSA Approval Decision, which directed NY Paving to "disclose . . . the full names, last-known addresses, job titles, and dates of employment with respect to pavers who worked for NY Paving from June 3, 2015 to the present." Pl. Mem. at 3 (quoting FLSA Approval Decision at 20). Plaintiffs have evidently abandoned this argument, however, because in their reply they state they "did not move for sanctions under Rule 37(b)." Pl. Reply at 14.

5

proposed Class Members," id. at 13, and thus "necessitates severe sanctions," id. at 14. They ask this Court to enter judgment against NY Paving "as to all claims of the Collective and Class Members who worked at Old Bethpage," id. at 15, along with "deem[ing] all pavers employed at Old Bethpage since June 3, 2012 to be opt-in members of the already-certified Collective and also deem them similarly situated as Rule 23 class members," while sending notice "to all current and former pavers based in Old Bethpage during the three-year period prior to the filing of the Complaint . . . to present," id. at 15-16. In the alternative, "Plaintiffs ask for an adverse inference that all pavers employed at concealed facilities were required to do preliminary and postliminary work," as well as "bring the company's vehicles" to and from "the yard each day without pay." Id. at 16. Plaintiffs ask that NY Paving be required to disclose any other locations with pavers, and if any exist, those pavers be awarded the same relief. Id. at 16 n.6. They also seek to bar NY Paving from using any evidence from undisclosed facilities to support its case and seek costs and fees for the motion. Id. at 17-18.

In opposition, NY Paving does not deny that it did not identify the Old Bethpage location in its discovery responses. Instead, it argues that "[b]ased on Wittels' limitation on the scope of this matter, Defendant complied with the requirements of [Fed. R. Civ. P. 26] by providing all relevant information about Long Island City, subject to properly and timely raised objections." Def. Mem. at 7; accord id. at 23-27. It also argues that even if it did not comply, sanctions are not warranted. Id. at 27-33.

NY Paving's memorandum of law opposing plaintiffs' motion does not actually center on such arguments, however. Instead, its brief expounds at length on its contention that plaintiffs' counsel knew long before discovery concluded about the Old Bethpage facility, that plaintiffs' assertions otherwise are "patently false," Def. Mem. at 11, and that plaintiffs made a "tactical

6

decision" to keep silent about their knowledge of the facility so they would have a basis for claiming NY Paving acted improperly, id. at 1; accord id. at 2 (plaintiffs' motion "is nothing more than an attempt to present this Court with a contrived story to secure a windfall of certification of a class/collective for the Old Bethpage Location").

In response to this argument (which plaintiffs anticipated in their moving brief), plaintiffs' counsel, Steven Wittels, filed a declaration affirming the following: 1) Plaintiffs "were not made aware of the Old Bethpage facility . . . at any point during discovery in this matter by Defendant prior to Plaintiffs' counsel fortuitously independently learning of the Old Bethpage facility when reviewing transcripts of NY Paving-related actions before the [NLRB] when preparing for depositions in this action earlier this year," Wittels Decl. ¶ 4; 2) his firm "conducted numerous online searches related to NY Paving" during discovery and "did not uncover the existence of the NY Paving Old Bethpage facility in any of those online search results" prior to the review of the NLRB testimony, id. ¶ 5; 3) the "New York Corporation and Business Entity Database . . . makes no mention of NY Paving's Old Bethpage facility," id. ¶ 6; and 4) plaintiffs "still have incomplete information about the NY Paving Old Bethpage facility, including for example, how long it has been in operation and how many total pavers worked out of that location during the relevant periods," id. ¶ 9. Plaintiffs' counsel submitted a second sworn statement with their reply memorandum, in which Wittels affirmed that "[u]ntil earlier this year, our office was completely unaware of Defendant's operations in Old Bethpage," and that plaintiffs' counsel was "blindsided by the claims in Defendant's opposition that our office knew of Old Bethpage and chose to sit on that information for three years." Wittels Aff. ¶¶ 4, 8.

We begin by addressing the argument regarding plaintiffs' knowledge before addressing the substance of the Rule 37 motion.

A. <u>Whether Plaintiffs' Counsel Knew About the Old Bethpage Facility Before 2021</u>

To start, we reject NY Paving's contention that plaintiffs or their counsel acted improperly with respect to the Old Bethpage location. NY Paving provides only the wispiest of speculation and the weakest of inferences to support its assertion that plaintiffs' counsel realized before March or February of 2021 that pavers were employed at the Old Bethpage location. None of the material proffered by defendant allows a finding in NY Paving's favor on this question. Furthermore, the essentially non-existent evidence relied on by NY Paving is plainly outweighed by the sworn statement provided by plaintiffs' counsel to the contrary. <u>See</u> Wittels Aff. ¶¶ 4-8. NY Paving's theory of plaintiffs' conduct also flies in the face of common sense. If plaintiffs' counsel actually knew about the Old Bethpage facility before suit was filed or during discovery, it would have been foolish to hope that some future motion for sanctions based on a false premise would be more likely to result in the inclusion of the Old Bethpage pavers as plaintiffs than would efforts made directly through discovery or investigation. Nothing about the conduct of plaintiffs' counsel in this case has ever hinted at such a lack of judgment.

The keystone of NY Paving's presentation is a six-page letter dated April 24, 2018, sent by defense counsel to an attorney who does not represent plaintiffs, and which mentions the Old Bethpage facility in passing without any clear statement that pavers worked at that facility. <u>See</u> Letter from Jonathan Farrell, dated April 24, 2018, annexed as Exh. B to Hampton Decl., at 4. Defendants contend that plaintiffs must have been aware of Old Bethpage because plaintiffs' counsel referenced the April 24, 2018, letter in correspondence sent a month later to NY Paving in which plaintiffs sought to ward off potential retaliation by NY Paving for their planned lawsuit. <u>See</u> Def. Mem. at 3; Hampton Decl., Exh. C, at 3-6 (reproducing letter from plaintiffs' counsel). This provides virtually no basis for concluding that plaintiffs' counsel was aware that pavers worked at the facility.

NY Paving's other evidence is even weaker, if that is possible. It points out that "Wittels held investigatory meetings with Local 175 members, including some of the first Opt-in Plaintiffs in this matter," along with "officers of Local 175," and speculates that Wittels must have "learned more about the Old Bethpage facility during" those meetings. Def. Mem. at 3-4. But the mere fact that plaintiffs' counsel attended meetings with his own clients and the union representing those clients does not suggest that counsel would likely have learned about the Old Bethpage location at those meetings. If anything, it is far more likely that they discussed the location that plaintiffs worked at and that counsel knew existed at the time, the Long Island City location. Similarly, NY Paving contends that plaintiffs' counsel must have learned of the Old Bethpage location because seven plaintiffs testified at an NLRB hearing involving NY Paving, and one of them "directly observed the testimony of Peter Miceli relating to the Old Bethpage Location." Def. Mem. at 4 (referring to testimony by one of defendant's officers). But there is no indication from the cited transcripts that all seven plaintiffs who testified were present during Miceli's testimony on September 21, 2018. Thus, the mere fact that these plaintiffs testified almost a month later — on October 16-18, 2018 — does not suggest their awareness of Old Bethpage. See id. at 4 n.9. And while one plaintiff does appear to have been present during Miceli's testimony, see id. at 4 n.10, there is no reason to assume that this single plaintiff (or even others if they were there) would have thought to report the existence of Old Bethpage to plaintiffs' counsel.

In light of plaintiffs' uncontradicted, sworn assertion of a lack of knowledge concerning NY Paving's Old Bethpage location, combined with the lack of any reason why counsel would

9

fail to act on any such knowledge, the Court finds that plaintiffs were in fact unaware of the Old Bethpage location before February or March 2021.[3]

B. Whether Defendant Breached Its Discovery Obligations

We now consider whether NY Paving breached its discovery obligations by failing to disclose any information related to the Old Bethpage location to plaintiffs such that sanctions are warranted under Fed. R. Civ. P. 37(c). Rule 37(c) is breached when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). We discuss each subsection next.

1. Rule 26(a)

Rule 26(a) requires, among other things, disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). It also requires disclosure of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). It is undisputed that defendant did not list any witnesses or information relating to the Old Bethpage facility in its initial disclosures. But the defendant's disclosures did not violate Rule 26(a) inasmuch as there is no evidence that, at the time of its disclosures, NY Paving intended to use witnesses relating specifically to the Old Bethpage facility to support its defenses. As already noted, the complaint contains specific

---

[3] The precise date of discovery is unclear from plaintiffs' papers. Plaintiffs' counsel states only that they "confronted NY Paving with their discovery of the Old Bethpage facility in March 2021," Wittels Decl. ¶ 7, but does not give a date as to when that discovery occurred, other than that it happened "when preparing for depositions in this action earlier this year." Id. ¶ 4. NY Paving asserts that Wittels claims to have made the discovery in February 2021. Hampton Decl., Exh. A, at 4. For purposes of this decision, the exact date — whether in February or March — does not affect the Court's conclusions.

10

allegations exclusively regarding NY Paving's Long Island City facility. See, e.g., Complaint ¶¶ 20-25, 28-29, 31-32. Defendant could reasonably have assumed that the claims it had to defend against were limited to those involving Long Island City pavers and thus that it was not required to produce witnesses or documents relating to the allegations about pavers at Old Bethpage. Therefore, NY Paving did not violate Rule 26(a).

    2. Rule 26(e)

Rule 26(e), in relevant part, requires a party "who has responded to an interrogatory, request for production, or request for admission" to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)-(e)(1)(A). Here, of course, the claim is that NY Paving knew at the moment it made responses to certain interrogatories and requests for production that its responses were incomplete or incorrect by not providing information on the Old Bethpage facility. But notwithstanding this circumstance, we have no doubt that sanctions under Rule 37(c) are available if there is an intentional failure to disclose ab initio. See Fed. R. Civ. P. 26, Advisory Committee Notes to 2007 Amendment ("parties recognize the duty to supplement or correct by providing information that was not originally provided although it was available at the time of the initial disclosure or response").

Plaintiffs identify the following discovery requests as obliging defendant to produce Old Bethpage information: requests for production ("RFPs") 1, 3, 4, 13-14, 27-33, 36, 44, 49, 53, 55, 56, and 57, and interrogatories 2 and 26. See Pl. Mem. at 7, 9. Defendant contends that its objections "informed [plaintiffs] that it was limiting disclosure for all requests which sought data

11

for non-Opt-in putative class members to only providing disclosures for 'Named Plaintiff and Opt-In Plaintiffs as of the date of this response.'" Def. Mem. at 7 (quoting Defendant's Response and Objections, dated December 21, 2018, annexed as Exh. K to Hampton Decl.).

As to RFP 1, plaintiffs asked for production of all "paystubs, wage statements, wage notices, and/or related documents provided or made available to Plaintiff and each Class Member." Defendant's Responses and Objections to Plaintiff's First Request for the Production of Documents, annexed as Exh. F. to Wittels Decl. ("Def. Response"), at 4. The term "Class Member" was defined as "all individuals who are members of the proposed class(es) and/or collective(s) defined in the Complaint." Wittels Decl., Exh. C, at 2. The Complaint, in turn, defined the class as "[a]ll persons who were employed by NY Paving as pavers who, at any time within six years prior to the date of the filing of this action and thereafter, did not receive full compensation for all overtime and straight hours worked." Complaint ¶ 46. NY Paving objected to RFP 1 as "disproportionate to the needs of this case," as "overbroad as to scope and time as the Request is not limited to a specific time period and/or it seeks information outside the relevant statute of limitations period," as vague and ambiguous, as assuming facts not admitted, as "improper as this matter has not been certified as a class action," and as seeking "information not calculated to lead to the discovery of admissible evidence." Def. Response at 4. More to the point, NY Paving stated that it was "construing this Document Request as seeking information relating to the number of hours worked, and/or pay received for said hours worked, for Plaintiff and/or any individual who has 'opted-in' to this matter," and agreed to "provide documents and/or materials responsive to this request" as construed by defendant. Id. In other words, it construed the request to require information only concerning the Long Island City worksite.

The remaining requests follow a similar pattern. For instance, RFP 3 asked for production of all "documents providing, reflecting or setting forth payroll data for Plaintiff and each Class Member," id. at 6, and defendant raised nearly identical objections, while adding that the request was "unduly burdensome," and again construed the Request as seeking information only as to plaintiff and other opt-in plaintiffs, agreeing to provide documents limited to those individuals. Id. The defendant made a similar response to RFP 4 (id. at 7), 13 (see id. at 16), 27 (id. at 27-28), 28 (id. at 28-29), 29 (id. at 29-30), 30 (id. at 30-31), 31 (id. at 31), 32 (id. at 32), 33 (id. at 33), 44 (id. at 43-44), 53 (id. at 49), 55 (id. at 51), 56 (id. at 52), and 57 (id. at 53). For three of the RFPs — 14 (seeking "manuals, procedures, policies, texts, emails, memos, correspondence or other documents relating to pay for teamsters or other employees who drove trucks or other vehicles containing material used for paving work"), 36 (seeking "documents that constitute or reflect the management structure of NY Paving and any affiliate companies or entities"), and 49 (seeking "codes of business practices or corporate integrity statements") — NY Paving raised similar objections as to the other RFPs but did not agree to produce any documents. See id. at 17, 35, 46.

As for the two interrogatories identified, Interrogatory 2 sought various contact information and other information about "each individual who worked at NY Paving on an hourly basis at any time from January 1, 2012 to the present." Defendant's Response and Objections to Plaintiff's First Set of Interrogatories to Defendant, annexed as Exh. F to Wittels Decl., at 6. Defendant raised similar objections to this interrogatory as those raised in the document requests responses, and additionally objected to providing this information because it was not directed by the FLSA Approval Decision and because it allegedly sought "information outside the scope of Local Rule of the United States District Court for the Southern District of

New York 33.3." Id. Importantly, defendant construed "this Request as seeking the names of witnesses who may [sic] information relevant to Plaintiff's claims and/or to Defendant's defenses," and referred back to its response to Interrogatory No. 1. Id. at 7. Defendant similarly objected to Interrogatory 26 (which asked Defendant to "describe any system used to track data about" various categories of information, including "payroll" and "human resources") as outside the scope of Local Rule 33.3, while raising similar objections to those previously made in response to the requests discussed above, as well as objecting that this interrogatory was beyond the presumptive limit of 25 interrogatories. Id. at 25-26.

In its supplemental responses, see Defendant's Fourth Supplemental Responses and Objections to Plaintiff's First Request for the Production of Documents, annexed as Exh. G to Wittels Decl., defendant reiterated its prior objections and stance of "construing" various document requests as seeking only information about the named plaintiff and the opt-ins, id. at 5 (in response to RFP 1), 7 (RFP 3), 8 (RFP 4), 15-16 (RFP 13), 26-32 (RFPs 27-33), 46-47 (RFP 53), 48-51 (RFPs 55-57). Defendant also stated whether or not it was withholding any documents on the basis of these objections and indicated that it was withholding documents as to RFP 1, see id. at 6, RFP 3, id. at 8, RFP 4, id. at 9, and RFP 36, id. at 34. For some of the other requests that encompassed Old Bethpage documents, however, NY Paving affirmatively stated that it was not withholding any documents at this point. See, e.g., id. at 16 (RFP 13: "Defendant affirmatively avers it is currently not withholding any materials responsive to this request on the basis of any objection noted above."). It did so, however, immediately after reiterating that it had "constru[ed]" the Request as seeking only information related to the named plaintiff and opt-ins. Id. We thus view its response — that Defendant is "not in possession of documents responsive to this request" and "currently not withholding any materials responsive" — as

14

modified by the provision in the previous line that identified its "construction" of the RFP as limited to the plaintiffs.  Id.  Defendant repeated the same pattern in its responses to RFPs 27-33, 53, and 55-57.  See id. at 27-32, 46-47, 48-51.  For RFPs 14 (seeking all "manuals, procedures, policies, texts, emails, memos, correspondence or other documents relating to pay for teamsters or other employees who drove trucks or other vehicles containing material used for paving work"), 44 (all "documents concerning Defendant's human resource and payroll systems"), and 49 (all "codes of business practices or corporate integrity statements"), defendant stated it was "currently not withholding any materials responsive to this request on the basis of any objection noted above."  Id. at 17, 40, 44.

While the Court finds defendant's responses to some of these requests to be awkwardly written, the responses reflect a passable effort to indicate that whatever documents were being provided were limited to the claims of the plaintiffs and the opt-in plaintiffs — all of whom worked at the Long Island City facility.  Whether or not defendant should have made this limitation, it at least did so explicitly.  Thus, plaintiffs could have challenged the defendant's "construction" of their RFP.  On the other hand, we understand why plaintiffs did not do so as it undoubtedly did not occur to them that there were pavers who worked anywhere other than the location where the plaintiffs and opt-ins worked.

As just noted, the placement in the responses to the RFPs of its statement that defendant was "not withholding" documents understandably might have generated confusion on plaintiffs' part.  In the end, however, a sanction for this conduct would not be appropriate because defendant was "substantially justified" in taking the position that the limiting language it placed in its responses relieved it of any obligation to provide Old Bethpage documents.  See Fed. R. Civ P. 37(c)(1).  "Substantial justification may be demonstrated where there is justification to a

15

degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (punctuation omitted). It was arguably proper for defendant to have understood its obligations under Rule 26 as extending only to production of information relating to the allegations about pavers at the Long Island City facility (as long as it made clear that it was placing that limitation) and defendant adequately conveyed that it was producing only that information.

The defendant's actions were also "harmless." Fed. R. Civ. P. 37(c)(1). The duty to respond to discovery requests, as well as the duty to supplement under Rule 26(e), is defined by the scope of discovery set forth in Rule 26(b). Thus, a party may "serve on any other party a request within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). Similarly, interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). And Rule 26(b) limits discovery to matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, the entirety of plaintiffs' specific factual allegations in the Complaint related to the Long Island City location. Plaintiffs worked only at that facility, and the allegations of the complaint, notwithstanding many generic allegations of claims by "pavers," addressed violations of law only at that specific facility. See generally Complaint ¶¶ 20 ("Defendant requires its pavers . . . to arrive at Defendant's central yard in Long Island City"), 21 (referencing Diaz's arrival "at the yard"), 22-25 (describing work done at the Long Island City yard and travel from it), 28 ("After completing the final paving assignment, pavers are required to reload the company truck, ride with or drive the tools and materials back to

Defendant's yard in Long Island City"), 32 (describing Diaz's driving from paving sites and "back to the yard from the last paving site").

Plaintiffs protest that the fact that their complaint only addresses the Long Island City location was "due to Defendant's misconduct at issue in this motion." Pl. Reply at 17. But it is hardly clear that this is so. Having made specific claims regarding the Long Island City location that satisfied the requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009), it is not clear that plaintiffs would have been entitled to discovery as to any other worksites. This is because "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." Jones v. Capital Cities/ABC Inc., 168 F.R.D. 477, 480 (S.D.N.Y. 1996) (punctuation omitted); accord Am. Comm. v. Ret. Plan, 488 F. Supp. 479, 484 (S.D.N.Y. 1980) ("The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made not to discover whether a claim exists.").

Our conclusion that a sanction is not appropriate under Rule 37 is strengthened by considering what would be required to place the plaintiffs in "the position [plaintiffs'] would have occupied but for the breach of discovery obligations," In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 132 (S.D.N.Y. 2007), which is one of the primary purposes of a Rule 37 sanction, id. Had NY Paving disclosed the existence of the Old Bethpage location at the beginning of the case, plaintiffs would not necessarily have obtained any discovery about activities in that location, for the reasons just described.[4]

---

[4] The same chain of events would have likely ensued had defendant's attorneys sought to circumscribe the Court's ruling requiring that a notice should be sent to "all NY Paving pavers" by explicitly arguing that the notice would improperly sweep in the Old Bethpage pavers. FLSA Approval Decision at 17. This is because the plaintiffs would not have been entitled to send notice to the Old Bethpage pavers based on the record they presented to the Court inasmuch as they presented no evidence that pavers other than those who worked at Long Island City were "similarly situated" to the pavers who did work at Long Island City. See 29 U.S.C. § 216(b). In

17

Notwithstanding these circumstances, plaintiffs essentially ask this Court to presume that, had defendant disclosed the Old Bethpage location initially, plaintiffs would have investigated that location and would have found conditions of employment similar to those alleged at the Long Island City location. See Pl. Reply at 13 ("If Plaintiffs had known of NY Paving's Old Bethpage operations, and if further discovery was necessary before moving for conditional certification as to all pavers, Plaintiffs would have conducted litigation accordingly."). But it is simply speculative to believe that this would have been the outcome. Thus, this case differs from those cited by plaintiffs in support of their motion because in those cases the relevance of the withheld information was clear. See Burrell v. AT&T Corp., 2006 WL 3802224, at *1 (S.D.N.Y. Dec. 21, 2006) (finding that "plaintiff has repeatedly and intentionally concealed relevant and discoverable information to defendants' prejudice") (cited by Pl. Mem. at 15), aff'd, 282 F. App'x 66 (2d Cir. 2008); Nittolo v. Brand, 96 F.R.D. 672, 676 (S.D.N.Y. 1983) (finding that plaintiff "deliberately engaged in a pattern of conduct designed to conceal facts and to prevent defendants from discovering and obtaining relevant evidence") (cited by Pl. Mem. at 15); McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 453 (S.D.N.Y. 2002) (finding that evidence concealed by plaintiff was "highly relevant to her potential damages in this suit") (cited by Pl. Mem. at 15). Here, by contrast, the relevance of information or documents as to Old Bethpage is unknown.

---

order to send notice to Old Bethpage pavers, plaintiffs would have had to include affidavits offering specific facts about the pavers at that location. See, e.g., Contrera v. Langer, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (authorizing notice for workers who were supervised from one location but not workers supervised from other locations operated by defendants). At most, a disclosure by defendant at that time would have put plaintiffs on notice as to the Old Bethpage location, and allowed them to investigate conditions at that facility on their own — a situation that has now prevailed for at least four months and that has not resulted in plaintiffs seeking to move to amend the complaint.

The Court's conclusion that a sanction under Rule 37 should not issue is unfortunately the best of a number of not fully satisfactory responses to defendant's conduct. The Court remains troubled that NY Paving carefully crafted its discovery responses to avoid having plaintiffs learn about the Old Bethpage worksite. That there was a deliberate effort to keep plaintiffs in the dark about Old Bethpage is evidenced by the defendant's response to plaintiffs' request under 29 U.S.C. § 216(b) for an order notifying "all pavers" employed by defendant of the collective action. See Notice of Motion for Conditional Certification, filed August 23, 2018 (Docket # 32), at 2. The normal response by a defendant to a request by an FLSA plaintiff for an overbroad order is to argue during the course of briefing that the definition of the proposed collective must be narrowed — and to give reasons why the proposed wording improperly sweeps in worksites where the plaintiffs did not work. Indeed, such arguments are routine in collective action motions under the FLSA — and would likely have been successful in this case. Instead, defendant was silent about the scope of the proposed collective and, once the requested language was adopted by the Court, chose to continue its silence and "interpret" that language in a manner contrary to its plain terms. Defendant never explains why it failed to oppose plaintiffs' request that "all pavers" be included in the collective action as opposed to just pavers at Long Island City. It also fails to explain why it could properly take it upon itself to not follow a court order that required that notice be sent to and information provided as to "all pavers." FLSA Approval Decision at 17.

That being said, we do not believe a discovery sanction is warranted for the reasons already stated — and most obviously because we cannot find that the course of this lawsuit would have altered had defendant forthrightly disclosed the fact that other pavers existed.[5]

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for sanctions under Fed. R. Civ. P. 37 (Docket # 210) is denied.

SO ORDERED.

Dated: August 11, 2021
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[5] This may not be the end of the effort to include Old Bethpage pavers in the lawsuit as plaintiffs are free to make a motion to amend to include them if they have a basis for doing so and if they can satisfy the prerequisites of a motion to amend. And in the event there were a motion to include the Old Bethpage pavers in the collective action, the defendant's conduct in failing to seek modification of the Court's section 216(b) order might also justify equitable tolling. The Court makes no rulings on these matters at this time, however.