18-CV-04910 (ALC)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDGARDO DIAZ, Individually and on Behalf of
All Others Similarly Situated,

Plaintiff,

-against-

NEW YORK PAVING INC.

Defendant.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**MELTZER, LIPPE, GOLDSTEIN**

**& BREITSTONE, LLP**

Attorneys for the Defendants
190 Willis Avenue
Mineola, N.Y.  11501

(516) 747-0300

Ana Getiashvili, Esq.

Christopher P. Hampton, Esq.

Larry R. Martinez, Esq.

Asish A. Nelluvely, Esq.

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ iii, iv

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ................................................................................ 3

      A.    NY Paving Never Enacted Any Policy Mandating Laborers to Report to the Yard ………................................................................ 4

      B.    Defendant's Knowledge is Limited to the Carpooling Service ............................. 6

      C.    Documentary Evidence Does Not Support the Existence of Such a Broad Policy ………................................................................ 7

ARGUMENT ................................................................................ 9

      POINT I    PLAINTIFFS CANNOT CERTIFY ANY CLASS HEREIN……………9

            A.    Legal Standard ................................................................ 9

            B.    Plaintiffs Cannot Establish the Elements of FRCP 23(a) ............ 10

                1.    *NY Paving Did Not Have a Common Policy that Required Laboreres to Report to and/or Work in the Yard* ................................................................ 12

                2.    *The Individualized Maerial Facts Applicable to Putative Class Members Prevent Resolution of Their Claims on a Class-Wide Basis* ................................ 13

            C.    Plaintiffs Cannot Meet the Requirements of FRCP 23(b) ............ 17

                1.    *Plaintiffs Cannot Establish the Requirements of FRCP 23(b)(2) Because the Named Plaintiff's Alledged Past Harm Cannot be Redressed under FRCP 23(b)(2)* ................................................ 17

                2.    *Plaintiffs Cannot Establish the Requirements of FRCP 23(b)(3) Because Individualized Evidentary Issues Predominate* ................................................ 18

      POINT II    CLASS CERTIFICATION, IF ANY, SHOULD BE EXTREMELEY LIMITED ................................................................ 22

i

A.   Any Class Certified Herein Must Exclude Locoal 1010 Unit Members .............................................................. 22

B.   Any Class Certified Herein Must Exclude Foremen ................... 23

C.   Any Class Certified Herein Must Exclude Individuals/Claims Beyond June 2018 ......................................... 24

D.   Any Class Certified Herein be Limited to Laborers Working Out of the Long Island City Yard ................................ 25

CONCLUSION .................................................................................................... 25

4871-2966-3747, v. 6

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 19

*Berni v. Barilla S.P.A.*,
    964 F.3d 141 (2d Cir. 2020) .................................................................................... 18

*Callari v. Blackman Plumbing Supply, Inc.*,
    307 F.R.D. 67 (E.D.N.Y. 2015) ......................................................................... 10, 20

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
    No. CIV.A. 09-85J, 2011 WL 6372873 (W.D. Pa. Dec. 20, 2011) ......................... 15

*Caridad v. Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999) .................................................................................... 10

*Castillo v. Bank of Am., NA*,
    F.3d 723 (9th Cir. 2020) .......................................................................................... 21

*Conzo v. City of New York*,
    667 F. Supp. 2d 279 (S.D.N.Y. 2009) ..................................................................... 16

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
    27 F. Supp. 3d 313 (E.D.N.Y. 2014) ....................................................................... 23

*Diaz v. Electronics Boutique of Am., Inc.*,
    No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ........... 11, 13

*Eduoard v. Nikodemo Operating Corp.*,
    No. 18-CV-5554 (BMC), 2019 WL 3557687 (E.D.N.Y. Aug. 5, 2019) .................. 11

*Eng–Hatcher v. Sprint Nextel Corp.*,
    2009 WL 7311383 (S.D.N.Y. Nov.13, 2009) .......................................................... 12

*Fernandez v. Wells Fargo Bank, N.A.*,
    No. 12-CV-7193, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) ....................... 12, 13

*Gen. Tel. Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................ 10

*Hinterberger v. Cath. Health Sys.*,
    299 F.R.D. 22 (W.D.N.Y. 2014) .............................................................................. 12

*In re American Intern. Group, Inc. Securities Litig.*,
    689 F.3d 229 (2d Cir. 2012) .................................................................................... 17

*In re Sinus Buster Products Consumer Litig.*,
    No. 12–CV–2429 (ADS), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............... 11

*Integrity Staffing Solutions, Inc. v. Busk*,
    135 S.Ct. 513 (2014) ............................................................................................... 14

*Jackson v. Bloomberg*,
    298 F.R.D. 152 (S.D.N.Y. 2014) ....................................................................... 10, 25

*Keller v. AXA Equitable Life Ins. Co.*,
    No. 12-CIV-4565 (LTS)(RLE), 2013 WL 6506259 (S.D.N.Y. Dec. 2, 2013) ......... 13

iii

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)................................................................................ 10, 19

*Pecere v. Empire Blue Cross & Blue Shield*,
   194 F.R.D. 66 (E.D.N.Y. 2000) ........................................................................ 10, 25

*Perez v. Allstate Ins. Co.*,
   No. 11–CV–1812 (JFB), 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ................................ 11

*Sampson v. MediSys Health Network, Inc.*,
   2012 WL 3027850 (E.D.N.Y. Feb. 9, 2012)................................................................... 10

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020).......................................................................... passim

*Scott v. Chipotle Mexican Grill, Inc.*,
   No. 12-CV-8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ................................ 15, 19, 20

*Spagnola v. The Chubb Corp.*,
   264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................................ 10, 25

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ............................................................................... 21

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 ....................................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   565 U.S. 338 (2011)........................................................................................ 2, 10, 11

*Warman v. Amer. Nat'l Standards Inst.*,
   193 F.Supp.3d 318 (S.D.N.Y. 2016)........................................................................... 14

*Watson v. Richmond Univ. Med. Ctr.*,
   408 F.Supp.3d 249 (E.D.N.Y. 2019) .......................................................................... 13

*Xuedan Wang v. Hearst Corp.*,
   617 F. App'x 35 (2d Cir. 2015) ................................................................................ 14

*Zivali v. AT&T Mobility, LLC*,
   784 F.Supp.2d 456 (S.D.N.Y. 2011)........................................................................... 15

Rules

Fed. R. Civ. P.23 ................................................................................................ passim

4871-2966-3747, v. 6

## PRELIMINARY STATEMENT

Defendant New York Paving, Inc. ("NY Paving" or "Defendant") submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification of New York Labor Law ("NYLL") claims under Fed. R. Civ. P. Rule ("FRCP") 23. Plaintiffs mischaracterize and misrepresent the record to concoct a false narrative whereby Defendant purportedly required individuals performing concrete/asphalt paving services (a "Paver") to report to Defendant's centralized yard in Long Island City (the "Yard") before/after each Paver's paving shifts to perform uncompensated work. Plaintiffs then "piggyback" upon this false narrative, seeking certification of a class consisting of "all persons who were employed by [Defendant] as [Pavers] at any time from June 3, 2012 through the date of Judgment". Plaintiffs' Memorandum of Law in Support of Motion Certifying Class ("Pl. Memo."), p. 4.

The actual record simply does not support Plaintiffs' false narrative. In this regard and first, **NY Paving never enacted or enforced a policy requiring any non-Foreman-Paver (a "Laborer") to report to the Yard at any point in time**. Instead, if any Laborer reported to the Yard, they did so only to participate in a voluntary carpooling service that has been in place for decades and was created and facilitated solely by unionized employees of NY Paving. Second, Laborers generally perform no work while waiting to participate in this service, and if any "work" was performed, it was *de minimus* un/loading of minor tools, which is non-compensable as a matter of law. Third, if Laborers performed any un/loading, the type of materials un/loaded (and thus the time taken to un/load) substantively varied by the type of work each Laborer was performing. Fourth, the only individuals who actually were required to report to the Yard "outside" their shifts are Foremen (not Laborers), and Foremen receive(d) extra compensation precisely for same. Fifth, beginning in June 2018, Defendant began compensating certain

Laborers for driving the carpool vehicle, despite the fact participation in same was voluntary and never required by Defendant. Finally, Defendant has a secondary yard located in Old Bethpage, and Plaintiffs have actively admitted they have **zero evidence**, and **zero allegations**, supporting any claim that **any single Paver** (much less all Pavers) working out of Defendant's Old Bethpage location ever suffered this same "harm."

As the Supreme Court enunciated in *Wal-Mart Stores, Inc. v. Dukes*, "[w]hat matters to class certification is not the raising of common 'questions' … but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class … impede the generation of common answers." 564 U.S. 338, 350 (2011). FRCP "23 does not set forth a mere pleading standard [and thus] certification is proper only if the trial court is satisfied, **after a rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied." *Id.* 131 S. Ct. 2541, 2551 (emphasis added). The stringent need for common **answers** is further supported by the seminal case *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020), wherein the Second Circuit emphasized the high burden necessary to certify an FRCP 23 class under the NYLL. This stringent standard, coupled with the actual evidence, reveals that the instant matter is the antithesis of a class action. That is because all relevant evidence indicates that there are vast factual disparities between putative class members, and resolution of these issues requires highly individualized, fact-intensive, employee-by-employee, shift-by-shift, week-by-week inquiries.

Stated differently, Plaintiffs cannot satisfy their heightened burden for class certification because Defendant enacted no policy requiring any Laborer report to the Yard or perform work threat. Further, even assuming *arguendo* Plaintiff could show Defendant violated the NYLL by making him personally report to the Yard, his personal experiences differed materially from

4871-2966-3747, v. 6

other putative class members, rendering his claims fundamentally uncommon and/or atypical of other Laborers. Thus there is no common proof Plaintiff could use to establish **liability** for any non-compensated work allegedly performed "off-the-clock" in any event, in that it is impossible for Plaintiffs to establish the following elements of their claims on a class-basis: (i) whether/how Defendant had knowledge of time allegedly worked by each putative class member, and whether each individual reported to the Yard for the benefit of Defendant; (ii) whether the work allegedly performed by each individual Laborer was "necessary and integral" to their duties; and (iii) whether any such "work" performed was more than *de minimus*. Since Plaintiffs cannot use "common" proof for these elements, they cannot proceed on a class basis.

Moreover, Foremen, members of Local 1010, Highway, Road Street Construction, Pavers & Road Builders District Council ("Local 1010")[1], and Laborers who worked after June 2018 were subject to materially-different policies than Plaintiff, as Plaintiff never performed work as a Foreman, was never a member of Local 1010, and stopped working in 2017. Finally, Plaintiffs explicitly allege that the policy of requiring any Paver to perform compensable work at NY Paving's Yard is limited to the Yard in Long Island City, and explicitly admit they have zero evidence supporting any inference that such policy also applied to Pavers who worked out of Defendant's Old Bethpage yard. *See, e.g.*, ECF 1, at ¶¶ 20, 28; Declaration of Steven Wittels, Esq. dated June 24, 21 (ECF 218), ¶ 4. As such, even if Plaintiffs could certify any class, it would need to be limited to exclude: (i) Foremen; (ii) members of Local 1010; (iii) work performed after June 2018; and/or (iv) Laborers outside Long Island City (*i.e.* at Old Bethpage).

## STATEMENT OF FACTS

Defendant incorporates by reference the Statement of Facts within Defendant's

---

[1] As opposed to members of Construction Council Local 175, Utility Workers of America, AFL-CIO ("Local 175"), of which Plaintiff was a member.

Memorandum of Law in Support of their Motion for Decertification ("Def. Memo."), and all exhibits used in support of same. *See* ECF 236-238. Defendant further corrects Plaintiffs' material mischaracterizations of the record.

## A. NY Paving Never Enacted Any Policy Mandating Laborers to Report to the Yard

Plaintiffs allege that "consistent testimony from Pavers demonstrates the existence of the Policy [requiring attendance and work at the Yard.]" This is patently untrue, as **Defendant never enacted any policy requiring any (non-Foreman) Laborer to report to the Yard**.[2] The only "consistent testimony" Plaintiffs adduce "refuting" this indisputable fact is: (i) self-serving, vague, and conclusory interrogatory responses from Plaintiffs to the effect that "everyone" at NY Paving knew Laborers were reporting to the Yard out of "requirement;" and (ii) self-serving and uncorroborated testimony to the effect that a Laborer would be disciplined for failing to report to the Yard. *See* ECF 246-2, 246-4, 246-5, 246-6. That said, Plaintiffs cannot point to a single instance wherein any supervisor or manager of NY Paving specifically directed any Laborer to report to the Yard, or where any Laborer was ever disciplined, in any fashion, for failing to report to the Yard. *See id.* That is because Defendant never enacted any policy requiring Laborers to report to the Yard, and thus instances of Defendant "enforcing" such non-existent policy obviously cannot exist. Indeed, Plaintiffs admit sometimes reporting to the first jobsite, not the Yard, without consequence. Wolfe Dep. (ECF 237-7) 145:14-24 (discussing Plaintiff Terry Holder's text message that he would be going straight to the jobsite).

Plaintiffs also admit that this "policy" was relayed to them **only** by non-supervisors of Defendant, in that the only individuals who relayed same to them were union business agents,

---

[2] While Defendants cannot dispute that (only) Foremen were required to report to the Yard to receive their daily assignments, Plaintiffs also cannot dispute that Foremen received extra compensation precisely for such required reporting. *See, e.g.*, Def. Memo (ECF 238), p. 7-8, 21-22; Pl. Memo., p. 5.

Shop Stewards, and/or Foremen. Diaz Dep. (ECF 237-5), 71:22-72:07[3]; Alvarez Dep. (ECF 237-8), 52:04-06; Wolfe Dep. (ECF 237-7), 49:20-50:20; 68:16-18; Pl. Memo. p. 5. Plaintiffs go so far as to acknowledge these individuals were not serving as company "representatives" or "supervisors," instead limiting same to being merely liaisons between the **union** (not the Laborers) and Defendant. *See* Pl. Memo p. 5 (limiting the shop steward to "the point-of-contact between [the] union and the company"). Plaintiffs make such limitation because it is the truth: business agents and shop stewards are representatives of the union, not Defendant.

Next, Plaintiffs allege they were "required to undertake [30-45 minutes of] extensive preparatory work" at the Yard daily. Pl. Memo. p. 5. This allegation is flatly contradicted by Plaintiffs' own testimony that reveals **no Laborer or Foreman ever performed any "preparatory" duties for 30 (much less 45) minutes per day**; instead, Plaintiffs would simply "scan the truck" to see if any tool was missing from the previous shift or if they needed any additional materials. Wolfe Dep. (ECF 237-7) at 84:14-85:02.[4] Once it was determined that the truck needed extra equipment or materials, each individual would get **one and only one** respective item. Wolfe Dep. (ECF 237-7) at 85:03-12. Some Laborers even would arrive to the Yard prior to the rest of their crew and finish all loading, meaning no other crew member performed any "work" whatsoever. Alvarez Dep. (ECF 237-8) at 57:12-59:02. Plaintiff even conceded the "pre-paving" tasks he purportedly performed every day (*see* Compl. ¶¶ 20-22, 23)

---

[3] ("Q: Would it be the shop steward or the foreman that would originally tell you what is your schedule? A: Well, when the business agent tells you - - you know, Roland called me and told me, go to show up at 5:30 in the yard and ask for Patty Labate. I showed up around 5:15. I asked for Patty Labate and he would assign me whatever crew I would have to go to."), and at 130:19-25 ("Q: Just to clarify, there wasn't any written company policy [requiring you to report to the yard] correct? A: Not that I saw. I didn't see any."); Wolfe Dep. (ECF 237-7) at 49:23-50:05("Q: Did anyone ever tell you to [report to the yard 1.5 hours early]? A: Yes. Q: Who? A: Back in 2015 my business manager, Roland Bedwell and then again in 2017, my shop steward at the time, Patty Labate."); Alvarez Dep. (ECF 237-8) at 52:04-06 ("Q: And who told you to got to the yard at 5:00 or 5:30 in the morning? A: The foreman.").

[4] Some Laborers/Foremen actually locked their work trucks to prevent any other employee from taking tools off of it in order to eliminate the time spent "scanning" the truck for missing tools. Alvarez Dep. at 56:15-57:08.

he actually performed **only once** during his employment. Diaz Dep. (ECF 237-5) at 154:02-17.

Additionally, when Laborers actually "reported" to the Yard, they spent the majority of their time resting in the truck waiting for the appropriate time to leave to be at the first location on time. Wolfe Dep. (ECF 237-7) at 85:03-12.[5] As shown in this video footage, Laborers arrive at the Yard and remain inside their personal vehicle until their respective truck is ready to leave for the jobsite, thus corroborating that (non-Foremen) Laborers generally performed zero work while at the Yard. *Id.* The indisputable fact that Plaintiffs did not all report to the Yard, and did not all perform 30-45 minutes of work while there, is further reflected in the Chart summarizing the discrepancies in Plaintiffs' purported time worked "off-the-clock." *See* ECF 237-9. As such, Plaintiffs' claims do not share common or typical material issues of fact. Finally, deposition testimony reveals the allegation that all Pavers also were required to report back to the Yard after their shifts to be false. *See* Pl. Memo p. 7. Local 1010 Laborers did not return to the Yard and instead went home. Gonzalez Dep. (ECF 237-12) 70:16-71:02. As such, Plaintiff is not subject to the same policy as Local 1010 concerning post-shift Yard "work."

## B.  <u>Defendant's Knowledge is Limited to the Carpooling Service</u>

Next, Plaintiffs attempt to equate Defendant's knowledge of Laborers being in the Yard to participate in the carpooling service with knowledge that Laborers are required to report to and perform compensable work in the Yard. *See* Pl. Memo p. 8-9. The only evidence Plaintiffs adduce is limited acknowledgment from Defendant's supervisors that Laborers come to the Yard before their shifts in the morning, and that they sometimes performed approximately five

---

[5] *See also* Video Surveillance Footage and Chart summarizing same, annexed to the Declaration of Christopher P. Hampton, Esq. dated December 17, 2021 ("Hampton Dec.") at <u>Exhibits A</u>, <u>B</u>. (corroborating that Laborers spent the majority of their time at the Yard waiting and not working). Plaintiffs' anticipated motion for sanctions for video surveillance materials is ludicrous. *See* Pl. Memo, p. 12, fn, 48. Defendant made substantial efforts to preserve all footage, spent thousands of dollars producing it, and provided declarations concerning the efforts taken to preserve/produce it. *See* ECF 79. If Plaintiffs proceed with such motion, Defendant welcomes the opportunity to present a full record to the Court.

minutes of loading while there. *See id.* Notably absent from same is any evidence that Defendant knew of any "Policy" requiring Laborers report. *See id.* There is no such evidence because there is no such policy. Instead, only Foremen were required to arrive at the Yard, and only Foremen had to ensure their crew had all necessary tools and materials. *See, e.g.* Gonzalez Dep. (ECF 237-12), 58:22-59:06; 59:20-60:06 Wolfe Dep. (ECF 237-7) 67:11-19. Importantly, Foremen received additional pay for these responsibilities. Wolfe Dep. (ECF 237-7) at 67:11-68:04; Alvarez Dep. (ECF 237-8) at 40:19-25. Thus, the only "knowledge" Defendant has concerning any "Policy" is the one for Foremen. Conversely, the only knowledge that Defendant has concerning Laborers is that while some do arrive at the Yard, they do so only to take advantage of NY Paving's non-obligatory carpooling service, that is for their sole benefit.

## C.  <u>Documentary Evidence Does Not Support the Existence of Such a Broad Policy</u>

Finally, Plaintiffs contend that certain GPS records; "Tool Logs"[6]; text messages as between putative class members only (and never directed to NY Paving or its supervisors); and "video surveillance" all support not only the existence of a Policy applicable to both Laborers and Foremen, but also NY Paving's knowledge of it. *See* Pl. Memo. p. 9-11. When reviewed critically, however, Plaintiffs' contentions fail. First, GPS records only show motions of trucks, not the actual duties or actions of any Pavers. Any "movement" of trucks in the Yard pre/post-Shift is likely occasioned by Foremen only, during the performance of their compensated pre/post-shift duties. Indeed, the only allegations which GPS records corroborate is that **someone** at NY Paving may be performing pre/post-Shift duties, and may be moving the vehicle in connection therewith. NY Paving respectfully contends that such **someone** is limited to Foremen – the Pavers who are required to perform such duties, and who receive compensation for

---

[6] Plaintiffs misrepresent this document as a "tool log". It is actually titled "Asphalt Worker Gloves" Log, Plaintiffs' mischaracterization of the "Glove Log" notwithstanding. *See* ECF 246-20.

performing them[7].

Next, Plaintiffs conveniently omit two critical facts concerning the Glove Log: (1) it was created **solely** to prevent loss and/or theft of personal protective equipment ("PPE") by Laborers; and (2) at no point in time has NY Paving ever reviewed or evaluated the Logs for any purpose whatsoever. *See* ECF 126 (*citing* the September 23, 2020 Miceli Tr. 124:11-125:10). Thus the validity of all non-PPE entries therein is placed into serious question, as those entries cannot be verified by NY Paving.[8] Even were the entries true, they show the exact type of *de minimus* loading that may sporadically occur in any event. The Glove Log is limited to PPE (gloves, hats, vests, flags, glasses, cones); hand-tools (brushes, rakes, shovels, brooms, trowels, levels, chisels); and other light materials (buckets, staples, oil, paint, nails). Pl. Memo. p. 11. As such, it supports Defendant's contention: to the extent Laborers un/load any vehicles, such loading is limited to "single-serve" items which take less than five minutes to procure and load. *See id*.

Third, the text messages Plaintiffs claim impute knowledge of a "Policy" on NY Paving simply cannot. These messages only speak to a Laborer's arriving to the Yard. *See* ECF 246-18, 246-19. They do not mention that NY Paving requires any Laborer report to the Yard, or that NY Paving requires any (non-Foreman) Laborer perform work while there. *See id.* That is because NY Paving does not. Even if they did contain such language, these messages are between Laborers and Foremen only, and prior to the instant litigation, were actively kept from NY Paving. *See* ECF 74.[9] Thus, if any requirement for a Laborer to report to the Yard can be inferred, it stems from a Foreman only, and is a communication not authorized by NY Paving.

---

[7] As noted in Argument Section II(C), *infra*, beginning in June 2018, NY Paving also began compensating Laborers for their "driving," and/or "setup" time as well.

[8] Indeed, this is another instance where the Foreman, business agents, and/or Shop Stewards have created additional requirements in *ultra vires* fashion without approval, acknowledgment and/or authority from Defendant.

[9] The knowledge from these text messages cannot be imputed to NY Paving, since NY Paving never sent them, received them, reviewed them, or otherwise directed they be sent.

Further, the "surveillance" video Plaintiffs produced consists of two videos taken by a private investigator hired by Plaintiffs, and of a video taken by a Plaintiff-Foreman without NY Paving's knowledge or consent. As such, and much like the aforementioned text messages, any "knowledge" from same cannot be imputed to NY Paving since it did not authorize, make, or initially receive such videos. Even if the knowledge could be imputed, these videos do not rebut the fact that NY Paving never required Laborers report to the Yard. The two "surveillance videos" were taken at the behest and instruction of Plaintiffs, and thus it is quite likely they were either "staged" or scheduled to be taken during unusually "busy" periods to inflate Plaintiffs' claims. This is particularly so where the **actual daily video surveillance produced by Defendant** shows very little "work" by Laborers in the Yard. *See* Video Surveillance Footage and Chart, Hampton Dec. Exs. A, B (showing Laborers arriving at the Yard and remaining inside their personal vehicle until their respective truck is ready to leave for the jobsite). Additionally, the video produced by Frank Wolfe is limited to Foremen: "[f]inally, a video taken by … Wolfe … shows NY Paving telling **Foremen** that the company expects them to show up early" to the Yard. Pl. Memo. p. 9. Foremen do come early to the Yard, may perform work thereat, and are actually compensated for same. *See* Def. Memo (ECF 238), p. 7-8, 21-22

Thus, when the evidence is viewed as it actually occurred, this Court should conclude no class can be certified herein, or to the extent one can, it must be significantly limited.

## ARGUMENT

## POINT I – PLAINTIFFS CANNOT CERTIFY ANY CLASS HEREIN

**A.     Legal Standard**

Parties seeking class certification must establish, *inter alia*, four factors: (1) the class is too numerous for joinder of all members ("Numerosity"); (2) issues of law or fact are common to the class ("Commonality"); (3) Plaintiff's claims are typical of the class ("Typicality"); and (4)

Plaintiff will adequately protect the interests of the class ("Adequacy"). Fed. R. Civ. P. 23(a); *accord Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, *1 (E.D.N.Y. Feb. 9, 2012); *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 74 (E.D.N.Y. 2015). In addition, a plaintiff also must satisfy the prerequisites of FRCP 23(b) by proving that questions of law/fact common to class members predominate over individualized inquiries, and/or that final injunctive or declaratory relief is appropriate for **all** class-members as a whole. Fed. R. Civ. P. 23(b)(2), (3); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999).

Plaintiff must satisfy all prerequisites of FRCP 23 by a preponderance of the evidence. *Jackson v. Bloomberg*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014). "[A] failure to meet any one of [FRCP] 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000); *see also Spagnola v. The Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010). Class Certification is "an exception to the usual rule" and must be adjudicated stringently. *Dukes*, 131 S. Ct. at 2550; *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) ("The class-action device was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."). Further, "the requirements for certifying a class under [FRCP] 23 are … more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)." *Scott*, 954 F.3d at 512. Since Plaintiffs cannot demonstrate compliance with FRCP 23 (both sections (a) and (b)), Plaintiffs' Motion for class certification should be denied.

**B.**     **Plaintiffs Cannot Establish the Elements of FRCP 23(a).**

Even if Plaintiffs were able to establish Numerosity under FRCP 23(a) (a contention Defendant does not concede), all record evidence reveals they have not and cannot establish Adequacy, Commonality and Typicality. In this regard, the Supreme Court holds:

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); s*ee also Eduoard v. Nikodemo Operating Corp.*, No. 18-CV-5554 (BMC), 2019 WL 3557687 (E.D.N.Y. Aug. 5, 2019) (denying class certification for lack of Commonality and Typicality).

The Supreme Court also warns FRCP 23(a)'s Commonality "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349. But that is not enough. Instead,

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law…Their claims must depend upon a common contention…That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* In order to satisfy Typicality, plaintiffs must show that the "claims of the class representatives … arise from the same course of events, and [that] each class member makes similar legal arguments to prove the defendant's liability." *Diaz v. Electronics Boutique of Am., Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270, *7 (W.D.N.Y. Oct. 17, 2005); *Perez v. Allstate Ins. Co.*, No. 11–CV–1812 (JFB), 2014 WL 4635745, at *24 (E.D.N.Y. Sept. 16, 2014) (same); *In re Sinus Buster Products Consumer Litig.*, No. 12–CV–2429 (ADS), 2014 WL 5819921, *4 (E.D.N.Y. Nov. 10, 2014).

Here, plaintiffs cannot establish Commonality, Typicality or Adequacy with respect to their proposed class because: (1) NY Paving never had a common, "class-wide" policy requiring

Laborers to report to the Yard; and (2) material factual disparities abound across the proposed class, including varying job duties, alleged overtime worked, and schedules.

      *1.   NY Paving Did Not Have a Common Policy that Required Laborers to Report to and/or Work in the Yard.*

Notwithstanding Plaintiffs' false narrative,[10] **there was no policy, procedure or plan enacted by NY Paving requiring Laborers report to the Yard or perform compensable work thereat**. Indeed, Plaintiffs uniformly testified NY Paving **never** told them to report to the Yard prior to the first jobsite or after the last jobsite. *See* <u>Statement of Facts</u> ("<u>SOF</u>"), Section (A), *supra*. Instead, such "directives" were provided by representative of Plaintiff's **union only**, never representatives of Defendant. *See id.* Thus, Plaintiffs and putative class members could never be subject to any common policy by Defendant requiring them to work "off-the-clock" at the Yard prior to the first jobsite or after the last jobsite, as all Plaintiffs admit **Defendant never enacted any such policy**. *Id.*  Given there is no "common policy" violative of the law applicable to all class members, Plaintiffs have failed to establish Commonality under FRCP 23(a). *See, e.g.*, *Fernandez v. Wells Fargo Bank, N.A.*, No. 12-CV-7193, 2013 WL 4540521, *5 (S.D.N.Y. Aug. 28, 2013) (denying certification for pre/post shift and meal break ("off the clock") hours, as Wells Fargo had no actual policy violative of the law, and establishment of a *de facto* policy commonly applicable to all employees could not be established on a class-wide basis); *Eng–Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *3 (S.D.N.Y. Nov.13, 2009) (denying FLSA and Rule 23 certification); *Hinterberger v. Cath. Health Sys.*, 299 F.R.D. 22, 55 (W.D.N.Y. 2014) (denying class certification because plaintiffs failed to adduce evidence of a "system-wide" policy that resulted in employees working through meal breaks). Thus class certification should be denied.

---

[10] Pl. Memo., pp. 17-18.

2.  *The Individualized Material Facts Applicable to Putative Class Members Prevent Resolution of Their Claims on a Class-Wide Basis.*

As Plaintiffs could not be subject to a non-existent policy, Plaintiffs must instead demonstrate that the material facts and circumstances of their individual claims are so Common and Typical of all members as to be capable of class-wide resolution. *See Diaz*, 2005 WL 2654270. This is impossible, because determination of whether any NYLL violation occurred for these allegations requires individualized inquiries into the facts that necessarily apply to putative class members individually, meaning such inquiries cannot be answered in a common way. *See e.g.*, *Keller v. AXA Equitable Life Ins. Co.*, No. 12-CIV-4565 (LTS)(RLE), 2013 WL 6506259, at *6-7 (S.D.N.Y. Dec. 2, 2013) (denying Rule 23 certification where there was no common way to answer whether Customer Service Representatives stayed beyond their shift).

First, there was no common policy requiring Laborers report to the Yard. Thus each Laborer must prove that NY Paving had actual or constructive knowledge that they **individually** were reporting to the Yard out of obligation and not simply to take advantage of the non-obligatory carpooling service. *See Watson v. Richmond Univ. Med. Ctr.*, 408 F.Supp.3d 249, 270 (E.D.N.Y. 2019) ("To establish liability … a plaintiff must prove that she performed work for which she was not properly compensated, and that the employer had actual or constructive knowledge of that work."). This requires an individualized review of who relayed the "requirement" to the report to the Yard to each putative class member, which managers/supervisors at NY Paving witnessed each member report to the Yard, and how such managers/supervisors could know each member was reporting because they believed they must do so. *See e.g.*, *Fernandez*, 2013 WL 4540521, at *14 (S.D.N.Y. Aug. 28, 2013).[11] Such

---

[11] ("Without meaningful evidence of a New York-wide policy at Wachovia or Wells Fargo, a determination of liability turns on highly individualized, employee-by-employee analysis of what they were told by management and how any time-recording practices were applied.").

individualized inquiries defeat Commonality and Typicality as a matter of law. *See Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37–38 (2d Cir. 2015) (affirming denial of class-certification as the question of a proposed class member's employment status was a "highly individualized inquiry.").

Second, since NY Paving had no policy requiring Laborers report to/perform work at the Yard, every Laborer must show that all un/loading they individually purportedly did was "essential and integral" to their jobs, and not *de minimus* in nature – that is because only non-*de-minimus* activities "which are an integral and indispensable part of the principal activities" are compensable as a matter of law. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513, 517 (2014). If such duties were not essential/integral, or otherwise *de minimus*, then NY Paving could not be held liable under the NYLL for failing to pay for same. *See id.* Determining whether/to what extent Plaintiffs' purported off-the-clock work was "essential and integral" is impossible to do on a class-wide basis, as the work each Laborer performed hinged upon the type of paving crew to which each Laborer was assigned. Since crew assignments differed between each individual Laborer, and since the work performed by each crew materially differed, it is impossible to make a determination on a class-wide basis as to whether the un/loading purportedly performed by Laborers (on differing crews and doing different work daily) was "integral and indispensable." *See Warman v. Amer. Nat'l Standards Inst.*, 193 F.Supp.3d 318, 323 (S.D.N.Y. 2016) (finding that issues in connection with, *inter alia*, individualized inquiries prevented even conditional certification).[12]

For example, Top crews need more tools than Binder crews since Binder crews perform

---

[12] A fulsome discussion of these material factual variations can be found in Def. Memo, p. 4, 8-10, 18-20, and ECF 237-9 (Chart of Factual Differences) and are fully incorporated by reference herein. Nonetheless, Defendant provides a few examples of these material distinctions below.

14

temporary "patch" work in addition to permanent work. Wolfe Dep. (ECF 237-7) 98:21-25. Additionally, Milling crews use completely different tools than Top and Binder crews since Milling crews do demolition. Wolfe Dep. (ECF 237-7) at 99:11-25. Thus, Milling crews need demolition tools like jackhammers, hoses, bits, tape and spray paint, whereas other crews do not, and instead only need tools to pour/finish asphalt. Wolfe Dep. (ECF 237-7) at 99:11-25; Diaz Dep. (ECF 237-5) at 123:04-09. Paving crews need different tools than Top crews and Binder crews since they are responsible for large volume work, not smaller jobs which only require hand tools like Top and Binder crews. Miceli Decl. (ECF No. 237-1) ¶ 15.

A contention similar to Plaintiffs that such differences should be dismissed as "minor variations" (*see* Pl. Memo, p. 18) was already rejected by this Court. Indeed, this Court has found that variations in duties that "[ring] dissonantly from the record," and that would require the Court to "conduct a series of mini-trials in order to determine, for each participant, whether [they have a claim]" defeats class-certification as a matter of law. *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333, 2017 WL 1287512, *6, 8 (S.D.N.Y. Mar. 29, 2017), *aff'd and vac'd in part, remanded*, 954 F.3d 502 (2d Cir. 2020). Such mini-trials are exactly the type of review which would be required herein, and this individualized assessment of this "non-essential and integral" defense will necessarily require consideration of each "sliver of a slice" of time allegedly worked by each putative class member. Consideration of such "slivers of slices" of time per individual plaintiff precludes class certification as a matter of law. *See, e.g.*, *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A. 09-85J, 2011 WL 6372873, at *10 (W.D. Pa. Dec. 20, 2011)[13]; *Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456, 468 (S.D.N.Y. 2011) (an employer

---

[13] Noting that, as a practical matter, Plaintiffs' theory of time worked during meal period "would essentially reduce Plaintiffs and their counsel to seeking 'slivers of slices' of FLSA recovery. Given the needles that would need to be thread, and the limited nature of recovery, it would seem that retaining class treatment for these claims would be an

"can defend against some of plaintiffs' claims by demonstrating that certain off-duty work was *de minimis*. The extent to which work was *de minimis*, however, will necessarily vary widely according to the particular situation of each individual plaintiff").

Finally, and after establishing that the "off-the-clock" work purportedly performed was more than *de minimus* and otherwise integral, putative class members also would need to show this work resulted in their working more than 40 hours per week and not receiving sufficient overtime pay to "cover" the additional overtime hours per week.[14] That is because Plaintiffs can only show a violation of the NYLL to the extent they did not receive sufficient Overtime pay to cover hours actually worked beyond 40 in one week. Laborers received Premium Overtime pay due to obligations found within Collective Bargaining Agreements applicable to them. *See, e.g.*, ECF 237-3, Article VII, Section 6, p. 18; ECF 237-2, Article IX, Section 4, p. 11 (providing for payment of at least time-and-one-half on Weekends, Holidays, and days where Laborers worked more than 8 hours); *see also* ECF 237-11, NYP000064, NYP000081, NYP000118, NYP000170, NYP000293, NYP000403, and NYP000426 (showing payment of Premium Overtime). Given this payment of Premium Overtime, the Court could still find no overtime claim even where the purported "off-the-clock" work actually resulted in a member working more than 40 hours per week. *See Conzo v. City of New York*, 667 F. Supp. 2d 279, 290-91 (S.D.N.Y. 2009) (holding that offsetting premiums paid towards minimum wage and overtime compensation is calculated on a week-to-week basis). Thus each putative class member would need to go day-by-day and establish both that they worked more than 40 hours per week, and that the Premium Overtime

---

end for the sake of itself … the individualized nature of Plaintiffs' claims, and the attendant problems with manageability, would increase exponentially under this theory."

[14] There were weeks when Plaintiffs only worked 1 to 3 days. Thus, even crediting Plaintiffs the full amount of hours alleged to have worked "off-the-clock," it would not result in them working over 40 hours for the workweek. *See* ECF 237-11, NYP007705, NYP008188, NYP008734, and NYP009509 (showing work of 3 days or less).

paid in such week did not offset any alleged additional Overtime owed, in order to establish any liability for any one week, and thereby resolve his claims.

In sum, there are several material individualized inquiries necessary to determine whether any putative class member is owed compensation: who (if anyone) from NY Paving management knew or should have known they were "working"; what/how many days of week each Plaintiff worked; what start time(s) they had on such days; what type of crew were they on; what type of tools/materials were needed for that crew; what work they performed when at the Yard; how much work they performed when at the Yard; whether/to what extent the work they performed at the Yard was "essential and integral" to the type of work they were performing that day (Milling Crew vs. Paving Crew vs. Top Crew vs. Binder Crew, etc.); how much Premium Overtime they were paid; and whether and to what extent payment of Premium Overtime offset the additional Overtime "off-the-clock" hours worked. All of these individualized inquiries defeat Commonality, Typicality and Adequacy under FRCP 23(a). *See supra*.

## C.    Plaintiffs Cannot Meet the Requirements of FRCP 23(b).

Even if the Plaintiffs could satisfy FRCP 23(a), they cannot satisfy the "far more demanding" burden under Rule 23(b), as they cannot show that "questions of law or fact common to the members of the class predominate over individualized inquires," or that class litigation is superior to other available methods for efficiently adjudicating the controversy.

### 1.    *Plaintiffs Cannot Establish the Requirements of FRCP 23(b)(2) Because the Named Plaintiff's Alleged Past Harm Cannot be Redressed under FRCP 23(b)(2).*

Under Rule 23(b)(2), a class may only be certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2). "Before approving [such] class … a district court must first determine whether the

17

requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re American Intern. Group, Inc. Securities Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). Plaintiffs cannot establish Commonality, Typicality and/or Adequacy under FRCP 23(a) for the reasons set forth in the preceding section. Nevertheless, even if Plaintiffs were able to establish all requirements under Rule 23(a), class certification under Rule 23(b)(2) is improper.

That is because "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 146 (2d Cir. 2020). In *Berni*, the Second Circuit concluded that "at least some, and maybe all, members of the class would receive no benefit from the relief provided, since the prospective injunctive relief would not redress their past harms." *Id.* Here, Plaintiffs seek injunctive relief to prevent future imminent harm to **current** employees of NY Paving by requiring it to "compensate Pavers for work performed in the Yard [and] compensate Pavers for time spent driving from the Yard … and … back to the Yard; [and to] revise its payroll procedures to ensure that Pavers are compensated for actual hours worked…"[15] However, Plaintiff and dozens (if not hundreds) of putative class members are **former** employees of NY Paving. Therefore, class certification under Rule 23(b)(2) should be denied because all these dozens/hundreds of individuals "would receive no benefit from the relief provided, since the prospective injunctive relief would not redress their past harms." *Berni*, 964 F.3d at 147.

### 2. *Plaintiffs Cannot Establish the Requirements of FRCP 23(b)(3) Because Individualized Evidentiary Issues Predominate.*

The predominance requirement under FRCP 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Scott*, 954 at 512 (2d Cir. 2020). It requires a movant for class certification establish that a "class action would achieve economies

---

[15] Pl. Memo, p. 20-21.

of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated..." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 623 (1997); *see also Myers*, 624 F.3d at 547. General questions can predominate only where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Scott*, 954 F.3d at 512 (2d Cir. 2020). A court examining predominance must assess the following: "(1) 'the elements of the claims and defenses to be litigated,' (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief,' and (3) 'whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues.'" *Id.*

In the seminal case *Scott v. Chipotle Mexican Grill, Inc*., decided by this Court, restaurant employees brought a putative class and collective action against Chipotle restaurant, alleging the misclassification of apprentices as exempt employees and denial of overtime pay violated applicable wage-and-hour laws. 2017 WL 1287512. This Court began its analysis of the predominance issue by acknowledging that while the "range of managerial tasks" and "range of manual labor tasks" performed by members of the putative class were "similar," the primary duty performed by class plaintiffs – the dispositive question of the exemption inquiry – was not adequately similar. *Id.* at *4. In the predominance analysis, this Court found the testimony of the named plaintiffs regarding their primary duty was "internally inconsistent and distinguishable from one another." *Id.* at *4. This Court also concluded that the testimony of putative class members regarding four key categories of the "primary duty" inquiry, "rang dissonantly from the record." *Id.* This Court further found similar inconsistencies across the testimony of the putative

19

class members with respect to two other important considerations under the guidelines: employee supervision and training, and the amount of time spent on managerial tasks. *See id.* at *7-8. Based on these factual determinations, this Court concluded that despite the common questions of fact, "[t]he disparate accounts from Apprentices prove[d] fatal to the predominance inquiry," meaning plaintiffs failed to meet their burden of proving predominance. *Id.* at *8. The Second Circuit affirmed this Court's denial of class certification. *Scott*, 954 F.3d at 513–14.

As delineated in *Scott*, the superiority requirement under FRCP 23(b) cannot be established when the less stringent requirements of Rule 23(a) (such as Commonality) are not met. *Id.; see also Callari*, 307 F.R.D. at 82.[16] Here, as in *Scott*, Plaintiffs' conflicting testimony regarding the implementation of a "policy" is inherently fatal to the superiority/predominance inquiry in this matter. While Plaintiffs uniformly testified that NY Paving never implemented any such "policy" directly, Plaintiffs routinely contradicted themselves as to how such policy impacted them otherwise. *See, e.g.*, <u>SOF</u>, Section (A), *supra*; Def. Memo p. 7-11, 14-21. Indeed, some Plaintiffs were "required" to report two hours early, others only one hour early, and others not at all. *See id.* Additionally, some Laborers were "required" to return to the Yard after their shift, while others were not. *See id.* Finally, some Plaintiffs allege performing 30-45 minutes of work in the Yard, while others admit not performing any at all. *See id.* Given the myriad of ways in which any "policy" materially differed, Plaintiffs cannot demonstrate that their claims are Common and Typical of each other, much less establish the higher burden that a class action is a "superior" method of resolution. Accordingly, the Court should not certify the class.

Further, Plaintiffs cannot escape individualized inquiries under the predominance

---

[16] Superiority/predominance under FRCP 23(b) requires a court to consider: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." *See id.*

analysis by proffering Plaintiffs' Statistics Expert Dr. Vekker's Class Damages Report and relying on a representative sample to establish classwide liability. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455.[17] As the Ninth Circuit noted in *Castillo v. Bank of Am., NA*, where members of a putative class were never exposed to the challenged formulas, the putative class fails the predominance requirement. F.3d 723, 732–33 (9th Cir. 2020) (finding that Plaintiff failed to filter the putative class to exclude those who were never exposed to the policy). The Circuit Court likened the case to "cases involving non-payment of minimum wages, for instance, where by not being paid minimum wages, all putative class members who were not paid minimum wages suffered an injury." *Id; see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016) ("In sum, pursuant to Rule 23, the court's task at certification is to ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct.").

This matter is distinguishable from *Tyson*, because here, like *Castillo*, Plaintiffs cannot show that **all** Laborers came to the yard between 5:00 a.m. and 5:30 a.m., cannot determine when they actually did come to the Yard or who turned on the vehicles, and cannot determine which Laborer rode in which vehicle.[18] Dr. Vekker's analysis thus would inevitably lead to windfalls for employees that arrive later than 5:30 a.m., or those who perform *de minimus* work, whereas, those employees that arrive earlier than 5:00 a.m. and perform the alleged 30-45 minutes of work threat would be denied their equitable share of the damages. Given the factual disparities set forth above and in Def. Memo. p. 7-11, 14-21, Plaintiffs cannot establish predominance under

---

[17] ("One way for respondents to show, then, that the sample relied upon here is a permissible method of proving classwide liability is by showing that each class member could have relied on that sample to establish liability if he or she had brought an individual action. If the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employees' hours worked in a class action.")

[18] *See* Def. Memo, p. 7-8, ECF 237-9; *see also* <u>SOF</u>, *supra.*

Rule 23(b)(3). Thus, Plaintiffs cannot certify any class herein whatsoever.

## POINT II – CLASS CERTIFICATION, IF ANY, SHOULD BE EXTREMELY LIMITED

To the extent Plaintiffs can overcome the aforementioned issues and certify any class, it must be significantly more limited than the one currently sought. Given the material factual disparities as between Named Plaintiff, and Foreman, Members of Local 1010, Laborers working in or after June 2018, and Laborers working in locations other than the Long Island City Yard, and Plaintiffs' failure to prove by a preponderance of the evidence otherwise, Plaintiffs cannot meet the requirements of FRCP 23 sufficient to certify a class encompassing these individuals. Instead, any class must be limited so as to include only individual who were: (i) unit-members of Local 175; (ii) working as non-Foreman Laborers; (iii) working prior to June 2018; and (iv) purportedly reporting/working out of the Long Island City Yard only.

### A. Any Class Certified Herein Must Exclude Local 1010 Unit Members.

As noted in Def. Memo. p. 3-6, members of Local 1010 have significantly disparate duties and distinct employer policies then members of Local 175, arising from the differing CBAs which apply to Local 1010 as opposed to Local 175, respectively. Since Plaintiff (exclusively a member of Local 175) was subject to such duties/employer that materially differed from putative class members who were exclusively members of Local 1010, the facts and law necessary for Plaintiff to prove his claims are not commonly applicable to Local 1010.[19]

In this regard, Local 175's CBA is limited to provision of asphalt paving, whereas the Local 1010 CBA covers concrete paving and "demolition". *See* Def. Memo., p. 3-6. Thus, Defendant has significantly more factual and legal defenses to argue that any alleged pre-/post-

---

[19] Additionally, to the extent Plaintiffs seek to have pre-/post-liminary work compensated at wage-rates found in their CBA's (as opposed to the minimum wage rate otherwise only required by the Fair Labor Standards Act or NYLL), such claims are preempted by the Labor Management Relations Act and/or National Labor Relations Act. *See* Def. Memo. p. 24-25.

liminary work performed by Local 175 Plaintiffs was not integral and indispensable to their work, then they do as against Local 1010 Opt-Ins. In just one instance, Local 1010 employees must perform tasks such as sawcutting and paving excavation, whereas Local 175 unit-members cannot. *See id.* Thus, it is much less likely that a Local 175's alleged loading and/or fueling of machines necessary for sawcutting and excavation (such as power saws and grinders) could be considered integral to the duties performed by Local 175 members, when compared to the duties of Local 1010 members. Given the time and tools needed to perform concrete work as opposed to asphalt, Local 1010 class members cannot be alike with respect to the material facts necessary to adjudicate their claims as Local 175 members.

Courts routinely find that the existence of such materially disparate duties and policies, and the individualized defenses in connection with same, eviscerate the right to proceed as a class action. *See Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 329 (E.D.N.Y. 2014) (denying certification where "Plaintiffs have not demonstrated that the questions they raise . . . will generate common class-wide answers, let alone that these questions predominate over the myriad individualized inquiries presented by the facts of this case"). Thus, and given the materially distinct facts and defenses which are applicable to Local 1010 and Local 175, any class herein must be limited to members of Local 175, as those are the only individuals who could even remotely satisfy Commonality and Typicality with Named Plaintiff. *See id.*

**B. Any Class Certified Herein Must Exclude Foremen.**

Plaintiff never worked as a Foreman, and like all other Laborers was not subject to the materially different policies applicable to Foremen. Diaz Dep. (ECF 237-5) at 50:02-05. Indeed, certain Foremen were assigned their own personal trucks that they drove to and from their home. Miceli Dec. (ECF No. 237-1) ¶ 31. Thus, after the last jobsite, some Foremen simply went home.

*Id.*, Labate Dep. (ECF 237-4) 189:13-21. Second, regardless if they were assigned a company vehicle to take to and from home, **Foremen were required to report to the Yard either pre/post-Shift, and were compensated an extra hour's pay each day – oftentimes at the applicable overtime rate – for such required administrative/Yard duties** (*i.e.*, creating crews, loading tools, and obtaining paperwork for the daily jobsites). Gonzalez Dep. (ECF 237-12) at 58:22-59:06, 59:20-60:06, 73:15-22; Wolfe Dep. (ECF 237-7) at 67:11-19. Thus, Plaintiff cannot establish that the claims of (non-Foremen) Laborers, which he was exclusively, are Common or Typical to those of Foremen sufficient to encapsulate same in any putative class. Thus Plaintiff – whom NY Paving never required report to the Yard, and whom NY Paving never compensated for such "reporting" time in any event – cannot establish that his and other Laborers' claims are Common and/or Typical of Foremen.

**C. Any Class Certified Herein Must Exclude Individuals/Claims Beyond June 2018.**

Plaintiff Diaz only worked selected dates in 2016 and 2017. Diaz Dep. (ECF 237-5) at 49:11-25. In or around June 2018, NY Paving instituted a policy to compensate non-Foremen Laborers who drove the carpool vehicle an extra hour-and-one half's pay at minimum wage for such driving/un/loading time. Joint Stipulation (ECF 237-10), ¶¶ 3,7; Labate Dep. (ECF 237-4) 255:03-256:04.[20]  Since Plaintiff Diaz did not work in 2018 and was not subject to this policy, his claims are not Common and/or Typical of any Laborer who did. Indeed, Defendant has an additional defense available to these individuals – namely that the extra pay received satisfies all compensation obligations under the NYLL to same. Defendant does not have such a defense to individuals who were not subject to this policy prior to June 2018 (including Named Plaintiff). As such, and to the extent any class can be certified herein, it must be limited to exclude

---

[20] It is also worth noting that while Patrick Labate was a foreman for NY Paving during times relevant to the Complaint, he would give the driver of the truck an extra half hour of "work" time. Labate Dep. 191-18-193:09.

individuals/claims for work performed beyond June 2018.

**D. Any Class Certified Herein Must be Limited to Laborers Working Out of the Long Island City Yard.**

As a final matter, it is indisputable that all record evidence adduced by Plaintiffs in this matter – including all untested and uncorroborated allegations made by Plaintiffs – is explicitly limited to individuals "working out" of the Long Island City Yard.[21] *See* ECF 1, 218, 241-246. Indeed, Plaintiffs and their counsel explicitly admit they have **literally zero** evidence or information concerning whether Pavers who "worked out" of locations other than Long Island City (*i.e.* out of Old Bethpage) ever even reported to any Yard, much less that such reporting was allegedly required and allegedly uncompensated. *Id.* Given this absolute lack of evidence, it is obvious that Plaintiffs cannot prove by a preponderance of it that any class herein should include Pavers outside of Long Island City. As such, class certification including Pavers other than those working out of Long Island City must be denied. *See, e.g.*, *Jackson*, 298 F.R.D. at 159; *Pecere*, 194 F.R.D. at 69-70 (E.D.N.Y. 2000); *Spagnola*, 264 F.R.D. at 92.

## CONCLUSION

**WHEREFORE,** Defendant respectfully requests that the Court deny plaintiffs' Motion for Class Certification in its entirety with prejudice. Alternatively, Defendant respectfully requests that if any class is certified, it be limited to: (i) Unit-members of Local 175; (ii) non-Foremen Laborers; (iii) work allegedly performed prior to June 2018; and (iv) to only Laborers who worked out of NY Paving's Long Island City Yard, and no other yard. Defendant also respectfully requests such other and further relief this Court deems just and appropriate.

Dated:      Mineola, New York
             December 17, 2021

---

[21] NY Paving has only two "Yards": one in Long Island City, NY and a second satellite location in Old Bethpage, NY.

**MELTZER, LIPPE, GOLDSTEIN &
BREITSTONE, LLP**
Attorneys for Defendant
190 Willis Avenue
Mineola, New York 11501
champton@meltzerlippe.com

By:   **ECF**                    /s/
_____

Christopher P. Hampton

26

4871-2966-3747, v. 6